UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CMH MANUFACTURING, INC., d/b/a § | | |
| CLAYTON HOMES, and NTA, INC. § | | |
| § | CIVIL ACTION | |
| Plaintiffs, § | | |
| § | | |
| VS. § | NO. 12-CV-1223 | |
| § | | |
| HENSEL PHELPS CONSTRUCTION CO., § | | |
| SAIC ENERGY, ENVIRONMENT & § | | |
| INFRASTRUCTURE, LLC § | | |
| f/k/a BENHAM GROUP, LLC, § | | |
| ESSENTIAL FIRE PROTECTION SYSTEMS, § | | |
| INC., A-1 SECURITY & FIRE EQUIPMENT § | | |
| COMPANY, INC., ALL AMERICAN GROUP, § | | |
| INC., and INNOVATIVE DESIGN AND § | | |
| BUILDING SERVICES, LLC f/k/a § | | |
| ALL AMERICAN HOMES § | | |
| Defendants. § | | |

## ORIGINAL COMPLAINT

Plaintiffs, CMH MANUFACTURING, INC., d/b/a CLAYTON HOMES ("CMH"), and NTA, INC. ("NTA") assert the following claims against HENSEL PHELPS CONSTRUCTION CO. ("HENSEL PHELPS"), SAIC ENERGY, ENVIRONMENT & INFRASTRUCTURE, LLC f/k/a BENHAM GROUP, LLC ("BENHAM"), ESSENTIAL FIRE PROTECTON SYSTEMS, INC. ("EFPS"), A-1 SECURITY & FIRE EQUIPMENT COMPANY, INC. ("A-1"), ALL AMERICAN GROUP, INC., and INNOVATIVE DESIGN AND BUILDING SERVICES, LLC f/k/a ALL AMERICAN HOMES (jointly "ALL AMERICAN"):

## NATURE OF THE DISPUTE

1. On or about November 8, 2012, THE WARRIOR GROUP ("WARRIOR") brought a counterclaim against CMH in arbitration case *CMH Manufacturing and The Warrior Group,* AAA# 70 443 534 12. [Originally filed in this district as No. 12-CV-00195-XR, styled *The United States of America for the use and benefit of CMH Manufacturing, Inc., d/b/a Clayton Homes v. The Warrior Group, Inc., Hensel Phelps Construction Co., and Travelers Casualty and Surety Company of America*, now stayed pending resolution in the above-listed arbitration.]

2. The counterclaim seeks damages against CMH relating to property damage allegedly sustained to modular dormitory buildings and other property located at Fort Bliss, Texas which allegedly resulted from burst sprinkler pipes located in the ceiling of the modular dormitory buildings.

3. WARRIOR'S counterclaim arises from a United States Army Corps of Engineers ("Corps") construction project commonly known as Unaccompanied Enlisted Personal Housing (UEPH), Ft. Bliss, Texas, believed to be federal construction project/contract no. W9126-G-06-D-0039 Task Order 1 and 2 (the "Project").

4. More specifically on or about January 1, 2011, WARRIOR alleges that property damages resulted to modular dormitory buildings when fire protection sprinkler pipes ruptured in Building No. 20250 [Task Order 1] and Building Nos. 20300, 20305, 20330, and 20355 [Task Order 2] (hereafter referred to as the "MODULAR BUILDINGS").

5. On or about November 30, 2012, WARRIOR filed a Demand with the American Arbitration Association against NTA and PFS Corporation. NTA was provided with a courtesy copy of the Demand by counsel for WARRIOR but has not yet been served with the Demand by the AAA.

6. The Demand filed by WARRIOR seeks damages against NTA relating to the same property damage occurring during the same alleged occurrences of burst sprinkler pipes in the MODULAR BUILDINGS.

7. While CMH and NTA deny any liability to WARRIOR for the property damages, to the extent CMH or NTA is found responsible to WARRIOR in the arbitration proceeding, CMH and NTA seek recovery in excess of $75,000 against the parties in this action whose conduct proximately caused the loss, if any, sustained.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2), because the acts and omissions giving rise to CMH's action occurred in this district.

10. A related case, No. 12-CV-00195-XR, styled *The United States of America for the use and benefit of CMH Manufacturing, Inc., d/b/a Clayton Homes v. The Warrior Group, Inc., Hensel Phelps Construction Co., and Travelers Casualty and Surety Company of America*, is currently stayed in this Court, having been ordered to arbitration, and involves the same disputes relating to the MODULAR BUILDINGS.

## PARTIES

11. CMH is a foreign corporation incorporated and with its principal place of business in Tennessee and duly authorized and engaged in business under the laws of the State of Texas.

12. NTA is a foreign corporation foreign corporation incorporated and with its principal place of business in Tennessee and duly authorized and engaged in business under the laws of the State of Texas. NTA joins in this action as allowed by Fed. R. Civ. P. 20(a)(1).

13. HENSEL PHELPS is a foreign corporation incorporated and with its principal place of business in Colorado, authorized to conduct business in Texas and can be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

14. BENHAM is a foreign corporation incorporated and with its principal place of business in Delaware, authorized to conduct business in Texas and can be served through its registered agent, CT Corporation System, at 350 N. Saint Paul St., Suite 2900, Dallas, Texas 75201-4234.

15. EFPS, is a corporation duly formed and existing under the laws of the State of Texas and can be served through its registered agent, Lyman Ransom Huffman, at 1045 Kessler Dr., El Paso, Texas 79907-1840, or by serving any other authorized officer.

16. A-1 is a corporation duly formed and existing under the laws of the State of Texas and can be served through its registered agent, Elaine Restivo, at 6701 Imperial Dr., Waco, Texas 76712-6809, or by serving any other authorized officer.

17. ALL AMERICAN GROUP, INC. is a foreign corporation incorporated and with its principal place of business in Indiana, and can be served through its registered agent, CT Corp. System, 251 E. Ohio Street, Suite 1100 Indianapolis, IN 46204-2147 or by serving any authorized officer.

18. INNOVATIVE DESIGN AND BUILDING SERVICES, LLC f/k/a ALL AMERICAN HOMES, is a foreign corporation incorporated and with its principal place of business in Pennsylvania, authorized to conduct business in Texas and can be served through its Registered Agent, CT Corp. System, 350 N. Saint Paul St, Suite 2900, Dallas, TX 75201-4234.

## FACTS

19.     HENSEL PHELPS was the General Contractor for the MODULAR BUILDINGS pursuant to its contract with the Corps. The MODULAR BUILDINGS construction project included the fire protection sprinkler systems within the MODULAR BUILDINGS.

20.     HENSEL PHELPS and the Corps entered into a written design-build prime contract whereby HENSEL PHELPS agreed to perform certain design and construction work for the Project related to the fire protection sprinkler systems of the MODULAR BUILDINGS.

21.     Pursuant to the Special Condition (0800) in the Corps-HENSEL PHELPS Contract entitled "RESPONSIBILITY OF CONTRACTOR FOR DESIGN," HENSEL PHELPS bore design responsibility for the fire protection sprinkler systems in the MODULAR BUILDINGS.

22.     BENHAM served as the Project Architect, under the control of HENSEL PHELPS and on information and belief, HENSEL PHELPS and BENHAM entered into an agreement whereby BENHAM assisted HENSEL PHELPS and performed certain design work for the MODULAR BUILDINGS relating to fire protection sprinkler systems.

23.     EFPS was the fire protection sprinkler system designer for the MODULAR BUILDINGS, and on information and belief, BENHAM and EFPS entered into an agreement whereby EFPS assisted both HENSEL PHELPS and BENHAM regarding design work for the MODULAR BUILDINGS relating to fire protection sprinkler systems.

24.  HENSEL PHELPS, BENHAM, and EFPS are hereafter referred to collectively as the "DESIGN GROUP."

25.     WARRIOR was a subcontractor to HENSEL PHELPS and upon information and belief, WARRIOR and HENSEL PHELPS entered into a standard purchase agreement whereby

WARRIOR agreed to provide the MODULAR BUILDINGS, including the fire protection sprinkler systems for the MODULAR BUILDINGS, based upon the design of the DESIGN GROUP.

26. Fleetwood Homes Texas, LP and Fleetwood Enterprises, Inc. (jointly referred to as "FLEETWOOD"), were both subcontractors to WARRIOR for the MODULAR BUILDINGS, including their fire protection sprinkler systems.

27. FLEETWOOD entered into standard purchase agreements with WARRIOR to construct the MODULAR BUILDINGS, including the fire protection sprinkler systems, based upon and as required by the design of the DESIGN GROUP .

28. WARRIOR initially contracted with ALL AMERICAN to construct modular dormitory units. ALL AMERICAN did not have the capacity to timely construct all of the modular dormitory units required by WARRIOR so WARRIOR contracted with FLEETWOOD to construct some of the modular dormitory units on its behalf. Upon information and belief, ALL AMERICAN received these approved plans from the DESIGN GROUP, but later supplied only part of those plans (notably, without the detail for the fire protection sprinkler system) to FLEETWOOD, while representing to FLEETWOOD that the plans were complete and adequate. On information and belief, these plans were also furnished to NTA by WARRIOR for use in inspecting the MODULAR BUILDINGS. FLEETWOOD was required to and agreed to purchase the detail of the fire protection sprinkler system plans from ALL AMERICAN.

29. On information and belief, EFPS generated the final design for the fire sprinkler system of the MODULAR BUILDINGS, and said design was reviewed and approved by BENHAM, HENSEL PHELPS, and the Corps; and which design was, upon final approval, provided by HENSEL PHELPS through WARRIOR to FLEETWOOD.

30. NTA was hired by WARRIOR to perform quality assurance and quality control inspections on some of the MODULAR BUILDINGS constructed under Task Order 1. The documents furnished to NTA by WARRIOR did not contain references to NFPA-13R as the Code that was to apply to the sprinkler systems or the inspection of the sprinkler systems in the MODULAR BUILDINGS. WARRIOR has claimed that NTA failed to inspect the MODULAR BULIDINGS for conformance with that Code.

31. As admitted by BENHAM, the DESIGN GROUP'S intent was for the sprinkler piping system to be installed in the MODULAR BUILDINGS in *conditioned* space (i.e. temperature-controlled space, such as by a heater) **Exhibit 1** (Letter dated February 16, 2011, attached to Serial Letter 54) attached and incorporated by reference herein.

32. The DESIGN GROUP failed to carry through this design intent to the MODULAR BUILDINGS and instead designed the sprinkler piping system to be constructed in *unconditioned* space (i.e. space where temperature is not controlled by heating due to unavailability or failure).

33. The fire protection specification in the Corps-HENSEL PHELPS Contract (¶6.14.2) requires the following safety measure:

> 6.14.2 Sprinkler Freeze Protection: Provide temperature sensor and alarm to notify fire department of possible freezing conditions for wet pipe sprinkler systems in spaces where heat may not be available due to being unoccupied or heating system may have failed. (Edit this paragraph as it applies to specific product lines for sprinklered storage / warehouse areas, hangars, maintenance areas, etc.)

34. BENHAM admits that the Sprinkler Freeze Protection (specification 6.14.2) was deliberately *not* included by "the HPCC team" even though the DESIGN TEAM placed the fire sprinkler system in unconditioned space. (See **Exhibit 1**.)

35. BENHAM further admits "this was not just our interpretation as Designer of Record, but that of the whole HP/Benham team, …". **Exhibit 1**.

36. The DESIGN GROUP represented to FLEETWOOD through its plans and specifications that a temperature sensor and alarm was not required, such that FLEETWOOD would and did reasonably rely on this representation to install the sprinkler pipe.

37. Upon information and belief, FLEETWOOD contracted with A-1 to install the sprinkler heads, provide certain parts and equipment, perform certain inspections of the sprinkler pipes as-installed, and train and certify FLEETWOOD to install the sprinkler pipe in some or all of the MODULAR BUILDINGS based upon the DESIGN GROUP design.

38. FLEETWOOD had no design responsibilities relating to the MODULAR BUILDINGS.  NTA had no design responsibilities relating to the MODULAR BUILDINGS.

39. FLEETWOOD fully performed its work relating to the sprinkler piping system in the MODULAR BUILDINGS that it was tasked with constructing in accordance with the DESIGN GROUP'S plans and specifications and the training provided by A-1.

40. NTA fully performed its work relating to the sprinkler piping systems in all of the MODULAR BUILDINGS that it inspected in accordance with the documents furnished to it by WARRIOR. On information and belief, NTA alleges those documents were prepared by the DESIGN GROUP, WARRIOR, ALL AMERICAN, or some combination of those parties.

41. On March 10, 2009, FLEETWOOD declared bankruptcy.

42. The date of substantial completion of the MODULAR BUILDINGS was April 21, 2009.

43. On May 28, 2009, CMH entered into an Asset Purchase Agreement with FLEETWOOD, which included the purchase of FLEETWOOD'S military modular manufacturing facility in Belton, Texas.

44. As part of that purchase, CMH assumed certain limited warranty obligations regarding the MODULAR BUILDINGS.

45. On or about January 1, 2011, sprinkler pipes located in the MODULAR BUILDINGS burst due to freezing temperature, resulting in water damage to the MODULAR BUILDINGS.

46. On or about November 8, 2012, WARRIOR brought a counterclaim against CMH seeking recovery of these alleged water damages to the MODULAR BUILDINGS in arbitration case *CMH Manufacturing and The Warrior Group,* AAA# 70 443 534 12.  [Originally filed in this district as No. 12-CV-00195-XR, styled *The United States of America for the use and benefit of CMH Manufacturing, Inc., d/b/a Clayton Homes v. The Warrior Group, Inc., Hensel Phelps Construction Co., and Travelers Casualty and Surety Company of America*, and which is now stayed pending resolution in arbitration.]

47. On or about November 30, 2012, WARRIOR filed a Demand with the American Arbitration Association against NTA and PFS Corporation. NTA was provided with a courtesy copy of the Demand by counsel for WARRIOR but has not yet been served with the Demand by the AAA.

## CONDITIONS PRECEDENT

48.     All conditions precedent to CMH's and NTA's rights to full recovery of damages and all other relief requested herein have been satisfied, have occurred, or have been waived.

## CERTIFICATE OF MERIT

49.     Attached as **Exhibit 2** is a Certificate of Merit pursuant to Tex. Civ. Prac. & Rem. Code § 150.002(a)-(b).

## NEGLIGENCE CLAIM AGAINST DESIGN GROUP

50.     CMH and NTA incorporate by reference all preceding paragraphs.

51.     CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

52.     NTA has been sued by WARRIOR in arbitration for negligently causing damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

53.     Although CMH and NTA deny any liability to WARRIOR, to the extent CMH or NTA is found responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligence of the DESIGN GROUP.

54.     As specified above, the conduct of the DESIGN GROUP was negligent by failing to perform their respective design responsibilities and obligations regarding the sprinkler piping system in the MODULAR BUILDINGS in accordance with the Corps' specifications, proper industry standards, and the professional skill and care expected of architects and/or engineers.

55.     The DESIGN GROUP'S negligent conduct in designing the sprinkler piping for unconditioned space, but eliminating the freeze warning system, was the proximate cause of

property damages to the MODULAR BUILDINGS when the sprinkler piping burst without warning due to freezing temperatures.

56. In addition, CMH and NTA hereby sue for costs of court, pre-judgment interest, and post-judgment interest.

## NEGLIGENT MISREPRESENTATIONS OF DESIGN GROUP

57. CMH and NTA incorporate by reference all preceding paragraphs.

58. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

59. NTA has been sued by WARRIOR in arbitration for negligently causing damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

60. Although CMH and NTA deny any liability to WARRIOR, to the extent CMH or NTA is found responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligent misrepresentations of the DESIGN GROUP.

61. As specified above, the DESIGN GROUP in the course of its business made negligent representations to FLEETWOOD and NTA regarding the sprinkler piping system design for the guidance of FLEETWOOD and NTA.

62. The DESIGN GROUP failed to exercise reasonable care or competence in preparing and communicating the design information about the sprinkler system related to the MODULAR BUILDINGS to FLEETWOOD and NTA.

63. FLEETWOOD and NTA justifiably relied upon the representations about the design, condition, and requirements of the sprinkler system in the MODULAR BUILDINGS, all to FLEETWOOD and NTA's detriment.

64. In addition, CMH and NTA hereby sue for costs of court, pre-judgment interest, and post- judgment interest.

## **ALTERNATIVE RELIEF AGAINST A-1, NEGLIGENCE**

65. CMH incorporates by reference all preceding paragraphs.

66. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued in arbitration by WARRIOR for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

67. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligence of A-1.

68. As specified above, A-1 negligently provided training, supervision, inspections, and quality assurance services to FLEETWOOD regarding the fire protection sprinkler system in unconditioned space in some or all of the MODULAR BUILDINGS.

69. A-1 negligently failed to instruct or communicate to FLEETWOOD the omission of a freeze warning system and the effect thereof. A-1's negligent conduct regarding lack of a freeze warning system related to installation of the sprinkler piping for unconditioned space in some or all of the MODULAR BUILDINGS was the proximate cause of property damages to the MODULAR BUILDINGS when the sprinkler piping burst without warning due to freezing temperatures.

70. In addition, CMH hereby sues for costs of court, pre-judgment interest, and post-judgment interest.

### ALTERNATIVE RELIEF AGAINST A-1, NEGLIGENT MISREPRESENTATION

71. CMH incorporates by reference all preceding paragraphs.

72. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

73. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligent misrepresentation of A-1.

74. As specified above, A-1 made representations to FLEETWOOD in the course of its business regarding the sprinkler system in some or all of the MODULAR BUILDINGS. These representations included, but were not limited to the following: That the sprinkler system was properly installed, tested, and/or inspected in unconditioned space as designed; that A-1 had personnel to properly oversee, supervise and control those who were to install the sprinkler system in unconditioned space; and that the sprinkler system was functional and fully operable in all weather conditions as installed in unconditioned space.

75. A-1 failed to exercise reasonable care or competence in obtaining or communicating the information about the fire sprinkler system to FLEETWOOD.

76. FLEETWOOD justifiably relied upon the representations to its detriment.

77. CMH also sues for costs of court, pre-judgment interest, and post- judgment interest.

**ALTERNATIVE RELIEF AGAINST A-1, BREACH OF CONTRACT**

78. CMH incorporates by reference all preceding paragraphs.

79. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

80. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the conduct of A-1 as follows:

81. A-1 breached its contract with FLEETWOOD by not providing adequate training, supervision, inspections, parts, and quality assurance services to FLEETWOOD and by failing to instruct or warn FLEETWOOD regarding the lack of a freeze system safety measure for the fire protection sprinkler system in unconditioned space in the MODULAR BUILDINGS.

82. In addition, CMH hereby sues for attorneys' fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of court, pre-judgment interest, and post- judgment interest.

**ALTERNATIVE RELIEF AGAINST A-1, BREACH OF WARRANTY**

83. CMH incorporates by reference all preceding paragraphs.

84. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

85. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the

MODULAR BUILDINGS, said damages, if any, were proximately caused by the conduct of A-1 as follows:

86. A-1 breached its warranties to FLEETWOOD by not providing training, supervision, inspections, and quality assurance services to FLEETWOOD in accordance with proper standards regarding the lack of a freeze warning system of a fire protection sprinkler system in unconditioned space in the MODULAR BUILDINGS.

87. In addition, CMH hereby sues for attorneys' fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of court, pre-judgment interest, and post- judgment interest.

## ALTERNATIVE RELIEF AGAINST ALL AMERICAN, NEGLIGENCE

88. CMH and NTA incorporate by reference all preceding paragraphs.

89. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued in arbitration by WARRIOR for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes. NTA has been sued by WARRIOR in arbitration for negligently causing damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

90. Alternatively, although CMH and NTA deny any liability to WARRIOR, to the extent CMH or NTA is found responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligence of the ALL AMERICAN.

91. As specified above, upon information and belief, ALL AMERICAN received plans for MODULAR BUILDINGS that had been approved by the DESIGN GROUP. ALL AMERICAN sold those, or other, plans to FLEETWOOD and intentionally and recklessly

represented as the basis for said sale that the plans were complete and adequate when in fact ALL AMERICAN had omitted the detail for the fire protection sprinkler system installed in unconditioned space in the MODULAR BUILDINGS. ALL AMERICAN'S conduct in furnishing plans to FLEETWOOD was negligent, and it was foreseeable that anyone who would assume warranty obligations or provide inspections for the MODULAR BUILDINGS constructed pursuant to such incomplete and inadequate plans, such as Plaintiffs, CMH and NTA, would be damaged.

92. ALL AMERICAN's negligent conduct regarding furnishing the design of the sprinkler piping for unconditioned space without detail for installation or a freeze warning system was the proximate cause of property damages to the MODULAR BUILDINGS when the sprinkler piping burst without warning due to freezing temperatures.

93. In addition, CMH and NTA hereby sue for costs of court, pre-judgment interest, and post- judgment interest.

### ALTERNATIVE RELIEF AGAINST ALL AMERICAN, NEGLIGENT MISREPRESENTATION

94. CMH and NTA incorporate by reference all preceding paragraphs.

95. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

96. NTA has been sued by WARRIOR in arbitration for negligently causing damages to the MODULAR BUILDINGS resulting from burst sprinkler pipes.

97. Alternatively, although CMH and NTA deny any liability to WARRIOR, to the extent CMH or NTA is found responsible to WARRIOR for damages resulting from burst

sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the negligent misrepresentation of ALL AMERICAN.

98. As specified above, upon information and belief, ALL AMERICAN received plans for MODULAR BUILDINGS that had been approved by the DESIGN GROUP. ALL AMERICAN sold those, or other, plans to FLEETWOOD and negligently represented as the basis for said sale that the plans were complete and adequate when in fact ALL AMERICAN had omitted the detail for the fire protection sprinkler system installed in unconditioned space in the MODULAR BUILDINGS.

99. Upon information and belief, ALL AMERICAN made additional misrepresentations to FLEETWOOD in the course of its business regarding the ability and capacity, under the approved designs of the DESIGN GROUP and the Corps' specifications, to construct sprinkler systems in unconditioned space without a freeze warning system. These representations included, but were not limited to the following: That the sprinkler system could be properly installed, tested, and/or inspected in unconditioned space without a freeze warning system;; and that the sprinkler system as designed and shown on the plans was functional and fully operable in all weather conditions as installed in unconditioned space.

100. Upon information and belief, ALL AMERICAN also made misrepresentations to NTA in the course of its business regarding the design and construction of sprinkler systems in the MODULAR BUILDINGS. These representations included but were not limited to the following: that the sprinkler systems could be properly installed, tested, and/or inspected in unconditioned space without a freeze warning system and without adequate insulation.

101. ALL AMERICAN failed to exercise reasonable care or competence in obtaining or communicating the information about the sprinkler system to FLEETWOOD and NTA.

102. FLEETWOOD and NTA justifiably relied upon ALL AMERICAN's representations to their detriment, and it was foreseeable that anyone who would assume warranty obligations for the MODULAR BUILDINGS constructed pursuant to such incomplete and inadequate plans, such as Plaintiff, CMH, would be damaged.

103. CMH and NTA also sue for costs of court, pre-judgment interest, and post-judgment interest.

### ALTERNATIVE RELIEF AGAINST ALL AMERICAN, BREACH OF CONTRACT

104. CMH incorporates by reference all preceding paragraphs.

105. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

106. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the conduct of ALL AMERICAN as follows:

107. As specified above, upon information and belief, ALL AMERICAN constructed some or all of the MODULAR BUILDINGS by agreement with WARRIOR which included the construction and installation of the fire protection sprinkler system in unconditioned space in the MODULAR BUILDINGS.

108. ALL AMERICAN breached its contract with FLEETWOOD by not providing to FLEETWOOD adequate and proper fire protection sprinkler system plans or system design information (via schematics, design drawings, or similar) for unconditioned space in the MODULAR BUILDINGS with a freeze warning system.

109. In addition, CMH hereby sues for attorneys fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of court, pre-judgment interest, and post- judgment interest.

**ALTERNATIVE RELIEF AGAINST ALL AMERICAN, BREACH OF WARRANTY**

110. CMH incorporates by reference all preceding paragraphs.

111. CMH, having assumed limited warranty obligations of FLEETWOOD, has been sued by WARRIOR in arbitration for damages to the MODULAR BUILDINGS in excess of $75,000 resulting from burst sprinkler pipes.

112. Alternatively, although CMH denies any liability to WARRIOR, to the extent CMH is responsible to WARRIOR for damages resulting from burst sprinkler pipes in the MODULAR BUILDINGS, said damages, if any, were proximately caused by the conduct of ALL AMERICAN as follows:

113. As specified above, upon information and belief, ALL AMERICAN warranted, expressly or impliedly, the completeness and adequacy of the plans it sold to FLEETWOOD which called for the construction and installation of the fire protection sprinkler system in unconditioned space in the MODULAR BUILDINGS without a freeze warning system.

114. ALL AMERICAN breached its express or implied warranties to FLEETWOOD by failing to include proper fire protection sprinkler system plans or system design information (via schematics, design drawings, or similar) for unconditioned space in the MODULAR BUILDINGS with a freeze warning system.

115. In addition, CMH hereby sues for attorneys fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of court, pre-judgment interest, and post- judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, CMH and NTA request Judgment against Defendants, jointly and severally, for damages and expenses for which they may be responsible to WARRIOR; reasonable attorney's fees and expenses; costs of court, pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

DATED December 28, 2012.

                                          Respectfully submitted,

                                          **GARDNER LAW**
                                          745 East Mulberry Ave., Suite 500
                                          San Antonio, Texas  78212
                                          210-733-8191 – Telephone
                                          210-733-5538 – Facsimile

                                          By:/s/ Thomas J. Walthall, Jr.
                                          R. Wes Johnson
                                          State Bar No.10787100
                                          Thomas J. Walthall, Jr.
                                          State Bar No. 20821600
                                          **ATTORNEYS FOR CMH MANUFACTURING, INC d/b/a CLAYTON HOMES**

                                          **MILLS SHIRLEY LLP**
                                          409 S. Presa
                                          San Antonio, Texas 78205
                                          210-733-9131 - Telephone
                                          210-733-9132 - Facsimile

                                          By: /s/ Scott Lyford_____
                                          Scott Lyford
                                          State Bar No. 12715200
                                          **ATTORNEYS FOR NTA, INC.**