Exhibit 1A– Hensel Phelps-Benham Agreements
Ft. Bliss Task Orders 1 and 2

AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER

for

# IDIQ for Design- Build Services for Southwestern Region Brigade Combat Team Complex Unaccompanied Enlisted Personnel Housing

## Fort Bliss, El Paso, Texas

BETWEEN

THE DESIGN-BUILDER

Hensel Phelps Construction Co.
8322 Cross Park Drive
Austin, Texas 78754

*AND*

ARCHITECT/ENGINEER

The Benham Companies LLC
1 West 3rd Street, Suite 100
Tulsa, Oklahoma  74103

November 30, 2006

SEE&I_CMH_000001

## AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER

### THIS AGREEMENT

Made as of the 30th day of November, Two Thousand and six

### BETWEEN

| | |
|---|---|
| The Design-Builder: | Hensel Phelps Construction Co. (hereinafter referred to as the "Design-Builder)" <br> 8322 Cross Park Drive <br> Austin, Texas 78754 |
| The Architect/Engineer | The Benham companies, LLC (hereinafter referred to as the "Architect/Engineer" <br> 1 West 3rd Street, Suite 100 <br> Tulsa, Oklahoma 74103 |
| **For the following Project:** | **IDIQ for Design Build Services for Southwestern Region Brigade Combat Team Complex Unaccompanied Enlisted Personnel Housing Fort Bliss, El Paso, Texas** |

**Contract #W9126G-06-D-0039**

The Project is described in the Contract between the U.S. Army Corps of Engineers, Fort Worth (hereinafter referred to as "Owner") and Hensel Phelps Construction Co. (hereinafter referred to as the "Design-Builder"), as a Project consisting of Unaccompanied Enlisted Personnel Housing. The Project generally includes eleven (11) Individual Buildings of approximately 540,000 total gsf. Also included is the associated sitework to the five foot line.

| | |
|---|---|
| For which the Owner is: | U.S. Army Corps of Engineers <br> Fort Worth District <br> Fort Worth, Texas |
| Being administered by: | Mr. Brad Hartell <br> 6380 Morgan Ave, Suite A <br> Fort Bliss, Texas 79906 |

The requirements of this Agreement shall be in accordance with the following and in the order of precedence listed below:

- This Agreement between Design-Builder and Architect/Engineer, dated November 30th, 2006 (hereinafter referred to as the "Agreement") and
- The Agreement between the Design-Builder and the Owner, and
- RFP No. W9126G-06-R-0002 issued by The U.S. Army Corps of Engineers, Fort Worth District, and
- The Design-Builder's proposal dated July 6, 2006 in response to RFP No. W9126G-06-R-0002.



The Design-Builder engages the Architect/Engineer to perform the professional services set forth in this Agreement.

Term: The term of this Agreement shall be from the date first written above until final acceptance of the Project by the Owner and/or the completion of all design responsibilities for which the Design-Builder is contractually obligated under the Contract, whichever date occurs last.

SEE&I_CMH 005002

## TABLE OF CONTENTS

ARTICLE I ........................................................................................................................................ 1
    1.0      GENERAL PROVISIONS ................................................................................................. 1
    1.1      BASIC DEFINITIONS ....................................................................................................... 1

ARTICLE II ...................................................................................................................................... 1
    2.0      ARCHITECT/ENGINEERS' SERVICES.......................................................................... 1
    2.1      PRIMARY SERVICES ....................................................................................................... 1
    2.2      ADDITIONAL SERVICES................................................................................................. 4
    2.3      TIME ................................................................................................................................... 6

ARTICLE III ..................................................................................................................................... 6
    3.0      DESIGN-BUILDERS' RESPONSIBILITIES .................................................................. 6
    3.1      PROGRAM ......................................................................................................................... 6
    3.2      DECISIONS ........................................................................................................................ 6
    3.3      INFORMATION.................................................................................................................. 6
    3.4      CONSULTANTS................................................................................................................. 7
    3.5      OBSERVED FAULTS........................................................................................................ 7
    3.6      INSURANCE` ...................................................................................................................... 7
    3.7      RELATED AGREEMENTS ............................................................................................... 7

ARTICLE IV ..................................................................................................................................... 7
    4.0      PAYMENT TO THE ARCHITECT/ENGINEER ............................................................. 7
    4.1      DEFINITION OF ARCHITECT/ENGINEER'S EXPENSES .......................................... 7
    4.2      PAYMENT FOR PRIMARY SERVICES......................................................................... 8
    4.3      ADDITIONAL SERVICES................................................................................................ 8
    4.4      PAYMENT .......................................................................................................................... 9
    4.5      ARCHITECT/ENGINEER'S ACCOUNTING RECORDS ............................................. 9

ARTICLE V ..................................................................................................................................... 10
    5.0      PROJECT TERMINATION OR SUSPENSION............................................................. 10
    5.1      SUSPENSION FOR CAUSES UNRELATED TO THE CONDUCT OF THE OWNER ......... 10
    5.2      TERMINATION BY THE OWNER................................................................................ 10

ARTICLE VI ................................................................................................................................... 10
    6.0      OWNERSHIP OF DOCUMENTS - USE OF DOCUMENTS....................................... 10

ARTICLE VII.................................................................................................................................. 10
    7.0      DISPUTES........................................................................................................................ 10
    7.1      DISPUTES BETWEEN THE ARCHITECT/ENGINEER AND DESIGN-BUILDER.............. 10
    7.2      DISPUTES RELATING TO THE CONDUCT OF THE OWNER................................. 11
    7.3      ARBITRATION................................................................................................................ 11
    7.4      NEGLIGENCE OF THE ARCHITECT/ENGINEER..................................................... 11

ARTICLE VIII ................................................................................................................................ 11
    8.0      RISK MANAGEMENT..................................................................................................... 11
    8.1      INSURANCE REQUIREMENTS .................................................................................... 11
    8.2      MAINTENANCE OF POLICIES ................................................................................... 12
    8.3      SUBROGATION .............................................................................................................. 12
    8.4      INSURANCE..................................................................................................................... 12
    8.5      DESIGN-BUILDER INDEMNIFICATION ................................................................... 12

| | | |
|---|---|---|
| 8.6 | INDEMNIFICATION | 12 |
| 8.7 | SHARED COSTS | 13 |

**ARTICLE IX** ...................................................................................................................... 13

| | | |
|---|---|---|
| 9.0 | MISCELLANEOUS | 13 |
| 9.1 | FORCE MAJEURE | 13 |
| 9.2 | SUCCESSION | 13 |
| 9.3 | ENTIRE AGREEMENT | 13 |
| 9.4 | ATTORNEY'S FEES | 13 |
| 9.5 | SEVERABILITY | 13 |
| 9.6 | CAPTIONS | 13 |

**ARTICLE X** ...................................................................................................................... 13

| | | |
|---|---|---|
| 10.0 | INCENTIVES | 13 |
| 10.1 | INCENTIVE BONUS | 13 |
| 10.0 | INCENTIVE BONUS CRITERIA | 14 |
| 10.1 | ACCOUNTING and PAYMENT of INCENTIVE BONUS | 14 |

Exhibit A - Design Schedule
Exhibit B - Additional Service Rates
Exhibit C - Schedule of Values

SEE&I_CMH 000041

## ARTICLE I

**1.0**      **GENERAL PROVISIONS**

**1.1**      **BASIC DEFINITIONS**

**1.1.1**      Project

The Project is the total design and construction for which the Design-Builder is responsible under the Contract with the Owner, including all professional design services and all labor, materials and equipment used or incorporated in such design and construction.

**1.1.2**      **Work**

The Work comprises the completed construction designed by the Architect/Engineer under the Project and includes labor necessary to produce such construction and materials and equipment incorporated or to be incorporated in such construction.

**1.1.3**      **Design-Builder**

The Design-Builder is **Hensel Phelps Construction Co.**

**1.1.4**      **Contract**

The Agreement between the Owner and the Design-Builder.

**1.1.5**      **Architect/Engineer's Consultants**

Engineers, consultants and other experts retained by the Architect/Engineer in certain aspects of the Project relating to the overall undertaking by the Architect/Engineer as specified in this Agreement. The costs and fees of these engineers and consultants are included in the Architect/Engineer's fee unless stated otherwise. Nothing contained herein shall create any contractual or other obligation between Design-Builder and any engineer, consultant or expert retained by the Architect/Engineer in connection with the Project.

**1.1.6**      **RFP**

Request for Proposals issued by The U.S. Army Corps of Engineers, Fort Worth, Texas, RFP No. W9126G-06-R-0002 including amendments 0001 thru 0015

**1.1.7**      **Contract Documents**

Includes the Contract and all amendments or change orders issued thereto; all documents issued for bid packages as developed by the Design-Builder in conjunction with the Architect/Engineer, and all design drawings and specifications approved by the Design-Builder and Owner during the course of the Project.

## ARTICLE II

**2.0**      **ARCHITECT/ENGINEERS' SERVICES**

**2.1**      **PRIMARY SERVICES**

The Architect/Engineer's Primary Services include all customary architectural, structural, mechanical, electrical, plumbing, fire protection, civil, interiors and landscape design services, and other primary services required to complete the terms of this Agreement, generally described below.

**2.1.1**      **General**

2.1.1.1   The Architect/Engineer shall provide all design services required by the Contract Documents in a timely manner as provided in the Design Schedule to allow timely procurement and construction of the Project. Said design responsibilities include final responsibility for the interpretation of all design information provided in the RFP, including soils reports, and surveys, and the preparation of the design of all foundations, mechanical and electrical facilities, utilities, and other design facets of the Project.

2.1.1.2   Estimate: The Architect/Engineer is not responsible for preparation or accuracy of any construction cost estimates. However, the Architect/Engineer will assist Design-Builder by reviewing the construction cost estimates and providing the Design-Builder with comments which reflect the Architect/Engineer's professional experience regarding costs.

2.1.1.3   Permits: The Architect/Engineer is responsible for preparation and submittal of the applications for any required permits, including construction related permits, to the extent the requirement for permits is known or reasonably foreseeable based on the scope of primary services. The Architect/Engineer shall maintain responsibility for the permit process, including revisions necessary to secure approvals, until such time as Authorities having jurisdiction approve the permit applications. The Design-Builder shall cooperate with the Architect/Engineer in completing the required permit applications and documentation necessary for obtaining the permits. The Architect/Engineer will not be responsible for fees for building or construction related permits.   $\mathcal{W}$

2.1.1.4   Storm Water Pollution Prevention Plan (NPDES Permit): Preliminary plans preparation ~~is~~ <u>is</u> included in General Services for the design Builder to obtain permit.   DJP

2.1.1.5   Reproduction and Printing: The Architect/Engineer shall provide documents to the Design-Builder at the stages and quantities listed below; <u>or as allowed by the RFP:</u>   $\mathcal{W}$ DJP

|  | Drawings |  | Specifications/ | CD-ROM | FF&E | SID |
|---|---|---|---|---|---|---|
|  | Full Size | Half Size | Design Analyses | (pdf & dwg) | Submittal | Submittal |
|  | 22 | 22 | 22 | 22 | 22 | 22 |

$\mathcal{W}$ DJP

The Architect/Engineer shall also provide as-built documents to the Design-Builder at project closeout. ~~The drawings and specifications shall show final as-built conditions of the project and shall consist of~~ <u>per section 1780 of the RFP.</u>

| Stage | Review Sets | | Formal Sets | | Vellums |
|---|---|---|---|---|---|
|  | Half Size | Full Size | Half Size | Full Size |  |
| 50% Schematic Design | 0 | 5 | 5 | 10 | 1 |
| 95% Schematic Design | 0 | 5 | 10 | 20 | 1 |
| 50% Design Development | 0 | 10 | 5 | 20 | 1 |
| 95% Design Development | 0 | 10 | 5 | 20 | 1 |
| 50% Construction Documents | 0 | 10 | 5 | 20 | 1 |
| ~~95% Construction Documents~~ | ~~0~~ | ~~10~~ | ~~5~~ | ~~20~~ | ~~1~~ |

$\mathcal{W}$ DJP

## 2.1.2   Preconstruction/Design Phase

2.1.2.1   100% Design Submittal Documents: The Architect/Engineer shall prepare, for approval by the Design-Builder, Owner, and governmental authorities, including revisions necessary to secure such approvals. The 100% Design Submittal Documents shall consist of drawings, specifications and other documents consistent with the requirements of the RFP. The Architect/Engineer will provide the Design-Builder and Owner with reproducible/electronic copies as outlined in Article 2.1.1.5.   $\mathcal{W}$ DJP

2.1.2.2   Final Construction Documents: Based on the approved 100% Design Submittal Documents, and subject to the requirements of Subparagraph ~~2.1.1.4~~ <u>2.1.2.1</u>, the Architect/Engineer shall prepare, for approval by the Design-Builder, Owner and governmental authorities, including revisions necessary to secure such approvals, Final Construction Documents setting forth in detail the requirements for construction of the Project, consisting of drawings and specifications that comply with codes, laws and regulations enacted at the time of their preparation. The

Architect/Engineer will provide the Design-Builder and Owner with reproducible/electronic copies as outlined in Article 2.1.1.5. .

2.1.2.3 The Design-Builder and Architect/Engineer shall work together to monitor the completion of the drawings and specifications so that the Project can be completed within the fixed price of the contract and by the Substantial Completion dates.

2.1.3 **Construction Administration Phase**

2.1.3.1 Definition: The Construction Administration Phase refers to that period of the Project from the start of construction until final acceptance of the Project by the Owner.

2.1.3.2 Interpretations: The Architect/Engineer, at the request of the Design-Builder, shall render, with reasonable promptness, interpretations, as required by subparagraph 2.1.3.8, necessary for the proper execution of progress of the Work.

2.1.3.3 Decisions: All interpretations and decisions of the Architect/Engineer shall be consistent with the intent of and reasonably inferable from the Contract Documents, and shall be in writing or in the form of drawings.

2.1.3.4 Site visits: The Architect/Engineer shall visit the site a minimum of one on-site visit per month for the duration of the construction period, and as required to resolve design related issues which cannot be resolved through normal information request procedures. However, the Architect/Engineer shall not be required to make on-site visits or observations to check the quality or quantity of the Work. In addition a minimum of one on-site visit per week is anticipated for the duration of the construction period.

2.1.3.5 Means and Methods: Notwithstanding any reference to any rule or regulation in this Agreement or the Contract, the Architect/Engineer shall have no control over or charge of and shall not be responsible for any of the construction means, methods, techniques or procedures, or for the sequence of the installation of any part of the Work, or for any safety measures or programs instituted in connection with the Work, or for the acts or omissions of the Design-Builder, subcontractors or any other persons performing any of the Work, or for any failure on their part to perform the Work in accordance with all Contract Documents' requirements and all other applicable codes and laws governing the construction of the Project. However, the Architect/Engineer shall be responsible for ensuring that the Contract Documents comply with all codes, laws, rules and regulations applicable to the design of the Project unless directed otherwise by the Owner in writing.

2.1.3.6 Access: The Architect/Engineer shall be afforded reasonable access to the Work whenever and wherever it is in preparation or progress.

2.1.3.7 Submittals: The Contract Documents require the Design-Builder to submit shop drawings, product data and samples. The Architect/Engineer is responsible for reviewing and approving the Design-Builder's submittals.

2.1.3.8 Request For Information: Design issues and clarifications will be addressed through Requests For Information (RFI) submitted by the Design-Builder to the Architect/Engineer. The Architect/Engineer will respond to RFI's promptly in writing. The Design-Builder will carefully review RFI's prior to submission to confirm that they relate to design issues and are applicable to the Architect/Engineer's responsibilities as defined herein. RFI's necessitated by problems unrelated to interpretation or clarification of the Project design and not due to the fault of the Architect/Engineer, may be treated as additional services under paragraph 4.3, at the discretion of the Architect/Engineer.

The Architect/Engineer will immediately post the RFI's to the drawings and specifications.

2.1.3.9 Modifications: The Architect/Engineer shall prepare all modifications to the Contract Documents at no additional cost for those items required to bring the design into compliance with the requirements of this agreement. Modifications required as a result of changes initiated by the Owner, the Design-Builder, or its Subcontractors may at the Architect/Engineer's discretion be prepared as an additional service.

2.1.3.10    Value Engineering Concepts and Substitutions: Evaluation of value engineering concepts and proposed substitutions or alternate materials proposed by the Design-Builder are generally considered to be within the Primary Services if evaluated at the appropriate time in the progression of the design. However, depending upon the impact to the effort, schedule, cost, etc., this evaluation may be treated as additional services under paragraph 4.3 if mutually agreed upon between the Architect/Engineer and the Design-Builder.

2.1.3.11    Not Construction Manager: The Design-Builder acknowledges that the Architect/Engineer is not the "construction manager" or "supervisor" of the Work, nor is the Architect/Engineer a "clerk of the works".

2.1.3.12    Record Drawings: Upon receipt of annotated documents and approval by the Owner of the field "as built" drawings, the Architect/Engineer shall prepare a set of reproducible record drawings, in accordance with the requirements of the Contract Documents, based solely on Owner approved marked-up prints, drawings and other data furnished by the Design-Builder to the Architect/Engineer. It is understood that the Architect/Engineer is not responsible for the accuracy and completeness of record drawings and is only serving as a drafting agent. Drawings prepared by the Architect/Engineer (excluding drawings prepared by others) will be annotated by qualified Design-Builder representatives, to reflect as-built conditions and delivered to the Architect/Engineer's office. All drawings within each discipline (i.e., mechanical, electrical, structural, etc.) shall be consolidated and delivered to the Architect/Engineer in complete and legible form including all annotations and as approved by the Owner. Drafting will be accomplished on CADD as required by the Contract Documents. The Architect/Engineer will complete these drawings within 30 days after receipt of the annotated drawings.

2.1.3.13    Existing Conditions: The Architect/Engineer will conduct a reasonable review of the readily observable existing conditions at the site in order to evaluate the accuracy of drawings and other information furnished by the Design-Builder or Owner in connection with the preparation of the Construction Documents. It is understood that the Construction Documents are to be based upon information provided by the Owner as stated in the RFP.

## 2.2        ADDITIONAL SERVICES

The following services are not included in Primary Services. They shall be provided upon the written request of the Design-Builder and shall be paid for by the Design-Builder as provided in this Agreement in addition to the compensation for Primary Services. Additional Services include but are not limited to:

### 2.2.1     Studies

Providing financial feasibility, or other special studies.

### 2.2.2     Surveys

Providing planning surveys, site evaluations, with the exception of the evaluation called for in subparagraph 2.1.3.13 Existing Conditions, environmental studies or comparative studies of prospective sites or preparing special surveys or other studies and submissions in support of filing documents required for approvals by governmental authorities or others having jurisdiction over the Project; however, it is the responsibility of the Architect/Engineer to interpret and apply information provided in surveys delivered to the Architect/Engineer for use in the preparation of the design and full responsibility for these interpretations is a part of the Primary Services.

### 2.2.3     Programming

Providing analysis of Owner's needs and re-programming the requirements of the Project set forth in the RFP, except as required by the RFP.

### 2.2.4     Future Facilities

Except as required by RFP, providing design services relative to facilities, systems and equipment which are not intended to be constructed as part of the Work.

**2.2.5**      **Cost Analysis**

Providing estimates of construction cost, analyses of ownership or operating costs, or quantity surveys or exhaustive studies of inventories of material, equipment and labor.

**2.2.6**      **Interior Design**

Except as required by the RFP; a CID is required.

**2.2.7**      **Revisions**

Making revisions in Drawings, Specifications, or other documents when such revisions are inconsistent with written approvals or instructions previously given by the Owner, or are required by the enactment or revision of codes, laws or regulations subsequent to the correct preparation of such documents.

**2.2.8**      **Inventories**

Providing investigations, surveys, valuations, inventories, or detailed appraisals of existing facilities or relocated equipment, and services required in connection with construction or installation performed by the Owner unrelated to the Work required by the RFP, except as required by the RFP.

**2.2.9**      **Replacement**

Providing consultation concerning replacement of any Work damaged by fire or other cause during construction unrelated to design deficiencies and furnishing services as may be required in connection with the replacement of such Work.

**2.2.10**     **Default**

Providing services made necessary by the default of the Design-Builder, or by major defects or deficiencies in the Work of the Design-Builder, or by failure of performance of the Design-Builder under the Contract.

**2.2.11**     **Expert Witness**

Preparing to serve or serving as an expert witness in connection with any public hearing, arbitration proceeding or legal proceeding.

**2.2.12**     **Consultants**

Providing services of consultants for other than the customary services for the Project listed under paragraph 2.1.

**2.2.13**     **Other Services**

Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted Architect/Engineering practice.

**2.2.14**     **Redesign**

Redesign work due to Design-Builder value engineering after substantial completion of design work, or due to differing or changed conditions from the RFP or from information provided the Architect/Engineer by the Design-Builder or Owner or the Design-Builder changing an element of design after Architect/Engineer's substantial completion of associated design. However, to the extent such redesign services are required due to acts of the Owner, Architect/Engineer's compensation for such services shall be limited to the amount paid by or recovered from the Owner for such service through applicable modification to the Contract. Work will not commence without written authorization.

---

Agreement Between Design-Builder And Architect/Engineer

**2.2.15     Extended Phase**

If the Contract Administration Phase is extended beyond the date of final acceptance of the Project by the Owner, due to any reasons not the fault of or beyond the control of the Architect/Engineer, all Contract Administration Phase services during such extended period shall be considered "Additional Services."

**2.2.16     Succession**

Providing additional services required as a result of the transfer of ownership or assignment of the Agreement to third parties.

**2.2.17     Permits**

Providing investigations, services, calculations or consultations for permits not specifically described in Architect/Engineer's primary services.

**2.2.18     Environmental Related Design**

Design or revisions of design required by environmental or permitting requirements not specifically described in the RFP and enacted subsequent to submittal by the Design-Builder of the final Design Submittal.

**2.2.19     Topographical/Planimetric Land Surveys**

Providing on-site survey services for any purpose.

**2.2.20     Systems**

Providing assistance in the utilization of any equipment or system such as initial start-up or testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation unless required due to a design deficiency caused by the Architect/Engineer or his agents.

**2.3        TIME**

**2.3.1      Schedule**

The Architect/Engineer shall perform Primary and Additional Services as expeditiously as is consistent with professional skill and care and the orderly progress of the work. A schedule for the performance of the Architect/Engineer's Primary Services is incorporated as **Exhibit A**. This schedule shall not, except for delays beyond the control of the Architect/Engineer or its agents, be exceeded.

## ARTICLE III

**3.0        DESIGN-BUILDERS' RESPONSIBILITIES**

The responsibilities of the Design-Builder set forth in this Article III are in addition to those set forth in other articles of this Agreement.

**3.1        PROGRAM**

The Design-Builder shall make known to the Architect/Engineer all available information regarding the Owner's requirements for the Project as contained in the RFP and in other pertinent data obtained by Design-Builder.

**3.2        DECISIONS**

The Design-Builder or his authorized representative shall examine the documents submitted by the Architect/Engineer and render required decisions promptly and provide required data consistent with

professional skill and care and orderly progress of the work so as not to unreasonably delay the Architect/Engineer in the performance of its tasks.

### 3.3   INFORMATION

The Architect/Engineer shall be entitled to rely upon the information and documents contained in the RFP and other documents provided by the Design-Builder for completeness and accuracy in the preparation of the Project designs, Drawings, Specifications, and the performance of the other duties of the Architect/Engineer. The Architect/Engineer shall be responsible for designs based on this information.

### 3.4   CONSULTANTS

If the Design-Builder provides the services of special consultants, all services, information and reports shall be furnished to the Architect/Engineer and their accuracy and completeness may be relied upon by the Architect/Engineer.

### 3.4.1   Materials Testing Agencies

The Owner shall provide the required services of materials testing agencies.

### 3.5   OBSERVED FAULTS

The Design-Builder shall make prompt written notice to the Architect/Engineer of any faults, defects or nonconformities observed or detected in the Contract Documents.

### 3.6   INSURANCE

The Design-Builder shall not permit construction of the Project to begin until the insurance required by the Contract Documents is in effect with the Architect/Engineer named as an additional insured. As a minimum, the Design-Builder shall carry a comprehensive general liability insurance and business auto policy with adequate limits for the Project size and value. In the event the Design-Builder permits construction of the Project to begin before such insurance is obtained, the Design-Builder agrees to indemnify and hold the Architect/Engineer harmless from and against all suits, claims, damages, losses and expenses, including but not limited to reasonable attorney's fees, arising out of construction of the Project to the extent such claims, damages, losses and expenses would otherwise have been covered by such insurance.

### 3.7   RELATED AGREEMENTS

The Design-Builder shall facilitate the accomplishment of the Architect/Engineer's duties by appropriate references to same in the Design-Builder/Subcontractor Agreements, and such references shall be consistent with the Contract Documents, this Agreement and the Contract.

### ARTICLE IV

### 4.0   PAYMENT TO THE ARCHITECT/ENGINEER

### 4.1   DEFINITION OF ARCHITECT/ENGINEER'S EXPENSES

#### 4.1.1   Wage Rate Schedule

The Wage Rate to be paid by the Design-Builder to the Architect/Engineer for the performance of additional services in connection with this Agreement are provided in **Exhibit B**, ~~with the exception of the additional services described in Exhibit C, which are to be paid for on a lump sum basis.~~



**4.1.2       Reimbursable Expenses**

Reimbursable expenses are the following actual expenses incurred by the Architect/Engineer or its consultants in connection with the performance of Additional Services. All such expenses must receive the Design-Builder's prior approval.

4.1.2.1      Expenses for out-of-town transportation from the offices of the Architect/Engineer or his consultants incurred in connection with the Project; all living expenses incurred in connection with out-of-town travel; long distance telephone and facsimile communications.

4.1.2.2      Except as required by the Contract Documents and RFP, expenses of all reproductions, postage and handling fees for Drawings, Specifications, and other documents, not including periodic reproductions for in-office use of the Design-Builder, Architect/Engineer and/or the Architect/Engineer's consultants.

4.1.2.3      Expenses incurred through the use of data processing and photographic reproduction techniques.

4.1.2.4      Expenses of overtime employment of the Architect/Engineer's personnel requiring higher than regular rates, where such employment is requested and authorized in advance by the Design-Builder.

4.1.2.5      Expenses of any renderings, models and/or mockups requested by the Design-Builder in addition to those provided in Primary Services.

4.1.2.6      Expenses of any additional insurance, including professional liability insurance and expenses due to increased limits of liability in excess of that provided by this Agreement.

**4.2       PAYMENT FOR PRIMARY SERVICES**

For the performance of the Primary Services, the Architect/Engineer shall be paid the amounts provided in the schedule of values attached hereto as **Exhibit C**.

**4.3       ADDITIONAL SERVICES**

**4.3.1       Payments for Additional Services on a Time and Material Basis**

Payments for Additional Services as defined in paragraph 2.2, shall be made after presentation of the Architect/Engineer's statement of additional services rendered and agreement thereof by the Design-Builder. Payments are to be made in accordance with the approved DSE expenses and multipliers included as **Exhibit B**.

**4.3.2       Payments for Reimbursable Expenses**

Payments for reimbursable expenses shall be computed at actual cost expended by the Architect/Engineer, his employees and consultants for the Project. However, in the event the Contract permits recovery of profit in connection of such expenses, the Architect/Engineer shall be entitled to payment for profit for such expenses to the extent allowed by the Contract.

**4.4       PAYMENT**

**4.4.1       Monthly Billings**

The Design-Builder shall make payment to the Architect/Engineer within 10 days after the Design-Builder receives payment from the Owner for the Architect/Engineer's monthly billing. Billings for Primary Services and all lump sum amounts stipulated in **Exhibit C** shall be submitted on a percentage of completion basis and for additional services, on actual costs incurred, subject to approval and/or adjustment by the Owner as provided in the RFP. The risk of nonpayment for Architectural/Engineering services, reimbursable, and expenses by nonpayment of the Owner shall rest with the Architect/Engineer. Receipt of payment by Design-Builder from the Owner shall be a condition precedent to the Design-Builder's obligation to make the corresponding payment to the Architect/Engineer. If the Design-Builder shall not pay the Architect/Engineer within 10 days from receipt of

---

payment from the Owner, the amount due Architect/Engineer shall bear interest from the date the payment is due at the rate of one percentage point over the then existing prime rate in effect at Bank One, Austin, Texas as of the first of each month payment is not made. Interest shall be computed annually upon the stated rate.

**4.4.2**      **Payment Delays**

If the Design-Builder delays payment due the Architect/Engineer more than 30 days from the due date, subject to the same terms of subparagraph 4.4.1 above, the Architect/Engineer may upon seven days written notice to the Design-Builder, declare a breach of this Agreement and without waiving any other remedy the Architect/Engineer may have at law or in equity, the Architect/Engineer may at his sole option take the following actions:

4.4.2.1   Declare this Agreement terminated by reason of the Design-Builder's default and provide no further services of any nature and be entitled to whatever damages as permitted by law; or

4.4.2.2   Continue to perform its services without waiving any claims arising from such breach and retain the right to declare a termination under subparagraph 4.4.1 above at any time prior to payment to Architect/Engineer by Design-Builder of amounts due; or

4.4.2.3   Withhold the further distribution of any documents prepared under this Agreement until payment to Architect/Engineer by Design-Builder of amounts due.

**4.5**      **ARCHITECT/ENGINEER'S ACCOUNTING RECORDS**

The Architect/Engineer shall employ generally accepted accounting principles in keeping his records of expenses pertaining to the performance of Additional Services and such records shall be available to the Design-Builder or his representative at mutually convenient times.

**ARTICLE V**

**5.0**      **PROJECT TERMINATION OR SUSPENSION**

This Agreement is subject to the termination and suspension clauses of the Contract Termination rights in this Article 5.0 are secondary to and subject to the termination and suspension terms of the Contract.

**5.1**      **SUSPENSION FOR CAUSES UNRELATED TO THE CONDUCT OF THE OWNER**

Upon a suspension or abandonment of the Project for more than three months for causes unrelated to the conduct of the Owner, which shall be governed by paragraph 5.0 above, the Architect/Engineer shall be compensated, based on the applicable schedule of values and percentage of work complete, for all Primary Services rendered prior to the receipt of written notice from the Design-Builder of such suspension or abandonment or the Architect/Engineer's notice to the Design-Builder of such apparent suspension or abandonment, whichever first occurs, as well as any amounts which may be due for Additional Services performed prior to such action. The Architect/Engineer's compensation shall be equitably adjusted if such Project is resumed after suspension or abandonment.

**5.2**      **TERMINATION BY THE OWNER**

In the event of termination of this Agreement due to termination of the Contract by Owner, the Architect/Engineer shall be compensated for all Primary Services performed as of the date of termination, based on the applicable schedule of values and percentage of work complete, together with all amounts due for Additional Services performed as of that date. Payment of services and reimbursable expenses shall be due no later than 10 days after the date of receipt of the corresponding payment by Design-Builder from the Owner, as provided in subparagraph 4.4.1 above. Such payment shall constitute the full amount due the Architect/Engineer in the event of such termination.

## ARTICLE VI

#### 6.0     OWNERSHIP OF DOCUMENTS - USE OF DOCUMENTS

Ownership of the Drawings and Specifications prepared by the Architect/Engineer shall be governed by the Contract.

## ARTICLE VII

#### 7.0     DISPUTES

#### 7.1     DISPUTES BETWEEN THE ARCHITECT/ENGINEER AND DESIGN-BUILDER

The Architect/Engineer and Design-Builder have, by this Agreement, undertaken responsibilities which are essential to the successful development and construction of the Project. However, it is possible that disputes and disagreements may arise during the course of the Project. In order to facilitate a fair and prompt resolution of those disputes, the parties agree as follows:

#### 7.1.1   Claim Procedures

In the event a claim, dispute, or other matter in question or controversy ("claim") arises between the parties to this Agreement, which claim relates to this Agreement or the breach of it, notice of such claim shall be given in writing to the party against whom the claim may be made not more than 20 working days after such claim arises, in order that the party to whom notice is given may remedy, rectify, or make substantial progress toward resolution of the problem or difficulty giving rise to the claim within 30 days of receipt of the notice. The parties will make good faith efforts to cooperate to resolve the issues between them.

#### 7.2     DISPUTES RELATING TO THE CONDUCT OF THE OWNER

In the event of a dispute relating to the conduct of the Owner, the dispute shall be pursued and resolved pursuant to the disputes resolution provisions of the Contract and the parties shall be bound by the results of such proceedings and their recovery shall be limited to their respective interest in any settlement, award or judgment resulting from such proceedings. The Architect/Engineer will be provided the opportunity by the Design-Builder to participate in such proceedings to the extent permitted by the Contract and the authority presiding over the proceedings. The cost of such proceedings shall be born by the Architect/Engineer and Design-Builder according to their respective interests in such claims or disputes.

#### 7.3     ARBITRATION

In the event a dispute arises between the parties which is not resolved as provided in subparagraph 7.1.1 or covered by paragraph 7.2 above, it shall be resolved by arbitration pursuant to the then prevailing Construction Industry Rules of the American Arbitration Association.

#### 7.4     NEGLIGENCE OF THE ARCHITECT/ENGINEER

The Design-Builder agrees that it will make no claims against the Architect/Engineer arising out of any Project cost overruns, change orders, extra work or other Project expense except for those expenses caused solely by an error or omission of the Architect/Engineer or his agents.

In the event a dispute arises between the Owner and the Design-Builder which involves the alleged negligence of the Architect/Engineer, the Architect/Engineer must be given the opportunity and hereby agrees to join in the applicable method of resolution in accordance with procedures called for in the Contract.

## ARTICLE VIII

**8.0      RISK MANAGEMENT**

**8.1      INSURANCE REQUIREMENTS**

The Architect/Engineer shall, at his expense, unless otherwise noted, obtain and maintain during the terms of this Agreement, public liability, worker's compensation and professional liability (errors and omissions) insurance in the following amounts and coverages:

**8.1.1      Comprehensive General Liability Insurance**

Comprehensive general liability insurance including coverage for bodily injury, property damage and personal injury, and contractual liability and broad form property damage with per occurrence combined single limits in an amount not less than $5 million. Design-Builder shall be named as an additional insured with respect to such coverage and the coverage shall be primary to any insurance coverage carried by Design-Builder.

**8.1.2      Comprehensive Automobile Liability Insurance**

Comprehensive automobile liability insurance, including non-owned, hired vehicles, with combined single limits of not less than $5 million for bodily injury and $5 million for property damage. Design-Builder shall be named as additional insured with respect to such coverage and the coverage shall be primary to any insurance coverage carried by Design-Builder.

**8.1.3      Professional Liability and Errors and Omissions Insurance**

The Architect/Engineer shall carry professional liability and errors and omissions insurance, covering the services provided under this Agreement, as is acceptable to and approved by the Owner.  Such insurance shall have minimum policy limits of $5 million in the aggregate and $5 million per claim.  The fees for such insurance will be at the expense of the Architect/Engineer.  A Certificate of Insurance indicating the expiration date of the Architect/Engineer's professional liability insurance is required.  The Architect/Engineer shall continue the professional liability insurance coverage for not less than one year after the Final Completion of the Work.  The professional liability policy or policies shall be in the name of the respective professionals performing such services, which shall include the Architect/Engineer and the Architect/Engineer's consultants furnishing services for the Project.  The Architect/Engineer will bear all costs associated with this policy including payment of any deductible amounts applicable to any claim.

**8.1.4      Worker's Compensation Insurance**

Statutory amounts of Worker's Compensation insurance.

**8.2      MAINTENANCE OF POLICIES**

The Architect/Engineer agrees to maintain such policies in such amounts for the term of this Agreement. Certificates evidencing such policies are in full force and effect and with respect to any renewals thereof shall also be furnished to the Design-Builder.  Any and all policies issued to the Architect/Engineer and related certificates of insurance shall provide that the same may not be canceled without giving at least thirty days prior written notice to Design-Builder.

**8.3      SUBROGATION**

The Design-Builder and the Architect/Engineer waive all rights against (1) each other and the contractors, subcontractors, sub-subcontractors, consultants, agents and employees, each of the other, and (2) the Owner and separate contractors, if any, and their subcontractors and sub-subcontractors for damages caused by fire and other perils to the extent covered by any property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance.

8.4     **INSURANCE**

Unless provided by the Owner via an Owner Controlled Insurance Program (OCIP), the Design-Builder shall obtain and maintain during the life of the Project, at its expense, comprehensive general liability insurance, builder's risk insurance, completed operations insurance and such other insurance in amounts required by the Contract, except as required to be provided by the Architect/Engineer pursuant to paragraph 8.1. The Architect/Engineer shall be named as an additional insured on the builder's risk policy provided by the Design-Builder.

8.5     **DESIGN-BUILDER INDEMNIFICATION**

**THE ARCHITECT/ENGINEER IS OBLIGATED TO PROVIDE CERTAIN SERVICES UNDER THIS AGREEMENT. HOWEVER, THE PARTIES RECOGNIZE THAT THE ARCHITECT/ENGINEER MAY BE REQUIRED TO EXPEND SUBSTANTIAL SUMS IN DEFENSE COSTS IN THE EVENT OF CLAIMS OR SUIT ARISING OUT OF THE PROJECT WHICH ARE NOT RELATED TO THE ARCHITECT/ENGINEER'S PERFORMANCE OF DESIGN SERVICE PURSUANT TO THIS AGREEMENT. THEREFORE, THE DESIGN-BUILDER INDEMNIFIES AND HOLDS THE ARCHITECT/ENGINEER HARMLESS FROM AND AGAINST ALL CLAIMS, SUITS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES ARISING OUT OF OR RESULTING FROM THE DESIGN-BUILDER'S, ITS AGENT'S, OR SUBCONTRACTOR'S NEGLIGENT ACTS OR WILLFUL MISCONDUCT.**

8.6     **INDEMNIFICATION**

**THE ARCHITECT/ENGINEER AGREES TO INDEMNIFY THE DESIGN-BUILDER AND TO HOLD THE DESIGN-BUILDER HARMLESS, AGAINST LOSSES, DAMAGES, COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES), LIABILITIES AND OTHER OBLIGATIONS WHICH THE DESIGN-BUILDER INCURS AS A RESULT OF THE ARCHITECT/ENGINEER'S NEGLIGENT ACTS OR WILLFUL MISCONDUCT IN THE PERFORMANCE OF THE ARCHITECT/ENGINEER'S DESIGN SERVICES. THE ARCHITECT/ENGINEER REPRESENTS TO THE DESIGN-BUILDER THAT THE ARCHITECT/ENGINEER'S SERVICES SHALL BE PERFORMED IN ACCORDANCE WITH THOSE STANDARDS OF CARE, SKILL AND DILIGENCE AND THOSE PRACTICES AND PROCEDURES WHICH ARE COMMONLY FOLLOWED BY ARCHITECT/ENGINEERS IN PERFORMING THE SAME OR SIMILAR SERVICES IN AUSTIN, TEXAS.**

8.6.1   **Indemnification Acknowledgement**

The Design-Builder expressly acknowledges and agrees that the foregoing representation shall not apply in connection with, and that the Architect/Engineer shall have no responsibility for, consequences resulting from: (1) the Design-Builder's breach or failure to perform a responsibility contained in this Agreement, or (2) any of the following circumstances:

8.6.1.1   The discovery, identification, presence, handling, disposal, or removal of, or exposure of a person to hazardous materials preexisting in any form at the Project, including but not limited to asbestos or asbestos products, unrelated to the Architect/Engineer's willful misconduct.

8.6.1.2   Modification to or use of any drawings, specifications, or other documents furnished by the Architect/Engineer, which modification or use is not contemplated by this Agreement or approved in writing by the Architect/Engineer.

8.6.1.3   The Architect/Engineer's inability or failure to complete the services contemplated by this Agreement as a result of termination of this Agreement in accordance with Article V prior to completion of the Project, provided such termination is not due to the fault of the Architect/Engineer.

8.7     **SHARED COSTS**

If the Design-Builder and the Architect/Engineer are jointly adjudged by any court, tribunal or arbitrator of competent jurisdiction, for any claims, suits, losses and expenses, they shall bear their pro rata share of the costs of the proceedings.

## ARTICLE IX

9.0     **MISCELLANEOUS**

The terms of this Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Texas.  In addition, the terms used in this Agreement have the same meaning as those same terms used in the Contract Documents.

9.1     **FORCE MAJEURE**

The Architect/Engineer shall not be liable to the Design-Builder and shall not be deemed in default hereunder for any failure or delay in the performance of the Agreement, caused by or arising out of any disaster, labor disturbances, shortages of labor or equipment, strikes, lockouts, other industrial disturbances, acts of God, acts of public enemy, war, blockade, riot, insurrection, lightning, fire, flood, inclement weather, explosion, or any regulation restrictions or act of governmental agencies, to the extent that a time extension or relief for such cause or act is available under the Contract.

9.2     **SUCCESSION**

This Agreement shall inure to the benefit of all partners, successors, assigns, and legal representatives of each party to this Agreement and all partners, successors, assigns and legal representatives of each party are hereby bound to the partners, successors, and assigns of this Agreement. The Architect/Engineer shall not assign or transfer any interest in this Agreement without the written consent of the Design-Builder. The Design-Builder shall not assign this Agreement without the written consent of the Architect/Engineer. In the event the Design-Builder assigns the Agreement or any part thereof, the Architect/Engineer may require full payment for all services, including Additional Services as stated in paragraph 2.2, performed as of the date of assignment, which the Design-Builder shall promptly pay.

9.3     **ENTIRE AGREEMENT**

This Agreement represents the entire and integrated Agreement between the Design-Builder and the Architect/Engineer concerning the subject matter hereof, and supersedes all prior negotiations, representations or agreements whether they are written or oral. This Agreement may only be amended in writing by the parties.

9.4     **ATTORNEY'S FEES**

The prevailing party in any legal proceeding concerning this Agreement shall be entitled to recover all reasonable costs, including reasonable attorney's fees, incurred in the enforcement of this agreement.

9.5     **SEVERABILITY**

In the event any provision of this Agreement shall be held to be invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

9.6     **CAPTIONS**

The captions in this Agreement are for convenience only and shall not be deemed a part hereof.

This Agreement is entered into as of the day and year first written above.

**HENSEL PHELPS CONSTRUCTION CO.**                    The Benham Companies LLC

By: _____                          By: _____

Glen Miller                                           Division   VP
Operations Manager

SEE&I_CMH_000618 – 14

# Exhibit "A"



MASTER DESIGN SCHEDULE
FT. Bliss

| ID | | Task Name | Duration | Start | Finish |
|----|---|-----------|----------|-------|--------|
| 1 | | Design Package 1 (DP 1) | 61 days | Mon 10/9/06 | Thu 1/18/07 |
| 2 | | UEPH | 61 days | Mon 10/9/06 | Thu 1/18/07 |
| 3 | | Interim Design/Modular Shops | 21 days | Mon 10/9/06 | Mon 11/6/06 |
| 4 | | Gov't Review | 5 days | Tue 11/7/06 | Mon 11/13/06 |
| 5 | | Meeting | 3 days | Tue 11/14/06 | Thu 11/16/06 |
| 6 | | Final Design/Modular Shops | 12 days | Fri 11/17/06 | Wed 12/6/06 |
| 7 | | Gov't Review | 7 days | Thu 12/7/06 | Fri 12/15/06 |
| 8 | | Meeting | 3 days | Tue 1/2/07 | Thu 1/4/07 |
| 9 | | Design Complete | 10 days | Fri 1/5/07 | Thu 1/18/07 |
| 10 | | TEMF | 61 days | Mon 10/9/06 | Thu 1/18/07 |
| 11 | | Interim Design/PEMB Shops | 21 days | Mon 10/9/06 | Mon 11/6/06 |
| 12 | | Gov't Review | 5 days | Tue 11/7/06 | Mon 11/13/06 |
| 13 | | Meeting | 3 days | Tue 11/14/06 | Thu 11/16/06 |
| 14 | | Final Design/PEMB Shops | 12 days | Fri 11/17/06 | Wed 12/6/06 |
| 15 | | Gov't Review | 7 days | Thu 12/7/06 | Fri 12/15/06 |
| 16 | | Meeting | 3 days | Tue 1/2/07 | Thu 1/4/07 |
| 17 | | Design Complete | 10 days | Fri 1/5/07 | Thu 1/18/07 |
| 18 | | COF | 61 days | Mon 10/9/06 | Thu 1/18/07 |
| 19 | | Interim Design/Modular Shops | 21 days | Mon 10/9/06 | Mon 11/6/06 |
| 20 | | Gov't Review | 5 days | Tue 11/7/06 | Mon 11/13/06 |
| 21 | | Meeting | 3 days | Tue 11/14/06 | Thu 11/16/06 |
| 22 | | Final Design/Modular Shops | 12 days | Fri 11/17/06 | Wed 12/6/06 |
| 23 | | Gov't Review | 7 days | Thu 12/7/06 | Fri 12/15/06 |
| 24 | | Meeting | 3 days | Tue 1/2/07 | Thu 1/4/07 |
| 25 | | Design Complete | 10 days | Fri 1/5/07 | Thu 1/18/07 |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | | | | | |
| 32 | | | | | |
| 33 | | | | | |
| 34 | | | | | |

Project: MASTER SCHEDULE FT BLI
Date: Mon 10/9/06

| Task | | Milestone | ◆ | External Tasks | |
| Split | | Summary | | External Milestone | ◇ |
| Progress | | Project Summary | | Deadline | |

Page 1

SEE&I_CMH_000019

# Exhibit "A"

SEE&I_ CMH_ 000020



MASTER DESIGN SCHEDULE
FT. Bliss

| ID | | Task Name | Duration | Start | Finish |
|----|---|-----------|----------|-------|--------|
| 35 | | Design Package 2 (DP 2) | 131 days | Mon 10/9/06 | Thu 4/26/07 |
| 36 | | UEPH | 104 days | Mon 10/9/06 | Tue 3/20/07 |
| 37 | | Internal Kick Off | 5 days | Mon 10/9/06 | Fri 10/13/06 |
| 38 | | Interim Design | 29 days | Mon 10/16/06 | Mon 11/27/06 |
| 39 | | Gov't Review | 10 days | Tue 11/28/06 | Mon 12/11/06 |
| 40 | | Meeting | 3 days | Tue 12/12/06 | Thu 12/14/06 |
| 41 | | Final Design | 30 days | Fri 12/15/06 | Fri 2/9/07 |
| 42 | | Gov't Review | 10 days | Mon 2/12/07 | Fri 2/23/07 |
| 43 | | Meeting | 3 days | Mon 2/26/07 | Wed 2/28/07 |
| 44 | | Design Complete | 14 days | Thu 3/1/07 | Tue 3/20/07 |
| 45 | | TEMF | 119 days | Mon 10/9/06 | Tue 4/10/07 |
| 46 | | Internal Kick Off | 5 days | Mon 10/9/06 | Fri 10/15/06 |
| 47 | | Interim Design | 44 days | Mon 10/16/06 | Tue 1/2/07 |
| 48 | | Gov't Review | 10 days | Wed 1/3/07 | Tue 1/16/07 |
| 49 | | Meeting | 3 days | Wed 1/17/07 | Fri 1/19/07 |
| 50 | | Final Design | 30 days | Mon 1/22/07 | Fri 3/2/07 |
| 51 | | Gov't Review | 10 days | Mon 3/5/07 | Fri 3/16/07 |
| 52 | | Meeting | 3 days | Mon 3/19/07 | Wed 3/21/07 |
| 53 | | Design Complete | 14 days | Thu 3/22/07 | Tue 4/10/07 |
| 54 | | COF | 131 days | Mon 10/9/06 | Thu 4/26/07 |
| 55 | | Internal Kick Off | 5 days | Mon 10/9/06 | Fri 10/13/06 |
| 56 | | Interim Design | 57 days | Mon 10/16/06 | Fri 1/19/07 |
| 57 | | Gov't Review | 10 days | Mon 1/22/07 | Fri 2/2/07 |
| 58 | | Meeting | 3 days | Mon 2/5/07 | Wed 2/7/07 |
| 59 | | Final Design | 29 days | Thu 2/8/07 | Tue 3/20/07 |
| 60 | | Gov't Review | 10 days | Wed 3/21/07 | Tue 4/3/07 |
| 61 | | Meeting | 3 days | Wed 4/4/07 | Fri 4/6/07 |
| 62 | | Design Complete | 14 days | Mon 4/9/07 | Thu 4/26/07 |

Project: MASTER SCHEDULE FT BLI
Date: Mon 10/9/06

| Task | Milestone | External Tasks |
|------|-----------|----------------|
| Split | Summary | External Milestone |
| Progress | Project Summary | Deadline |

Page 2

# Exhibit "B"

**SCHEDULE OF BILLING RATES**

| CLASSIFICATION | BILLING RATE |
|---|---|
| *Exempt* | |
| Engineer/Architect I | 75.00 |
| Engineer/Architect II | 83.00 |
| Engineer/Architect III | 91.00 |
| Engineer/Architect IV | 101.00 |
| Engineer/Architect V | 116.00 |
| Engineer Architect VI | 129.00 |
| Interior Designer I | 52.00 |
| Interior Designer II | 62.00 |
| Interior Designer III | 72.00 |
| Interior Designer IV | 83.00 |
| Interior Designer V | 93.00 |
| Interior Designer VI | 123.00 |
| Principal Interior Designer | 139.00 |
| Project Manager I | 118.00 |
| Project Manager II | 129.00 |
| Project Manager III | 139.00 |
| Project Control Engineer | 113.00 |
| Estimator | 91.00 |
| Senior Estimator | 118.00 |
| Sr. Construction Representative | 118.00 |
| | |
| *Non-Exempt* | |
| Technician I | 46.00 |
| Technician II | 53.00 |
| Technician III | 59.00 |
| Technician IV | 70.00 |
| Technician V | 78.00 |
| Technician VI | 86.00 |
| Chief Designer | 93.00 |
| Secretary I | 37.00 |
| Secretary II | 49.00 |
| Secretary III | 54.00 |
| File Clerk | 35.00 |
| Accounting | 61.00 |
| Construction Representative | 87.00 |

Notes: Classifications may be added to suit the project.

SEE&I_CMH_000021

# Exhibit "C"

**Benham Schedule of Values**
Ft. Bliss - Task Order 1 for UEPH

SEE&I_CMH_000022

| | Total Fee | October 2006 | November 2006 | December 2006 | January 2007 | February 2007 | March 2007 | April 2007 | May 2007 | CA Total | Construction Months | CA per month |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UEPH** | **1,526,000** | 115,060 | 184,290 | 184,290 | 184,290 | 184,290 | 184,290 | 184,290 | | 305,200 | 18 | 16,956 |
| | | 8% | 20% | 32% | 44% | 56% | 68% | 80% | 80% | 100% | | |
| Design | | 102,403 | 164,018 | 164,018 | 164,018 | 164,018 | 164,018 | 164,018 | 0 | 271,628 | | 15,090 |
| Non-Design | | 12,657 | 20,272 | 20,272 | 20,272 | 20,272 | 20,272 | 20,272 | 0 | 33,572 | | 1,865 |



**Hensel Phelps**
**Construction Co.**

SOUTHWEST DISTRICT
8322 Cross Park Drive
Austin, Texas 78754
P.O. Box 140107
Austin, Texas 78714-0107
(512) 834-9848
(512) 834-9844 FAX

Direct all correspondence to jobsite:
P O Box 6150 (mailing)
Bldg T11670, SSG Sims Road
(shipping)
El Paso, TX 79906



September 4, 2007

The Benham Companies
1 West 3rd Street Suite, 100
Tulsa, Oklahoma 74103

Attention:    Dan Pearson

Subject:    **Executed Subcontract Agreement - 7007069-9001000**
Unaccompanied Enlisted Personnel Housing - IDIQ #2 (UEPH)
Fort Bliss, Texas
Contract No. W9126G-06-D-0039

Dear Dan:

Enclosed for your files is one original executed subcontract for the referenced project.

Should you have questions regarding the above, please contact the undersigned.

Sincerely,

HENSEL PHELPS CONSTRUCTION CO.

Brian Penner
Project Manager

BP/mv

c:    7006064.50.10.01, , BP, GM, JM, ML
Greeley (one original)

File # _____
Project # _____
FILE COPY

SEE&I_CMA_001284  Performance!



RECEIVED

AUG 0 7 2007

HENSEL PHELPS CONSTRUCTION CO.

**AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER**

for



RECEIVED
SEP 0 7 2007

# IDIQ for Design- Build Services for Southwestern Region Brigade Combat Team Complex Unaccompanied Enlisted Personnel Housing

## Fort Bliss, El Paso, Texas

**BETWEEN**

**THE DESIGN-BUILDER**

**Hensel Phelps Construction Co.**
**8322 Cross Park Drive**
**Austin, Texas 78754**

*AND*

**ARCHITECT/ENGINEER**

**The Benham Companies LLC**
**1 West 3rd Street, Suite 100**
**Tulsa, Oklahoma  74103**

July 10, 2007

SEE&I_CMH_001285

## AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER

### THIS AGREEMENT

Made as of the 10th day of July, Two Thousand and Seven

### BETWEEN

The Design-Builder:  Hensel Phelps Construction Co. (hereinafter referred to as the "Design-Builder)"
8322 Cross Park Drive
Austin, Texas 78754

The Architect/Engineer  The Benham companies, LLC (hereinafter referred to as the
"Architect/Engineer"
1 West 3rd Street, Suite 100
Tulsa, Oklahoma 74103

**For the following Project:**  **IDIQ for Design Build Services for Southwestern Region Brigade Combat Team Complex Unaccompanied Enlisted Personnel Housing Fort Bliss, El Paso, Texas**

**Contract #W9126G-06-D-0039 – TASK ORDER 0002**

The Project is described in the Contract between the U.S. Army Corps of Engineers, Fort Worth (hereinafter referred to as "Owner") and Hensel Phelps Construction Co. (hereinafter referred to as the "Design-Builder"), as a Project consisting of Unaccompanied Enlisted Personnel Housing. The Project generally includes eleven (11) Individual Buildings of approximately 540,000 total gsf. Also included is the associated sitework to the five foot line.

For which the Owner is:  U.S. Army Corps of Engineers
Fort Worth District
Fort Worth, Texas

Being administered by:  Mr. Brad Hartell
6380 Morgan Ave, Suite A
Fort Bliss, Texas 79906

The requirements of this Agreement shall be in accordance with the following and in the order of precedence listed below:
$July\ 10^{th}, 2007$

- This Agreement between Design-Builder and Architect/Engineer, dated ~~November 30th, 2006~~ (hereinafter referred to as the "Agreement") and     DJP
- The Agreement between the Design-Builder and the Owner, and
- RFP No. W9126G-06-R-0002 issued by The U.S. Army Corps of Engineers, Fort Worth District, and
- The Design-Builder's proposal dated ~~July 6, 2006~~ in response to RFP No. W9126G-06-R-0002.     DJP
*March 30, 2007*

The Design-Builder engages the Architect/Engineer to perform the professional services set forth in this Agreement.

Term: The term of this Agreement shall be from the date first written above until final acceptance of the Project by the Owner and/or the completion of all design responsibilities for which the Design-Builder is contractually obligated under the Contract, whichever date occurs last.


SEE&I_CMH_001286

## TABLE OF CONTENTS

ARTICLE I .................................................................................................................................... 1
    1.0    GENERAL PROVISIONS ............................................................................................ 1
    1.1    BASIC DEFINITIONS ................................................................................................. 1

ARTICLE II ................................................................................................................................. 1
    2.0    ARCHITECT/ENGINEERS' SERVICES ................................................................... 1
    2.1    PRIMARY SERVICES ................................................................................................ 1
    2.2    ADDITIONAL SERVICES .......................................................................................... 4
    2.3    TIME ........................................................................................................................... 6

ARTICLE III ............................................................................................................................... 6
    3.0    DESIGN-BUILDERS' RESPONSIBILITIES ............................................................. 6
    3.1    PROGRAM .................................................................................................................. 6
    3.2    DECISIONS ................................................................................................................. 6
    3.3    INFORMATION .......................................................................................................... 6
    3.4    CONSULTANTS .......................................................................................................... 7
    3.5    OBSERVED FAULTS .................................................................................................. 7
    3.6    INSURANCE` .............................................................................................................. 7
    3.7    RELATED AGREEMENTS ......................................................................................... 7

ARTICLE IV ................................................................................................................................ 7
    4.0    PAYMENT TO THE ARCHITECT/ENGINEER ...................................................... 7
    4.1    DEFINITION OF ARCHITECT/ENGINEER'S EXPENSES ................................... 7
    4.2    PAYMENT FOR PRIMARY SERVICES .................................................................. 8
    4.3    ADDITIONAL SERVICES .......................................................................................... 8
    4.4    PAYMENT ................................................................................................................... 9
    4.5    ARCHITECT/ENGINEER'S ACCOUNTING RECORDS ....................................... 9

ARTICLE V ............................................................................................................................... 10
    5.0    PROJECT TERMINATION OR SUSPENSION ...................................................... 10
    5.1    SUSPENSION FOR CAUSES UNRELATED TO THE CONDUCT OF THE OWNER ........ 10
    5.2    TERMINATION BY THE OWNER .......................................................................... 10

ARTICLE VI ............................................................................................................................. 10
    6.0    OWNERSHIP OF DOCUMENTS - USE OF DOCUMENTS ................................. 10

ARTICLE VII ............................................................................................................................ 10
    7.0    DISPUTES ................................................................................................................. 10
    7.1    DISPUTES BETWEEN THE ARCHITECT/ENGINEER AND DESIGN-BUILDER .............. 10
    7.2    DISPUTES RELATING TO THE CONDUCT OF THE OWNER ........................... 11
    7.3    ARBITRATION ........................................................................................................ 11
    7.4    NEGLIGENCE OF THE ARCHITECT/ENGINEER .............................................. 11

ARTICLE VIII ........................................................................................................................... 11
    8.0    RISK MANAGEMENT ............................................................................................. 11
    8.1    INSURANCE REQUIREMENTS ............................................................................. 11
    8.2    MAINTENANCE OF POLICIES .............................................................................. 12
    8.3    SUBROGATION ....................................................................................................... 12
    8.4    INSURANCE .............................................................................................................. 12
    8.5    DESIGN-BUILDER INDEMNIFICATION ............................................................. 12
    8.6    INDEMNIFICATION ............................................................................................... 12
    8.7    SHARED COSTS ...................................................................................................... 13

SEE&I_CMH_001287

**ARTICLE IX** ......................................................................................................................... 13
    **9.0**      **MISCELLANEOUS** ............................................................................... 13
    **9.1**      **FORCE MAJEURE**.................................................................................. 13
    **9.2**      **SUCCESSION**......................................................................................... 13
    **9.3**      **ENTIRE AGREEMENT** ......................................................................... 13
    **9.4**      **ATTORNEY'S FEES**.............................................................................. 13
    **9.5**      **SEVERABILITY** ..................................................................................... 13
    **9.6**      **CAPTIONS**.............................................................................................. 13

**Exhibit A - Design Schedule**
**Exhibit B - Additional Service Rates**
**Exhibit C - Schedule of Values**

SEE&I_CMH_001288

## ARTICLE I

**1.0**     **GENERAL PROVISIONS**

**1.1**     **BASIC DEFINITIONS**

**1.1.1**     **Project**

The Project is the total design and construction for which the Design-Builder is responsible under the Contract with the Owner, including all professional design services and all labor, materials and equipment used or incorporated in such design and construction.

**1.1.2**     **Work**

The Work comprises the completed construction designed by the Architect/Engineer under the Project and includes labor necessary to produce such construction and materials and equipment incorporated or to be incorporated in such construction.

**1.1.3**     **Design-Builder**

The Design-Builder is **Hensel Phelps Construction Co.**

**1.1.4**     **Contract**

The Agreement between the Owner and the Design-Builder.

**1.1.5**     **Architect/Engineer's Consultants**

Engineers, consultants and other experts retained by the Architect/Engineer in certain aspects of the Project relating to the overall undertaking by the Architect/Engineer as specified in this Agreement. The costs and fees of these engineers and consultants are included in the Architect/Engineer's fee unless stated otherwise. Nothing contained herein shall create any contractual or other obligation between Design-Builder and any engineer, consultant or expert retained by the Architect/Engineer in connection with the Project.

**1.1.6**     **RFP**

Request for Proposals issued by The U.S. Army Corps of Engineers, Fort Worth, Texas, RFP No. W9126G-06-R-0002 including amendments 0001 thru ~~0015~~ *0006*.

**1.1.7**     **Contract Documents**

Includes the Contract and all amendments or change orders issued thereto; all documents issued for bid packages as developed by the Design-Builder in conjunction with the Architect/Engineer, and all design drawings and specifications approved by the Design-Builder and Owner during the course of the Project.

## ARTICLE II

**2.0**     **ARCHITECT/ENGINEERS' SERVICES**

**2.1**     **PRIMARY SERVICES**

The Architect/Engineer's Primary Services include all customary architectural, structural, mechanical, electrical, plumbing, fire protection, civil, interiors and landscape design services, and other primary services required to complete the terms of this Agreement, generally described below.

SEE&I_CMH_001289

**2.1.1**   **General**

**2.1.1.1**   The Architect/Engineer shall provide all design services required by the Contract Documents in a timely manner as provided in the Design Schedule to allow timely procurement and construction of the Project. Said design responsibilities include final responsibility for the interpretation of all design information provided in the RFP, including soils reports, and surveys, and the preparation of the design of all foundations, mechanical and electrical facilities, utilities, and other design facets of the Project.

**2.1.1.2**   Estimate: The Architect/Engineer is not responsible for preparation or accuracy of any construction cost estimates. However, the Architect/Engineer will assist Design-Builder by reviewing the construction cost estimates and providing the Design-Builder with comments which reflect the Architect/Engineer's professional experience regarding costs.

**2.1.1.3**   Permits: The Architect/Engineer is responsible for preparation and submittal of the applications for any required permits, including construction related permits, to the extent the requirement for permits is known or reasonably foreseeable based on the scope of primary services. The Architect/Engineer shall maintain responsibility for the permit process, including revisions necessary to secure approvals, until such time as Authorities having jurisdiction approve the permit applications. The Design-Builder shall cooperate with the Architect/Engineer in completing the required permit applications and documentation necessary for obtaining the permits. The Architect/Engineer will not be responsible for fees for building or construction related permits.   *RP*   *DJP*

**2.1.1.4**   Storm Water Pollution Prevention Plan (NPDES Permit): Preliminary plans preparation ~~in~~ *is* included in General Services for the design Builder to obtain permit.   *DJP*

**2.1.1.5**   Reproduction and Printing: The Architect/Engineer shall provide documents to the Design-Builder at the stages and quantities listed below, *or as allowed by the RFP.*   *DJP*   *RP*

| | Drawings | Specifications/ | CD-ROM | FF&E | SID |
|---|---|---|---|---|---|
| Full Size | Half Size | Design Analyses | (pdf & dwg) | Submittal | Submittal |
| 22 | 22 | 22 | 22 | 22 | 22 |

The Architect/Engineer shall also provide as-built documents to the Design-Builder at project closeout. ~~The drawings and specifications shall show final as-built conditions of the project and shall consist of:~~ *per section 1780 of the RFP*   *RP DJP*

| Stage | Review Sets | | Formal Sets | | |
|---|---|---|---|---|---|
| | Half Size | Full Size | Half Size | Full Size | Vellums |
| 50% Schematic Design | 0 | 5 | 5 | 10 | 1 |
| 95% Schematic Design | 0 | 5 | 10 | 20 | 1 |
| 50% Design Development | 0 | 10 | 5 | 20 | 1 |
| 95% Design Development | 0 | 10 | 5 | 20 | 1 |
| 50% Construction Documents | 0 | 10 | 5 | 20 | 1 |
| 95% Construction Documents | 0 | 10 | 5 | 20 | 1 |

**2.1.2**   **Preconstruction/Design Phase**

**2.1.2.1**   100% Design Submittal Documents: The Architect/Engineer shall prepare, for approval by the Design-Builder, Owner, and governmental authorities, including revisions necessary to secure such approvals. The 100% Design Submittal Documents shall consist of drawings, specifications and other documents consistent with the requirements of the RFP. The Architect/Engineer will provide the Design-Builder and Owner with reproducible/electronic copies as outlined in Article 2.1.1.5.   *RP DJP*

**2.1.2.2**   Final Construction Documents: Based on the approved 100% Design Submittal Documents, and subject to the requirements of Subparagraph ~~2.1.2.1~~ *2.1.2.1*, the Architect/Engineer shall prepare, for approval by the Design-Builder, Owner and governmental authorities, including revisions necessary to secure such approvals, Final Construction

SEE&I_CMH_001290

Documents setting forth in detail the requirements for construction of the Project, consisting of drawings and specifications that comply with codes, laws and regulations enacted at the time of their preparation. The Architect/Engineer will provide the Design-Builder and Owner with reproducible/electronic copies as outlined in Article 2.1.1.5. .

2.1.2.3   The Design-Builder and Architect/Engineer shall work together to monitor the completion of the drawings and specifications so that the Project can be completed within the fixed price of the contract and by the Substantial Completion dates.

**2.1.3**      **Construction Administration Phase**

2.1.3.1   Definition: The Construction Administration Phase refers to that period of the Project from the start of construction until final acceptance of the Project by the Owner.

2.1.3.2   Interpretations: The Architect/Engineer, at the request of the Design-Builder, shall render, with reasonable promptness, interpretations, as required by subparagraph 2.1.3.8, necessary for the proper execution of progress of the Work.

2.1.3.3   Decisions: All interpretations and decisions of the Architect/Engineer shall be consistent with the intent of and reasonably inferable from the Contract Documents, and shall be in writing or in the form of drawings.

2.1.3.4   Site visits: The Architect/Engineer shall visit the site a minimum of one on-site visit per month for the duration of the construction period, and as required to resolve design related issues which cannot be resolved through normal information request procedures. However, the Architect/Engineer shall not be required to make on-site visits or observations to check the quality or quantity of the Work. In addition a minimum of one on-site visit per week is anticipated for the duration of the construction period.

2.1.3.5   Means and Methods: Notwithstanding any reference to any rule or regulation in this Agreement or the Contract, the Architect/Engineer shall have no control over or charge of and shall not be responsible for any of the construction means, methods, techniques or procedures, or for the sequence of the installation of any part of the Work, or for any safety measures or programs instituted in connection with the Work, or for the acts or omissions of the Design-Builder, subcontractors or any other persons performing any of the Work, or for any failure on their part to perform the Work in accordance with all Contract Documents' requirements and all other applicable codes and laws governing the construction of the Project. However, the Architect/Engineer shall be responsible for ensuring that the Contract Documents comply with all codes, laws, rules and regulations applicable to the design of the Project unless directed otherwise by the Owner in writing.

2.1.3.6   Access: The Architect/Engineer shall be afforded reasonable access to the Work whenever and wherever it is in preparation or progress.

2.1.3.7   Submittals: The Contract Documents require the Design-Builder to submit shop drawings, product data and samples. The Architect/Engineer is responsible for reviewing and approving the Design-Builder's submittals.

2.1.3.8   Request For Information: Design issues and clarifications will be addressed through Requests For Information (RFI) submitted by the Design-Builder to the Architect/Engineer. The Architect/Engineer will respond to RFI's promptly in writing. The Design-Builder will carefully review RFI's prior to submission to confirm that they relate to design issues and are applicable to the Architect/Engineer's responsibilities as defined herein. RFI's necessitated by problems unrelated to interpretation or clarification of the Project design and not due to the fault of the Architect/Engineer, may be treated as additional services under paragraph 4.3, at the discretion of the Architect/Engineer.

The Architect/Engineer will immediately post the RFI's to the drawings and specifications.

2.1.3.9   Modifications: The Architect/Engineer shall prepare all modifications to the Contract Documents at no additional cost for those items required to bring the design into compliance with the requirements of this agreement. Modifications required as a result of changes initiated by the Owner, the Design-Builder, or its Subcontractors may at the Architect/Engineer's discretion be prepared as an additional service.

SEE&I_CMH_001291

2.1.3.10  Value Engineering Concepts and Substitutions: Evaluation of value engineering concepts and proposed substitutions or alternate materials proposed by the Design-Builder are generally considered to be within the Primary Services if evaluated at the appropriate time in the progression of the design. However, depending upon the impact to the effort, schedule, cost, etc., this evaluation may be treated as additional services under paragraph 4.3 if mutually agreed upon between the Architect/Engineer and the Design-Builder.

2.1.3.11  Not Construction Manager: The Design-Builder acknowledges that the Architect/Engineer is not the "construction manager" or "supervisor" of the Work, nor is the Architect/Engineer a "clerk of the works".

2.1.3.12  Record Drawings: Upon receipt of annotated documents and approval by the Owner of the field "as built" drawings, the Architect/Engineer shall prepare a set of reproducible record drawings, in accordance with the requirements of the Contract Documents, based solely on Owner approved marked-up prints, drawings and other data furnished by the Design-Builder to the Architect/Engineer. It is understood that the Architect/Engineer is not responsible for the accuracy and completeness of record drawings and is only serving as a drafting agent. Drawings prepared by the Architect/Engineer (excluding drawings prepared by others) will be annotated by qualified Design-Builder representatives, to reflect as-built conditions and delivered to the Architect/Engineer's office. All drawings within each discipline (i.e., mechanical, electrical, structural, etc.) shall be consolidated and delivered to the Architect/Engineer in complete and legible form including all annotations and as approved by the Owner. Drafting will be accomplished on CADD as required by the Contract Documents. The Architect/Engineer will complete these drawings within 30 days after receipt of the annotated drawings.

2.1.3.13  Existing Conditions: The Architect/Engineer will conduct a reasonable review of the readily observable existing conditions at the site in order to evaluate the accuracy of drawings and other information furnished by the Design-Builder or Owner in connection with the preparation of the Construction Documents. It is understood that the Construction Documents are to be based upon information provided by the Owner as stated in the RFP.

## 2.2   ADDITIONAL SERVICES

The following services are not included in Primary Services. They shall be provided upon the written request of the Design-Builder and shall be paid for by the Design-Builder as provided in this Agreement in addition to the compensation for Primary Services. Additional Services include but are not limited to:

### 2.2.1   Studies

Providing financial feasibility, or other special studies.

### 2.2.2   Surveys

Providing planning surveys, site evaluations, with the exception of the evaluation called for in subparagraph 2.1.3.13 Existing Conditions, environmental studies or comparative studies of prospective sites or preparing special surveys or other studies and submissions in support of filing documents required for approvals by governmental authorities or others having jurisdiction over the Project; however, it is the responsibility of the Architect/Engineer to interpret and apply information provided in surveys delivered to the Architect/Engineer for use in the preparation of the design and full responsibility for these interpretations is a part of the Primary Services.

### 2.2.3   Programming

Providing analysis of Owner's needs and re-programming the requirements of the Project set forth in the RFP, except as required by the RFP.

### 2.2.4   Future Facilities

Except as required by RFP, providing design services relative to facilities, systems and equipment which are not intended to be constructed as part of the Work.

SEE&I_CMH_001292

2.2.5 **Cost Analysis**

Providing estimates of construction cost, analyses of ownership or operating costs, or quantity surveys or exhaustive studies of inventories of material, equipment and labor.

2.2.6 **Interior Design**

Except as required by the RFP; a CID is required.

2.2.7 **Revisions**

Making revisions in Drawings, Specifications, or other documents when such revisions are inconsistent with written approvals or instructions previously given by the Owner, or are required by the enactment or revision of codes, laws or regulations subsequent to the correct preparation of such documents.

2.2.8 **Inventories**

Providing investigations, surveys, valuations, inventories, or detailed appraisals of existing facilities or relocated equipment, and services required in connection with construction or installation performed by the Owner unrelated to the Work required by the RFP, except as required by the RFP.

2.2.9 **Replacement**

Providing consultation concerning replacement of any Work damaged by fire or other cause during construction unrelated to design deficiencies and furnishing services as may be required in connection with the replacement of such Work.

2.2.10 **Default**

Providing services made necessary by the default of the Design-Builder, or by major defects or deficiencies in the Work of the Design-Builder, or by failure of performance of the Design-Builder under the Contract.

2.2.11 **Expert Witness**

Preparing to serve or serving as an expert witness in connection with any public hearing, arbitration proceeding or legal proceeding.

2.2.12 **Consultants**

Providing services of consultants for other than the customary services for the Project listed under paragraph 2.1.

2.2.13 **Other Services**

Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted Architect/Engineering practice.

2.2.14 **Redesign**

Redesign work due to Design-Builder value engineering after substantial completion of design work, or due to differing or changed conditions from the RFP or from information provided the Architect/Engineer by the Design-Builder or Owner or the Design-Builder changing an element of design after Architect/Engineer's substantial completion of associated design. However, to the extent such redesign services are required due to acts of the Owner, Architect/Engineer's compensation for such services shall be limited to the amount paid by or recovered from the Owner for such service through applicable modification to the Contract.  Work will not commence without written authorization.

---

SEE&I_CMH_001293

**2.2.15    Extended Phase**

If the Contract Administration Phase is extended beyond the date of final acceptance of the Project by the Owner, due to any reasons not the fault of or beyond the control of the Architect/Engineer, all Contract Administration Phase services during such extended period shall be considered "Additional Services."

**2.2.16    Succession**

Providing additional services required as a result of the transfer of ownership or assignment of the Agreement to third parties.

**2.2.17    Permits**

Providing investigations, services, calculations or consultations for permits not specifically described in Architect/Engineer's primary services.

**2.2.18    Environmental Related Design**

Design or revisions of design required by environmental or permitting requirements not specifically described in the RFP and enacted subsequent to submittal by the Design-Builder of the final Design Submittal.

**2.2.19    Topographical/Planimetric Land Surveys**

Providing on-site survey services for any purpose.

**2.2.20    Systems**

Providing assistance in the utilization of any equipment or system such as initial start-up or testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation unless required due to a design deficiency caused by the Architect/Engineer or his agents.

**2.3    TIME**

**2.3.1    Schedule**

The Architect/Engineer shall perform Primary and Additional Services as expeditiously as is consistent with professional skill and care and the orderly progress of the work. A schedule for the performance of the Architect/Engineer's Primary Services is incorporated as **Exhibit A**. This schedule shall not, except for delays beyond the control of the Architect/Engineer or its agents, be exceeded.

**ARTICLE III**

**3.0    DESIGN-BUILDERS' RESPONSIBILITIES**

The responsibilities of the Design-Builder set forth in this Article III are in addition to those set forth in other articles of this Agreement.

**3.1    PROGRAM**

The Design-Builder shall make known to the Architect/Engineer all available information regarding the Owner's requirements for the Project as contained in the RFP and in other pertinent data obtained by Design-Builder.

**3.2    DECISIONS**

The Design-Builder or his authorized representative shall examine the documents submitted by the Architect/Engineer and render required decisions promptly and provide required data consistent with professional skill and care and orderly progress of the work so as not to unreasonably delay the Architect/Engineer in the performance of its tasks.

**3.3    INFORMATION**

The Architect/Engineer shall be entitled to rely upon the information and documents contained in the RFP and other documents provided by the Design-Builder for completeness and accuracy in the preparation of the Project designs, Drawings, Specifications, and the performance of the other duties of the Architect/Engineer. The Architect/Engineer shall be responsible for designs based on this information.

**3.4    CONSULTANTS**

If the Design-Builder provides the services of special consultants, all services, information and reports shall be furnished to the Architect/Engineer and their accuracy and completeness may be relied upon by the Architect/Engineer.

**3.4.1    Materials Testing Agencies**

The Owner shall provide the required services of materials testing agencies.

**3.5    OBSERVED FAULTS**

The Design-Builder shall make prompt written notice to the Architect/Engineer of any faults, defects or nonconformities observed or detected in the Contract Documents.

**3.6    INSURANCE**

The Design-Builder shall not permit construction of the Project to begin until the insurance required by the Contract Documents is in effect with the Architect/Engineer named as an additional insured. As a minimum, the Design-Builder shall carry a comprehensive general liability insurance and business auto policy with adequate limits for the Project size and value. In the event the Design-Builder permits construction of the Project to begin before such insurance is obtained, the Design-Builder agrees to indemnify and hold the Architect/Engineer harmless from and against all suits, claims, damages, losses and expenses, including but not limited to reasonable attorney's fees, arising out of construction of the Project to the extent such claims, damages, losses and expenses would otherwise have been covered by such insurance.

**3.7    RELATED AGREEMENTS**

The Design-Builder shall facilitate the accomplishment of the Architect/Engineer's duties by appropriate references to same in the Design-Builder/Subcontractor Agreements, and such references shall be consistent with the Contract Documents, this Agreement and the Contract.

ARTICLE IV

**4.0    PAYMENT TO THE ARCHITECT/ENGINEER**

**4.1    DEFINITION OF ARCHITECT/ENGINEER'S EXPENSES**

**4.1.1    Wage Rate Schedule**

The Wage Rate to be paid by the Design-Builder to the Architect/Engineer for the performance of additional services in connection with this Agreement are provided in **Exhibit B** with the exception of the additional services described in **Exhibit C**, which are to be paid for on a lump sum basis.



SEE&I_CMH_001295

**4.1.2    Reimbursable Expenses**

Reimbursable expenses are the following actual expenses incurred by the Architect/Engineer or its consultants in connection with the performance of Additional Services. All such expenses must receive the Design-Builder's prior approval.

4.1.2.1    Expenses for out-of-town transportation from the offices of the Architect/Engineer or his consultants incurred in connection with the Project; all living expenses incurred in connection with out-of-town travel; long distance telephone and facsimile communications.

4.1.2.2    Except as required by the Contract Documents and RFP, expenses of all reproductions, postage and handling fees for Drawings, Specifications, and other documents, not including periodic reproductions for in-office use of the Design-Builder, Architect/Engineer and/or the Architect/Engineer's consultants.

4.1.2.3    Expenses incurred through the use of data processing and photographic reproduction techniques.

4.1.2.4    Expenses of overtime employment of the Architect/Engineer's personnel requiring higher than regular rates, where such employment is requested and authorized in advance by the Design-Builder.

4.1.2.5    Expenses of any renderings, models and/or mockups requested by the Design-Builder in addition to those provided in Primary Services.

4.1.2.6    Expenses of any additional insurance, including professional liability insurance and expenses due to increased limits of liability in excess of that provided by this Agreement.

**4.2     PAYMENT FOR PRIMARY SERVICES**

For the performance of the Primary Services, the Architect/Engineer shall be paid the amounts provided in the schedule of values attached hereto as **Exhibit C**.

**4.3     ADDITIONAL SERVICES**

**4.3.1    Payments for Additional Services on a Time and Material Basis**

Payments for Additional Services as defined in paragraph 2.2, shall be made after presentation of the Architect/Engineer's statement of additional services rendered and agreement thereof by the Design-Builder. Payments are to be made in accordance with the approved DSE expenses and multipliers included as **Exhibit B**.

**4.3.2    Payments for Reimbursable Expenses**

Payments for reimbursable expenses shall be computed at actual cost expended by the Architect/Engineer, his employees and consultants for the Project. However, in the event the Contract permits recovery of profit in connection of such expenses, the Architect/Engineer shall be entitled to payment for profit for such expenses to the extent allowed by the Contract.

**4.4     PAYMENT**

**4.4.1    Monthly Billings**

The Design-Builder shall make payment to the Architect/Engineer within 10 days after the Design-Builder receives payment from the Owner for the Architect/Engineer's monthly billing. Billings for Primary Services and all lump sum amounts stipulated in **Exhibit C** shall be submitted on a percentage of completion basis and for additional services, on actual costs incurred, subject to approval and/or adjustment by the Owner as provided in the RFP. The risk of nonpayment for Architectural/Engineering services, reimbursable, and expenses by nonpayment of the Owner shall rest with the Architect/Engineer. Receipt of payment by Design-Builder from the Owner shall be a condition precedent to the Design-Builder's obligation to make the corresponding payment to

SEE&I_CMH_001296

the Architect/Engineer. If the Design-Builder shall not pay the Architect/Engineer within 10 days from receipt of payment from the Owner, the amount due Architect/Engineer shall bear interest from the date the payment is due at the rate of one percentage point over the then existing prime rate in effect at Bank One, Austin, Texas as of the first of each month payment is not made. Interest shall be computed annually upon the stated rate.

**4.4.2     Payment Delays**

If the Design-Builder delays payment due the Architect/Engineer more than 30 days from the due date, subject to the same terms of subparagraph 4.4.1 above, the Architect/Engineer may upon seven days written notice to the Design-Builder, declare a breach of this Agreement and without waiving any other remedy the Architect/Engineer may have at law or in equity, the Architect/Engineer may at his sole option take the following actions:

4.4.2.1     Declare this Agreement terminated by reason of the Design-Builder's default and provide no further services of any nature and be entitled to whatever damages as permitted by law; or

4.4.2.2     Continue to perform its services without waiving any claims arising from such breach and retain the right to declare a termination under subparagraph 4.4.1 above at any time prior to payment to Architect/Engineer by Design-Builder of amounts due; or

4.4.2.3     Withhold the further distribution of any documents prepared under this Agreement until payment to Architect/Engineer by Design-Builder of amounts due.

**4.5     ARCHITECT/ENGINEER'S ACCOUNTING RECORDS**

The Architect/Engineer shall employ generally accepted accounting principles in keeping his records of expenses pertaining to the performance of Additional Services and such records shall be available to the Design-Builder or his representative at mutually convenient times.

**ARTICLE V**

**5.0     PROJECT TERMINATION OR SUSPENSION**

This Agreement is subject to the termination and suspension clauses of the Contract Termination rights in this Article 5.0 are secondary to and subject to the termination and suspension terms of the Contract.

**5.1     SUSPENSION FOR CAUSES UNRELATED TO THE CONDUCT OF THE OWNER**

Upon a suspension or abandonment of the Project for more than three months for causes unrelated to the conduct of the Owner, which shall be governed by paragraph 5.0 above, the Architect/Engineer shall be compensated, based on the applicable schedule of values and percentage of work complete, for all Primary Services rendered prior to the receipt of written notice from the Design-Builder of such suspension or abandonment or the Architect/Engineer's notice to the Design-Builder of such apparent suspension or abandonment, whichever first occurs, as well as any amounts which may be due for Additional Services performed prior to such action. The Architect/Engineer's compensation shall be equitably adjusted if such Project is resumed after suspension or abandonment.

**5.2     TERMINATION BY THE OWNER**

In the event of termination of this Agreement due to termination of the Contract by Owner, the Architect/Engineer shall be compensated for all Primary Services performed as of the date of termination, based on the applicable schedule of values and percentage of work complete, together with all amounts due for Additional Services performed as of that date. Payment of services and reimbursable expenses shall be due no later than 10 days after the date of receipt of the corresponding payment by Design-Builder from the Owner, as provided in subparagraph 4.4.1 above.  Such payment shall constitute the full amount due the Architect/Engineer in the event of such termination.

ARTICLE VI

**6.0   OWNERSHIP OF DOCUMENTS - USE OF DOCUMENTS**

Ownership of the Drawings and Specifications prepared by the Architect/Engineer shall be governed by the Contract.

ARTICLE VII

**7.0   DISPUTES**

**7.1   DISPUTES BETWEEN THE ARCHITECT/ENGINEER AND DESIGN-BUILDER**

The Architect/Engineer and Design-Builder have, by this Agreement, undertaken responsibilities which are essential to the successful development and construction of the Project. However, it is possible that disputes and disagreements may arise during the course of the Project. In order to facilitate a fair and prompt resolution of those disputes, the parties agree as follows:

**7.1.1   Claim Procedures**

In the event a claim, dispute, or other matter in question or controversy ("claim") arises between the parties to this Agreement, which claim relates to this Agreement or the breach of it, notice of such claim shall be given in writing to the party against whom the claim may be made not more than 20 working days after such claim arises, in order that the party to whom notice is given may remedy, rectify, or make substantial progress toward resolution of the problem or difficulty giving rise to the claim within 30 days of receipt of the notice. The parties will make good faith efforts to cooperate to resolve the issues between them.

**7.2   DISPUTES RELATING TO THE CONDUCT OF THE OWNER**

In the event of a dispute relating to the conduct of the Owner, the dispute shall be pursued and resolved pursuant to the disputes resolution provisions of the Contract and the parties shall be bound by the results of such proceedings and their recovery shall be limited to their respective interest in any settlement, award or judgment resulting from such proceedings. The Architect/Engineer will be provided the opportunity by the Design-Builder to participate in such proceedings to the extent permitted by the Contract and the authority presiding over the proceedings. The cost of such proceedings shall be born by the Architect/Engineer and Design-Builder according to their respective interests in such claims or disputes.

**7.3   ARBITRATION**

In the event a dispute arises between the parties which is not resolved as provided in subparagraph 7.1.1 or covered by paragraph 7.2 above, it shall be resolved by arbitration pursuant to the then prevailing Construction Industry Rules of the American Arbitration Association.

**7.4   NEGLIGENCE OF THE ARCHITECT/ENGINEER**

The Design-Builder agrees that it will make no claims against the Architect/Engineer arising out of any Project cost overruns, change orders, extra work or other Project expense except for those expenses caused solely by an error or omission of the Architect/Engineer or his agents.

In the event a dispute arises between the Owner and the Design-Builder which involves the alleged negligence of the Architect/Engineer, the Architect/Engineer must be given the opportunity and hereby agrees to join in the applicable method of resolution in accordance with procedures called for in the Contract.

SEE&I_CMH_001298
HP – 10

**ARTICLE VIII**

**8.0      RISK MANAGEMENT**

**8.1      INSURANCE REQUIREMENTS**

The Architect/Engineer shall, at his expense, unless otherwise noted, obtain and maintain during the terms of this Agreement, public liability, worker's compensation and professional liability (errors and omissions) insurance in the following amounts and coverages:

**8.1.1      Comprehensive General Liability Insurance**

Comprehensive general liability insurance including coverage for bodily injury, property damage and personal injury, and contractual liability and broad form property damage with per occurrence combined single limits in an amount not less than $5 million. Design-Builder shall be named as an additional insured with respect to such coverage and the coverage shall be primary to any insurance coverage carried by Design-Builder.

**8.1.2      Comprehensive Automobile Liability Insurance**

Comprehensive automobile liability insurance, including non-owned, hired vehicles, with combined single limits of not less than $5 million for bodily injury and $5 million for property damage. Design-Builder shall be named as additional insured with respect to such coverage and the coverage shall be primary to any insurance coverage carried by Design-Builder.

**8.1.3      Professional Liability and Errors and Omissions Insurance**

The Architect/Engineer shall carry professional liability and errors and omissions insurance, covering the services provided under this Agreement, as is acceptable to and approved by the Owner. Such insurance shall have minimum policy limits of $5 million in the aggregate and $5 million per claim. The fees for such insurance will be at the expense of the Architect/Engineer. A Certificate of Insurance indicating the expiration date of the Architect/Engineer's professional liability insurance is required. The Architect/Engineer shall continue the professional liability insurance coverage for not less than one year after the Final Completion of the Work. The professional liability policy or policies shall be in the name of the respective professionals performing such services, which shall include the Architect/Engineer and the Architect/Engineer's consultants furnishing services for the Project. The Architect/Engineer will bear all costs associated with this policy including payment of any deductible amounts applicable to any claim.

**8.1.4      Worker's Compensation Insurance**

Statutory amounts of Worker's Compensation insurance.

**8.2      MAINTENANCE OF POLICIES**

The Architect/Engineer agrees to maintain such policies in such amounts for the term of this Agreement. Certificates evidencing such policies are in full force and effect and with respect to any renewals thereof shall also be furnished to the Design-Builder. Any and all policies issued to the Architect/Engineer and related certificates of insurance shall provide that the same may not be canceled without giving at least thirty days prior written notice to Design-Builder.

**8.3      SUBROGATION**

The Design-Builder and the Architect/Engineer waive all rights against (1) each other and the contractors, subcontractors, sub-subcontractors, consultants, agents and employees, each of the other, and (2) the Owner and separate contractors, if any, and their subcontractors and sub-subcontractors for damages caused by fire and other perils to the extent covered by any property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance.

SEE&I_CMH_001299

8.4      INSURANCE

Unless provided by the Owner via an Owner Controlled Insurance Program (OCIP), the Design-Builder shall obtain and maintain during the life of the Project, at its expense, comprehensive general liability insurance, builder's risk insurance, completed operations insurance and such other insurance in amounts required by the Contract, except as required to be provided by the Architect/Engineer pursuant to paragraph 8.1. The Architect/Engineer shall be named as an additional insured on the builder's risk policy provided by the Design-Builder.

8.5      DESIGN-BUILDER INDEMNIFICATION

**THE ARCHITECT/ENGINEER IS OBLIGATED TO PROVIDE CERTAIN SERVICES UNDER THIS AGREEMENT. HOWEVER, THE PARTIES RECOGNIZE THAT THE ARCHITECT/ENGINEER MAY BE REQUIRED TO EXPEND SUBSTANTIAL SUMS IN DEFENSE COSTS IN THE EVENT OF CLAIMS OR SUIT ARISING OUT OF THE PROJECT WHICH ARE NOT RELATED TO THE ARCHITECT/ENGINEER'S PERFORMANCE OF DESIGN SERVICE PURSUANT TO THIS AGREEMENT. THEREFORE, THE DESIGN-BUILDER INDEMNIFIES AND HOLDS THE ARCHITECT/ENGINEER HARMLESS FROM AND AGAINST ALL CLAIMS, SUITS, DAMAGES, LOSSES AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES ARISING OUT OF OR RESULTING FROM THE DESIGN-BUILDER'S, ITS AGENT'S, OR SUBCONTRACTOR'S NEGLIGENT ACTS OR WILLFUL MISCONDUCT.**

8.6      INDEMNIFICATION

**THE ARCHITECT/ENGINEER AGREES TO INDEMNIFY THE DESIGN-BUILDER AND TO HOLD THE DESIGN-BUILDER HARMLESS, AGAINST LOSSES, DAMAGES, COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES), LIABILITIES AND OTHER OBLIGATIONS WHICH THE DESIGN-BUILDER INCURS AS A RESULT OF THE ARCHITECT/ENGINEER'S NEGLIGENT ACTS OR WILLFUL MISCONDUCT IN THE PERFORMANCE OF THE ARCHITECT/ENGINEER'S DESIGN SERVICES. THE ARCHITECT/ENGINEER REPRESENTS TO THE DESIGN-BUILDER THAT THE ARCHITECT/ENGINEER'S SERVICES SHALL BE PERFORMED IN ACCORDANCE WITH THOSE STANDARDS OF CARE, SKILL AND DILIGENCE AND THOSE PRACTICES AND PROCEDURES WHICH ARE COMMONLY FOLLOWED BY ARCHITECT/ENGINEERS IN PERFORMING THE SAME OR SIMILAR SERVICES IN AUSTIN, TEXAS.**

8.6.1    Indemnification Acknowledgement

The Design-Builder expressly acknowledges and agrees that the foregoing representation shall not apply in connection with, and that the Architect/Engineer shall have no responsibility for, consequences resulting from: (1) the Design-Builder's breach or failure to perform a responsibility contained in this Agreement, or (2) any of the following circumstances:

8.6.1.1   The discovery, identification, presence, handling, disposal, or removal of, or exposure of a person to hazardous materials preexisting in any form at the Project, including but not limited to asbestos or asbestos products, unrelated to the Architect/Engineer's willful misconduct.

8.6.1.2   Modification to or use of any drawings, specifications, or other documents furnished by the Architect/Engineer, which modification or use is not contemplated by this Agreement or approved in writing by the Architect/Engineer.

8.6.1.3   The Architect/Engineer's inability or failure to complete the services contemplated by this Agreement as a result of termination of this Agreement in accordance with Article V prior to completion of the Project, provided such termination is not due to the fault of the Architect/Engineer.

SEE&I_CMH_001300

**8.7**    **SHARED COSTS**

If the Design-Builder and the Architect/Engineer are jointly adjudged by any court, tribunal or arbitrator of competent jurisdiction, for any claims, suits, losses and expenses, they shall bear their pro rata share of the costs of the proceedings.

ARTICLE IX

**9.0**    **MISCELLANEOUS**

The terms of this Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Texas.  In addition, the terms used in this Agreement have the same meaning as those same terms used in the Contract Documents.

**9.1**    **FORCE MAJEURE**

The Architect/Engineer shall not be liable to the Design-Builder and shall not be deemed in default hereunder for any failure or delay in the performance of the Agreement, caused by or arising out of any disaster, labor disturbances, shortages of labor or equipment, strikes, lockouts, other industrial disturbances, acts of God, acts of public enemy, war, blockade, riot, insurrection, lightning, fire, flood, inclement weather, explosion, or any regulation restrictions or act of governmental agencies, to the extent that a time extension or relief for such cause or act is available under the Contract.

**9.2**    **SUCCESSION**

This Agreement shall inure to the benefit of all partners, successors, assigns, and legal representatives of each party to this Agreement and all partners, successors, assigns and legal representatives of each party are hereby bound to the partners, successors, and assigns of this Agreement. The Architect/Engineer shall not assign or transfer any interest in this Agreement without the written consent of the Design-Builder. The Design-Builder shall not assign this Agreement without the written consent of the Architect/Engineer. In the event the Design-Builder assigns the Agreement or any part thereof, the Architect/Engineer may require full payment for all services, including Additional Services as stated in paragraph 2.2, performed as of the date of assignment, which the Design-Builder shall promptly pay.

**9.3**    **ENTIRE AGREEMENT**

This Agreement represents the entire and integrated Agreement between the Design-Builder and the Architect/Engineer concerning the subject matter hereof, and supersedes all prior negotiations, representations or agreements whether they are written or oral. This Agreement may only be amended in writing by the parties.

**9.4**    **ATTORNEY'S FEES**

The prevailing party in any legal proceeding concerning this Agreement shall be entitled to recover all reasonable costs, including reasonable attorney's fees, incurred in the enforcement of this agreement.

**9.5**    **SEVERABILITY**

In the event any provision of this Agreement shall be held to be invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

**9.6**    **CAPTIONS**

The captions in this Agreement are for convenience only and shall not be deemed a part hereof.

SEE&I_CMH_001301 – 13

This Agreement is entered into as of the day and year first written above.

**HENSEL PHELPS CONSTRUCTION CO.**                    **The Benham Companies LLC**

By: _Brian P_____                    By: _D. Pearson_____

~~Glen Miller~~ BRIAN PENNER                          Division VP
~~Operations~~ Manager
PROJECT

SEE&I_CMH_001302

HP – 14

Exhibit A

| ID | 0 | Task Name | Duration | Start | Finish | Predecessors |
|----|---|-----------|----------|-------|--------|--------------|
| 1 | | BCT-2 COF | 95 days | Mon 6/11/07 | Fri 10/19/07 | |
| 2 | | Letter of Intent | 0 days | Mon 6/11/07 | Mon 6/11/07 | |
| 3 | | D/B Kickoff Meeting | 2 days | Mon 6/11/07 | Tue 6/12/07 | |
| 4 | | Initial Design Conference | 2 days | Tue 6/26/07 | Wed 6/27/07 | |
| 5 | | Interim Design | 29 days | Fri 6/29/07 | Wed 8/8/07 | 4FS+1 day |
| 6 | | Over-The-Shoulder Review | 1 day | Wed 8/8/07 | Wed 8/8/07 | 5FF |
| 7 | | Final Design | 22 days | Thu 8/9/07 | Fri 9/7/07 | 6 |
| 8 | | Final Government Review | 10 days | Mon 9/10/07 | Fri 9/21/07 | 7 |
| 9 | | Final Review Meeting | 1 day | Tue 9/25/07 | Tue 9/25/07 | 8FS+1 day |
| 10 | | Design Complete | 18 days | Wed 9/26/07 | Fri 10/19/07 | 9 |
| 11 | | BCT-2 UEPH | 100 days | Mon 6/11/07 | Fri 10/26/07 | |
| 12 | | Letter of Intent | 0 days | Mon 6/11/07 | Mon 6/11/07 | |
| 13 | | D/B Kickoff Meeting | 2 days | Mon 6/11/07 | Tue 6/12/07 | |
| 14 | | Initial Design Conference | 2 days | Tue 6/26/07 | Wed 6/27/07 | |
| 15 | | Interim Design | 28 days | Fri 6/29/07 | Tue 8/7/07 | 14FS+1 day |
| 21 | | Over-The-Shoulder Review | 1 day | Wed 8/8/07 | Wed 8/8/07 | 15 |
| 22 | | Final Design | 27 days | Thu 8/9/07 | Fri 9/14/07 | 21 |
| 28 | | Final Government Review | 10 days | Mon 9/17/07 | Fri 9/28/07 | 27 |
| 29 | | Final Review Meeting | 1 day | Tue 10/2/07 | Tue 10/2/07 | 28FS+1 day |
| 30 | | Design Complete | 18 days | Wed 10/3/07 | Fri 10/26/07 | 29 |
| 36 | | BCT-2 TEMF | 105 days | Mon 6/11/07 | Fri 11/2/07 | |
| 37 | | Letter of Intent | 0 days | Mon 6/11/07 | Mon 6/11/07 | |
| 38 | | D/B Kickoff Meeting | 2 days | Mon 6/11/07 | Tue 6/12/07 | |
| 39 | | Initial Design Conference | 2 days | Tue 6/26/07 | Wed 6/27/07 | |
| 40 | | Interim Design | 29 days | Fri 6/29/07 | Wed 8/8/07 | 39FS+1 day |
| 41 | | Over-The-Shoulder Review | 1 day | Wed 8/8/07 | Wed 8/8/07 | 40FF |
| 42 | | Final Design | 32 days | Thu 8/9/07 | Fri 9/21/07 | 40 |
| 43 | | Final Government Review | 10 days | Mon 9/24/07 | Fri 10/5/07 | 42 |
| 44 | | Final Review Meeting | 1 day | Tue 10/9/07 | Tue 10/9/07 | 43FS+1 day |
| 45 | | Design Complete | 18 days | Wed 10/10/07 | Fri 11/2/07 | 44 |

Project: BCT-2_R03
Date: Tue 7/10/07

| Task | | Milestone | ◆ | External Tasks | |
|------|--|-----------|---|----------------|--|
| Split | | Summary | | External Milestone | ◆ |
| Progress | | Project Summary | | Deadline | ⇩ |

Page 1

SEE&I_CMH_001303

RECEIVED

7007069

AUG 0 7 2007

SCHEDULE OF BILLING RATES HENSEL PHELPS CONSTRUCTION CO.

| CLASSIFICATION | BILLING RATE |
|---|---|
| *Exempt* | |
| Engineer/Architect I | 75.00 |
| Engineer/Architect II | 86.00 |
| Engineer/Architect III | 95.00 |
| Engineer/Architect IV | 105.00 |
| Engineer/Architect V | 118.00 |
| Engineer Architect VI | 133.00 |
| Interior Designer I | 54.00 |
| Interior Designer II | 64.00 |
| Interior Designer III | 75.00 |
| Interior Designer IV | 86.00 |
| Interior Designer V | 97.00 |
| Interior Designer VI | 122.00 |
| Principal Interior Designer | 180.00 |
| Project Manager I | 122.00 |
| Project Manager II | 133.00 |
| Project Manager III | 144.00 |
| Project Control Engineer | 117.00 |
| Estimator | 95.00 |
| Senior Estimator | 122.00 |
| Sr. Construction Representative | 122.00 |
| | |
| *Non-Exempt* | |
| Technician I | 48.00 |
| Technician II | 55.00 |
| Technician III | 61.00 |
| Technician IV | 73.00 |
| Technician V | 81.00 |
| Technician VI | 90.00 |
| Chief Designer | 96.00 |
| Secretary I | 38.00 |
| Secretary II | 51.00 |
| Secretary III | 57.00 |
| File Clerk | 36.00 |
| Accounting | 65.00 |
| Construction Representative | 91.00 |

Notes:  Classifications may be added to suit the project.

Rates quoted are effective until December 31, 2007 and then may be subject to change.

# Exhibit "B"

SEE&I_CMH_001304



RECEIVED

AUG 0 7 2007

HENSEL PHELPS CONSTRUCTION CO.

# Exhibit "C"

**Benham Schedule of Values**
Ft. Bliss - BCT2
10-Jul-07

| | Total Fee | June 2007 | July 2007 | August 2007 | September 2007 | October 2007 | | CA Total | Construction Months | CA per month |
|---|---|---|---|---|---|---|---|---|---|---|
| **UEPH** | **974,420** | 75,000 | 176,134 | 176,134 | 176,134 | 176,134 | | 194,884 | 16 | 12,180 |
| | | 8% | 26% | 44% | 62% | 80% | | 100% | | |
| | | | | | | | | | | |
| Design | | 66,750 | 156,759 | 156,759 | 156,759 | 156,759 | | 173,447 | | 10,840 |
| Non-Design | | 8,250 | 19,375 | 19,375 | 19,375 | 19,375 | | 21,437 | | 1,340 |

SEE&I_CMH_001305

RECEIVED

HENSEL PHELPS CONSTRUCTION CO.
STANDARD INSURANCE CERTIFICATE

AUG 0 7 2007

**Subcontractor's CERTIFICATE OF INSURANCE**

HENSEL PHELPS CONSTRUCTION CO.

ISSUE DATE (MM/DD/YY)
12/13/06

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| North American Insurance Agency
5101 N. Classen, Suite 300
Oklahoma City  OK  73118 | **COMPANIES AFFORDING COVERAGE** | |
| Phone:  405-556-2188      Fax:  405-556-2332 | COMPANY
LETTER | A Zurich American Insurance Company |
| INSURED | COMPANY
LETTER | B US Fire Insurance Company |
| The Benham Companies, LLC
9400 N. Broadway # 300
Oklahoma City  OK  73114 | COMPANY
LETTER | C American Guarantee & Liability |
| | COMPANY
LETTER | D |
| | COMPANY
LETTER | |
| PHONE NO. A/C | COMPANY
LETTER | |

THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | ALL LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**
X COMMERCIAL GENERAL LIABILITY
CLAIMS MADE  X OCCURRENCE
OWNER'S & CONTRACTOR'S PROTECTIVE
X PERSONAL INJURY EMPLOYEE EXCLUSION DELETED
X EXPLOSION, COLLAPSE AND UNDERGROUND HAZARD
X THE CERTIFICATE HOLDER HAS BEEN ADDED AS ADDITIONAL INSURED ON THIS COVERAGE | GLO4741296-02
Policy includes Contractual liability coverage insuring the agreement and obligation of the Insured to indemnify the Contractor and others to the extent set forth in the Subcontract Agreement between the Insured and Hensel Phelps Construction Co.
Per Project Aggregate Applies | 09/08/06 | 10/01/07 | GENERAL AGGREGATE
PRODUCTS COMP/OPS AGGREGATE
PERSONAL & ADVERTISING INJURY
EACH OCCURRENCE
FIRE DAMAGE (ANY ONE FIRE)
MEDICAL EXPENSE (ANY ONE PERSON)
Deductible/Self-Insured Retention in Dollars
DEDUCTIBLE
SELF-INSURED RETENTION | $ 2,000
$ 2,000
$ 2,000
$ 2,000
$ 50
$ 5
$
$ |
| B
C | **AUTOMOBILE LIABILITY**
X ANY AUTO
ALL OWNED AUTOS
SCHEDULED AUTOS
HIRED AUTOS
NON-OWNED AUTOS
GARAGE LIABILITY
X THE CERTIFICATE HOLDER HAS BEEN ADDED AS AN ADDITIONAL INSURED ON THIS COVERAGE | 133721623
BAP914056000 | 09/08/06
12/01/06 | 12/01/06
10/01/07 | CSL
BODILY INJURY (PER PERSON)
BODILY INJURY (PER ACCIDENT)
PROPERTY DAMAGE | $2,000
$
$
$ |
| C | **EXCESS LIABILITY**
OTHER THAN UMBRELLA FORM
X THE CERTIFICATE HOLDER HAS BEEN ADDED AS AN ADDITIONAL INSURED ON THIS COVERAGE | AUC5087365-01
= If necessary to cover difference in limits when compared to minimum coverage required. | 09/08/06 | 10/01/07 | EACH OCCURRENCE
2,000,000
$ | AGGREGATE
2,000,0
$ |
| A | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY**
INCLUDING OFFICERS, PARTNERS
AND SOLE PROPRIETORS
(Definite Controls Waiver of Subrogation) | WC4741300-02 | 09/08/06 | 10/01/07 | STATUTORY
$1,000  EACH ACCIDENT
$1,000  DISEASE - POLICY LIMIT
$1,000  DISEASE - EACH EMPLOYER | |
| | OTHER | | | | | |

In addition to the certificate holder, the following parties have been named as additional insured on the above referenced policies, per
IDIQ for Design Build Services for Southwestern Region Brigade Combat Team Complex

The insurance coverage provided by the Subcontractor shall be primary and any other insurance coverage carried by the additional insured shall be excess insurance.
Is Workers' Compensation insurance in force in all states?   YES
If "NO," list states insurance is in force.

| X HENSEL PHELPS CONSTRUCTION CO.
Job No.
Contract # W912BS-06-D-0030 | Should any of the above described policies be cancelled before the expiration date thereof, or not renewed at expiration date, the issuing company will mail 30 days written notice to the named certificate holder. All terms of this certificate which are applicable to the described policies shall apply to the revised certificate thereof.
AUTHORIZED REPRESENTATIVE | No. 732
Revised 06/2002 |

SEE&I_CMH_001306

# Additional Insured – Automatic - Owners, Lessees Or Contractors - Broad Form

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

Commercial General Liability Coverage Part

A.  **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

B.  The insurance provided to additional insureds applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under Section I, Coverage A, **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Coverage B, **PERSONAL AND ADVERTISING INJURY LIABILITY**, but only if:

   1.  The "bodily injury" or "property damage" results from your negligence; and

   2.  The "bodily injury", "property damage" or "personal and advertising injury" results directly from:

      a.  Your ongoing operations; or

      b.  "Your work" completed as included in the "products-completed operations hazard",

      performed for the additional insured, which is the subject of the written contract or written agreement.

C.  However, regardless of the provisions of paragraphs A. and B. above:

   1.  We will not extend any insurance coverage to any additional insured person or organization:

      a.  That is not provided to you in this policy; or

      b.  That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

   2.  We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

      a.  The Limits of Insurance provided to you in this policy; or

      b.  The Limits of Insurance you are required to provide in the written contract or written agreement.

D.  The insurance provided to the additional insured person or organization does not apply to:

   1.  "Bodily injury", "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured; or

U-GL-1175-A CW (9/03)
Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
AGENT COPY

SEE&I_CMH_001307

    2.   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

        a.   The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

        b.   Supervisory, inspection, architectural or engineering activities.

**E.**  The additional insured must see to it that:

    1.   We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

    2.   We receive written notice of a claim or "suit" as soon as practicable; and

    3.   A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

**F.**  The insurance provided by this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location.  Then we will share with that other insurance by the method described in paragraph 4.c. of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

AGENT COPY

SEE&I_CMH_001308