Exhibit 1B– Hensel Phelps-EFPS Agreements
Ft. Bliss Task Orders 1 and 2

# Subcontract

# HENSEL PHELPS CONSTRUCTION CO.
# Contractor

| | |
|---|---|
| **Issuing Office** | • 8322 Cross Park Drive Austin, Texas 78754, P.O. Box 140107 Austin, Texas 78714-0107 |
| | • Contractor License Number in State of Project if Applicable _____ |
| **Subcontractor** | • Essential Fire Protection Systems, Inc. |
| **Subcontract** | • Fire Sprinkler Systems |
| **Project** | • Unaccompanied Enlisted Personnel Housing IDIQ #1, T.O. #2 (UEPH) BCT 2 |
| **Project Number** | • ~~7007091~~ - 1500400 |

This Subcontract consists of 19 pages numbered 1 of 19 through 19 of 19, Section B and attachments:

**Please initial each page where indicated, affix authorized signature(s) and return all copies at once to the issuing office shown above.**
**( X ) A copy executed on behalf of Hensel Phelps Construction Co. will be returned for your files.**
**( X ) An additional copy is included to be forwarded to your bonding company.**
**( X ) Please retain the copy identified as yours.**


RECEIVED
SEP 1 8 2007
HENSEL PHELPS CONSTRUCTION CO.


BP
HPCC


Subcontractor

(Page 1 of 19)

# SUBCONTRACT

THIS SUBCONTRACT is made and entered into this __28th__ day of _____June_____, __2007_____, by and between

| | | |
|---|---|---|
| Essential Fire Protection Systems, Inc. | **Attention:** | Randy Huffman |
| 1045 Kessler Drive | **Phone:** | 915.592.5066 |
| El Paso, Texas  79907 | **Fax:** | 915.592.6771 |

hereinafter referred to as the Subcontractor and Hensel Phelps Construction Co., a Delaware corporation, hereinafter referred to as the Contractor.  **WITNESSETH:** That for and in consideration of the mutual promises and covenants herein contained, the Subcontractor and the Contractor agree as follows:

**SECTION A.** The Subcontractor covenants, promises and agrees to furnish all material and personal property and to diligently and fully perform all work hereinafter described for the construction of Fort Bliss Unaccompanied Enlisted Personnel Housing (UEPH) United States Army Corps of Engineers, Fort Worth District, hereinafter referred to as the Project, for the use and benefit of the United States Army Corps of Engineers, c/o US Army Engineer District, Fort Worth, 819 Taylor Street, Fort Worth , TX. 76102, hereinafter referred to as the Owner, in strict accordance with the Contract between the Contractor and the Owner entered into March 3, 2006 and hereby made a part of this Subcontract by reference; all to the satisfaction of the Contractor, the Owner, and the representative authorized by the Owner to interpret and judge the performance of the aforesaid Contract and named therein as architect, engineer, contracting officer, or otherwise, when such representative shall have been designated as the Owner's Authorized Agent; and all of which shall be done in timely, faithful and strict compliance with this Subcontract and all the Subcontract Documents described and defined in Section D, Article 1, hereof and elsewhere herein.

**SECTION B.** The Subcontractor agrees to furnish all necessary management, supervision, labor, materials, tools, supplies, equipment, plant, services, engineering, testing and/or any other act or thing required to diligently and fully perform and complete the portions of the work described as follows:

**See Attached**



**SECTION C.** The Contractor agrees to pay the Subcontractor for the full, faithful and complete performance of this Subcontract the sum of Three Hundred Forty-Five Thousand Six Hundred Dollars and NO/100 ($345,600.00), subject to additions and deductions for changes agreed upon in writing as hereinafter set forth or as otherwise authorized hereinafter; and Contractor further agrees to make all partial and final payments on account thereof in accordance with the terms and provisions of the Subcontract Documents including, but without restriction thereto, the provisions of Section D, Article 5 of this Subcontract.

HPCC        Subcontractor        (Page 2 of 19)

SECTION B
7007069 - 1500400

| Essential Fire Protection Systems, Inc. | Unaccompanied Enlisted Personnel Housing |
|---|---|
| | IDIQ #1, T.O. #2 (UEPH) BCT 2 |
| June 28, 2007 | Fort Bliss (El Paso), Texas |

Complete all **Fire Sprinkler Systems** work as required by the Contract Documents for the construction of the Indefinite Delivery/Indefinite Quantity (IDIQ) for Design-Build Services, Southwestern Region Brigade Combat Team Complex, UNACCOMPANIED ENLISTED PERSONNEL HOUSING (UEPH), as detailed under contract No. W9126G-06-D-0039, Task Order No. 0002 dated February 23, 2007, including Amendments 0001 (dated 5 March 2007), 0002 (dated 16 March 2007), 0003 (dated 23 March 2007), 0004 (dated 28 March 2007), 0005 (dated 23 March 2007),0006 (dated 25 May 2007), Contract Documents (Plans, Drawings, and Specifications) by The Benham Company LLC, the Design Builder's Proposal dated March 30, 2007 and revisions dated May 24, 2007 and May 29, 2007.

All work and materials described in Specification Section: Division 00 – Proposal Requirements and Contract Forms, Division 1 – General Requirements, Section 078413 – Penetration Firestopping (as applicable), Section 079200 – Joint Sealants (as applicable), Division 26 – Electrical, Division 27 – Communications, Division 28 – Electronic Safety and Security, and the applicable Contract Drawings are included within the scope of this Subcontract with the following **exceptions**:

1. Painting of sprinkler piping.
2. Firestopping.
3. Exterior Fire Hydrants.
4. Fire Extinguishers.
5. Standpipe system.
6. Hose racks.
7. Cathodic protection.

Your attention is specifically called to the following items, which are included in this Subcontract, but without limiting the scope of work as provided above:

1. This is a lump-sum, design-assist Subcontract. The Subcontractor will be responsible for all information contained in the Request for Proposal and the final Construction documents as they pertain to the scope included in this agreement. It will be the Subcontractors responsibility to consider all work required by the RFP along with all work which is customarily provided in a complete and finished work of this kind. Any alterations, modifications or adjustments to the work which are reasonably foreseeable or customarily encountered in providing and installing equipment, materials and services of the kind required from the RFP for the work included in this agreement will be performed without additional compensation. At the completion of the 100% CD's (drawings and specifications) as issued by The Benham Company LLC, a no cost change order will be issued to incorporate these documents into the final Contract Documents.

EFPS000885

SECTION B
~To oTo6~ - 1500400

2. Provide all materials, labor, supervision, documentation, warranties, and services as required to furnish and install all fire protection systems as required by the Contract Documents. The Subcontractor shall provide all shop drawings, engineering, calculations and layout drawings as required by the contract documents.

3. The Apartment Modular buildings will be delivered to site with the following work installed by others either in-factory or on-site by others. All Modular Apartment Unit will have CPVC pipe installed in the drywall ceiling from the head locations in the Modular Apartment out to the corridor. Pipe stub projection and condition of the pipe at the ends shall be coordinated by this Subcontractor and the Modular Subcontractor. This Subcontractor shall furnish and install all fire sprinkler heads as required by the Contract Documents. The fire sprinkler piping installed in the modular apartment unit ceiling must be acceptable to this Subcontractor in order to assure the complete and entire systems meets all codes, warranties, and specifications.

4. The Subcontractor shall prepare coordination drawings in conjunction with Mechanical, Electrical, and Plumbing Subcontractors in an attempt to eliminate conflicts among the trades as required by the Contract Documents. This Subcontractor understands that coordination with other Subcontractors is essential and that locations of various lines and ducts must be done on a priority basis. During above ceiling coordination, this Subcontractor shall perform any additional piping as may be required to route around other pipes or ducts that must be installed at specific locations. This does not include field modifications due to other trades non conformance of previously coordinated scope.

5. The work under this Subcontract includes all of the fire protection work as specified in the Mechanical, Plumbing and Electrical sections of the Contract Documents to provide a complete installed system. In the event any dispute should arise as to the interpretation of the Plans, Specifications or Drawings concerning the work or materials to be furnished by either the Mechanical, Plumbing, Fire Protection or Electrical Subcontractor, the Contractor shall determine the resolution of each dispute. Such determination shall be final and binding between the Subcontractors and the Contractor.

6. The Subcontractor will supply and install all hangers, anchors, supports, racks, anchors, etc., necessary to complete this Subcontract. Prior to the use of any similar materials furnished and installed by others the Subcontractor must obtain permission to do so from the Contractor's Project Superintendent.

7. The Subcontractor is responsible for furnishing, locating and installing all blockouts, penetrations, escutcheons, sleeves, anchor bolts, concrete embedments, etc., required in the performance of this Subcontract. Failure to do so will result in the blockouts, sleeves, anchor bolts or concrete embedments having to be cut in or relocated at the

EFPS000886

SECTION B
7007069i - 1500400

Essential Fire Protection Systems, Inc.                    Unaccompanied Enlisted Personnel Housing
IDIQ #1, T.O. #2 (UEPH) BCT 2
June 28, 2007                                                              Fort Bliss (El Paso), Texas

Subcontractor's expense. The Subcontractor is responsible for pour watch for their work that may be required during concrete placement.

8. The Subcontractor is responsible for all opening protection for items installed for their use.

9. Any concrete embedment and or blockout (including templates) provided by the Subcontractor must be installed in sufficient time not to delay the concrete schedule.

10. Miscellaneous steel required solely to support fire protection equipment is by the Subcontractor. All items shown on the structural drawings will be supplied by others.

11. The Subcontractor will furnish and install sleeves and firestopping for piping penetrating fire walls and floors.

12. Acoustical caulking and sealing at fire protection penetrations in STC walls is included in this Subcontract.

13. All waterproofing and link-seal of below grade or below slab on grade fire protection work are the responsibility of the Subcontractor.

14. The labeling of all equipment and lines per the contract documents shall be by the Subcontractor. The Subcontractor shall provide identification on all valves to properly identify them along with flow arrows and identification on all piping.

15. The Subcontractor will provide any access doors required for their work items and coordinate their installation with the finish trades. Access doors in finished spaces will be installed by others.

16. All openings in equipment, piping and conduit shall be protected to prevent entrance of all foreign matter.

17. All fire protection equipment shall be protected during execution of the work.

18. The Subcontractor shall be responsible to operate and maintain their equipment as necessary for startup, test and balance, commissioning and flush-out. In addition, the Subcontractor shall perform the work required to coordinate with Test and Balance and Commissioning Agencies provided by others.

19. The rough in and final hook-up of all fire protection items for equipment furnished by others (if any) shall be performed by the Subcontractor. The Subcontractor will coordinate the appropriate shop drawings for location of the hookups.

EFPS000887

SECTION B
~Too706~ 1500400

Essential Fire Protection Systems, Inc.                    Unaccompanied Enlisted Personnel Housing
                                                                                   IDIQ #1, T.O. #2 (UEPH) BCT 2
June 28, 2007                                                                 Fort Bliss (El Paso), Texas

20. The Subcontractor will furnish, install and or replace any items required for start-up, testing and building flushout of all fire protection systems as required by the contract documents.

21. Any temporary filters, if required, needed to run Fire Protection equipment during construction shall be furnished, installed, removed and replaced by the Subcontractor.

22. The Subcontractor shall furnish and install all in-line control devices required in all piping such as flow switches, tamper switches, monitor switches, control valves, sensors, electrical hardware and components.  The fire alarm system with its associated wiring shall be by others.

23. The Subcontractor shall furnish and install freeze proofing as required for fire protection piping.

24. The Subcontractor shall furnish and install the underground fire sprinkler service connection line.  The connection point will be as specified in Appendix J of the RFP (as issued in Amendment 4).  The underground fire sprinkler service connection line shall comply with Chapter 6.4.2.2 Utility Design and Construction of Specification Section 01010.  The Subcontractor shall furnish and install the post indicator valve, double detector check valve assembly, vault, and all piping between the service stub and building.  Final connection to service line is by this Subcontractor.

25. Specification Section 01010, as issued by the Owner, states the water distribution system supply and residual pressure.  The Subcontractor has based the design of the Fire Sprinkler system on the given water supply information and has determined that no storage tanks or booster pumps are included in the scope of work.

26. It is understood that the full amount of this Subcontract provides for 100% participation for Small Business as defined by the United States Small Business Administration.

27. The Subcontract amount is calculated as follows:

> *Base Bid*
> Construction of 3 Unaccompanied Enlisted Personnel Housing barracks buildings to accommodate 384 Soldiers, including Bond Premium.
> **SUBCONTRACT TOTAL**                                    **$345,600.00**

EFPS000888

SECTION B
~~700700~~- 1500400

| | |
|---|---|
| Essential Fire Protection Systems, Inc. | Unaccompanied Enlisted Personnel Housing<br>IDIQ #1, T.O. #2 (UEPH) BCT 2 |
| June 28, 2007 | Fort Bliss (El Paso), Texas |

The following options will be held open for a period of 180 days from June 15, 2007 (December 15, 2007):

*Option 1*
Construction of 1 Unaccompanied Enlisted Personnel Housing barracks buildings to accommodate 128 Soldiers, including Bond Premium.
**Option 1 Total**                                      **$115,200.00**

*Option 2*
Construction of 3 Unaccompanied Enlisted Personnel Housing barracks buildings to accommodate 384 Soldiers, including Bond Premium.
**Option 2 Total**                                      **$345,600.00**

*Option 3*
Construction of 3 Unaccompanied Enlisted Personnel Housing barracks buildings to accommodate 384 Soldiers, including Bond Premium.
**Option 3 Total**                                      **$345,600.00**

*Option 4*
Construction of 3 Unaccompanied Enlisted Personnel Housing barracks buildings to accommodate 132 Soldiers, including Bond Premium.
**Option 4 Total**                                      **$118,800.00**

**TOTAL OPTIONS**                                    **$925,200.00**

Pricing includes all engineering, submittals, material, labor, equipment, insurance, special permits, licenses, fees, delivery, maintenance, temporary work, overhead, bonds, qualified supervision, profit and payment & performance bonds.

The Subcontractor shall provide all required shop drawings, certificates, samples, mock-ups, product data, etc. (complete) to the Contractor no later than October 2007.

Work shall begin approximately October 2007, and proceed in accordance with the overall project schedule.

Payment and Performance Bonds on the forms of Hensel Phelps Construction Co. **will be** required for work under this Subcontract and are included in this lump sum contract.

EFPS000889

# SECTION D.  GENERAL PROVISIONS.

### ARTICLE 1 - DEFINITIONS.

**(a)**    The term "Contract" as used herein refers to the contract between the Owner and the Contractor for construction of the Project.

**(b)**    The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all plans, drawings and specifications, including the General Conditions, Supplemental General Conditions, and Special Conditions, Addenda, Amendments, and/or instruments of like effect issued by or on behalf of the Owner as a part of the Contract; together with any and all other documents or instruments referred to or incorporated in the aforesaid "Contract" and "Contract Documents" and/or as identified by the Owner's Authorized Agent.

**(c)**    The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, addenda, or other documents incorporated herewith or referred to herein; and in addition any supplemental written agreements made and entered into by the parties hereto subsequent to the date of execution of this Subcontract.

**(d)**    The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid "Contract," "Contract Documents" and "Subcontract" together with any and all alternate proposals which may be exercised or incorporated in this Subcontract, all Contract change orders issued by the Owner subsequent to the bidding and identified specifically in or incorporated by change order into this Subcontract; and all written instructions, notices, directives, job schedules, the "Job Information and Policy Brochure," and documents, specifically referred to in this Subcontract.  In the event of any conflict between the terms of the Subcontract and the Contract Documents, the terms of the Subcontract shall govern.

**(e)**    The Subcontract Documents shall not include any proposals, correspondence or agreements dated, made or alleged to have been made between the Contractor and the Subcontractor prior to the date of this Subcontract unless specifically identified and incorporated in writing herein.

### ARTICLE 2 - COMPLIANCE WITH CONTRACT DOCUMENTS.

**(a)**    The Subcontractor is bound to the Contractor with respect to the work to be performed by the Subcontractor hereunder by the same terms and conditions by which Contractor is bound to the Owner under the Contract.  The Contract Documents, as defined in the Contract, are hereby incorporated by reference.  Subcontractor undertakes to perform all the duties and obligations of the Contractor under the Contract Documents insofar as said duties and obligations are related, directly or indirectly, to the work described in Section B of this Subcontract.  Subcontractor will not do, or fail to do, any act relating to Subcontractor's work, if by reason of such act or failure to act, Contractor would be in breach of or fail to comply with the Contract Documents.

**(b)**    When requested to do so by the Contractor, Subcontractor agrees to submit a list of any proposed sub-subcontractors and suppliers, and Subcontractor shall not delegate, assign, sublet, or further subcontract to others the performance of any of its obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.  To the extent the Contract Documents call for the Subcontractor to consent to the assignment of the Subcontract by Contractor to Owner if elected by Owner, Subcontractor hereby consents to such an assignment.

### ARTICLE 3 - EXISTING CONDITIONS.

**(a)**    Subcontractor acknowledges that it was its responsibility, prior to entering into this Subcontract, to investigate and familiarize itself with all laws, ordinances, and regulations applicable to its work under this Subcontract; with the availability of personnel, workmen, material, supplies, equipment, power, utilities, fuel and other requirements for the performance of the Subcontract and, with respect to each of the foregoing, the cost and suitability thereof; with the prevailing wage scales and working conditions; with the character and content of all other contracts related to the Project, including such separate prime contracts as may have been awarded by the Owner; the character and content of purchase orders and arrangements for supplies and material to be furnished by the Contractor for the use of Subcontractor; with all options, site considerations and restrictions, lease agreements, royalties, prevailing weather and climatological conditions and history; and any other factors which may affect Subcontractor's work under this Subcontract.  The Subcontractor hereby warrants and agrees that it has investigated all such matters and familiarized itself therewith to the extent that it, in its sole discretion, deems necessary.  Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any other relief if such claim directly or indirectly results from Subcontractor's failure to investigate and familiarize itself sufficiently with the conditions under which this Subcontract is to be performed, including the foregoing but without restriction thereto, or from any misunderstanding thereof on the part of the Subcontractor.

**(b)**    If the Subcontractor encounters surfaces or work which it considers unsatisfactory and which affect the work under this Subcontract, or if the Subcontractor encounters any other condition upon which it may base a claim for extra compensation, extra time, or any other type of claim, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said conditions in order to allow the Contractor to inspect said conditions and to make such

arrangements and take such steps as Contractor deems necessary.  In the absence of such notice to the Contractor, Subcontractor shall be fully and solely responsible and liable for any and all expense, loss, or damage resulting from said condition and Contractor shall be relieved of all liability in connection therewith.

**ARTICLE 4 - ENTIRE AGREEMENT.**  This Subcontract constitutes the entire agreement between the parties and contains all of the covenants, stipulations, and provisions agreed upon by the parties.  This Subcontract supersedes and takes precedence over all proposals, correspondence, discussions and oral agreements between the Subcontractor and Contractor, if any concerning the subject matter hereof, made prior to and including the date hereof, and not specifically identified and incorporated in writing in this Subcontract.  This Subcontract includes all alternatives, changes, addenda, amendments or any other instruments of like effect made, issued, or exercised by the Owner or the Owner's Authorized Agent through the date hereof.  No agent or representative of either party hereto has authority to make, and the parties shall not be bound by, or liable for, any statement, representation, promise, or agreement not specifically set forth in this Subcontract.  Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

**ARTICLE 5 - PAYMENT.**

**(a)**     Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor, and provided the Subcontractor is in compliance with the Subcontract Documents, the Contractor will make partial payments to the Subcontractor as provided in the Contract Documents in an amount equal to 90% of the estimated value of work and materials incorporated in the construction and of materials delivered to the Project site and suitably stored by the Subcontractor, to the extent of Subcontractor's interest in the amounts allowed thereon and paid to Contractor by the Owner less the aggregate of previous payments.  In the event payment is allowed by Owner for materials stored off-site, such materials shall be stored in a bonded warehouse covered by property and theft insurance which includes Contractor and Owner as additional insureds.  Payment will be made by check mailed to the Subcontractor within seven (7) working days of receipt of collected funds paid to the Contractor by the Owner under the Contract.  Unless otherwise required by law, final payment will be made within thirty (30) days after the work called for hereunder has been completed by the Subcontractor to the satisfaction of the Owner and the Contractor has received from the Owner written acceptance thereof together with payment in full for Subcontractor's portion of the work.  Final payment is further subject to Contractor's determination that all of the terms, conditions, requirements and covenants of the Subcontract Documents have been well and truly met and discharged by Subcontractor.  To the extent permitted by applicable law, receipt by Contractor of the corresponding payment from Owner is acknowledged and agreed by the Subcontractor to be an express condition precedent to the Subcontractor's right to receive payment from the Contractor.  Subcontractor acknowledges that it is sharing in the risk that Owner may fail to make one or more payments to Contractor for all or a portion of the Subcontract Work, and further acknowledges that it is relying on the Owner's credit for payment.

**(b)**     In the event the Owner is an agency or instrumentality of the United States Government and the provisions of the Prompt Payment Act, as amended (31 U.S.C. § 3901 et seq.), are applicable to the Contract, the following subparagraphs (b) (i)-(b) (iv) shall be applicable to this Subcontract:  (i) Contractor will pay to Subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment provision contained in Paragraph (a) of this Article.  Interest shall be paid for the period beginning on the day after the required payment date and ending on the date on which payment is made of the amount due.  Interest shall be computed at the rate specified in the Prompt Payment Act, as amended (31 U.S.C. § 3901 et seq.).  This interest penalty shall not apply when Contractor has not received payment from the Owner pursuant to the Contract.  This interest penalty shall not apply to amounts that are withheld from Subcontractor under the provisions of this Subcontract.  (ii) Subcontractor shall include a payment clause and an interest penalty clause conforming to the standards set forth in paragraphs (a) and (b) of this Article in each of its subcontracts and shall also require its subcontractors to include such clauses in their subcontracts and supply contracts with each lower-tier subcontractor or supplier.  (iii) Contractor may withhold payment from Subcontractor for its defective work or failure to comply with the Subcontract without incurring any late payment interest penalty by providing written notice to Subcontractor and a copy of such notice to the Owner.  The written notice shall specify the following:  (1) the amount to be withheld; (2) the specific causes for withholding under the terms of the Subcontract; and (3) the remedial actions to be taken by the Subcontractor in order to receive payment of the amounts withheld.  (iv) Subcontractor shall comply with all notice provisions contained in the Prompt Payment Act, as amended (31 U.S.C. § 3901 et seq.).  Subcontractor also shall require each of its lower-tier subcontractors and suppliers to comply with the notice provisions of the Prompt Payment Act, as amended (31 U.S.C. § 3901 et seq.).

**(c)**     When requested by the Contractor to do so, the Subcontractor shall, within thirty (30) days of the date hereof or at least thirty (30) days prior to its first application for payment hereunder, submit to the Contractor a complete and accurate schedule of values of the various parts of the Subcontractor's work aggregating the total sum of this Subcontract, itemized and detailed as required by the Contractor and supported by such evidence as to its correctness as the Contractor may direct.  This schedule, when approved by the Contractor, shall be used as the basis for making payments unless it is found to be in error or in conflict with the procedures or determinations of the Owner or its representative regarding partial payments to the Contractor.  Not later than the last working day of any month for which Subcontractor claims a partial payment, or at such other regular intervals as the Contractor may direct, the Subcontractor shall submit a request for partial payment conforming to the schedule of values and representing a true and accurate estimate of the work completed during the immediately preceding month or such other immediately preceding period as directed and, when required by the Contractor, an accurate inventory of materials suitably stored to permit payment and certified by a representative of the



HPCC



Subcontractor

**(Page 4 of 19)**

1  Owner and/or the Contractor.  Partial payments will be made only upon application submitted on a form furnished or
2  approved by the Contractor and properly certified by an officer or representative of the Subcontractor.  Subcontractor's
3  payment application shall contain such substantiation as Contractor may reasonably require for all amounts requested.  The
4  Subcontractor shall certify its application for payment in a form acceptable to the Contractor.  Each application shall be
5  accompanied by such additional data, invoices, vouchers, lien and claim waivers, certifications and affidavits as may be
6  required by the Owner and/or as the Contractor may require for proper processing of payments and adequate protection of
7  the premises from potential claims of third parties.  It shall be the Subcontractor's sole responsibility to submit each
8  application for payment hereunder in the time and in the manner prescribed herein and on the form provided or approved by
9  Contractor for such purpose and in no instance shall Contractor be liable for the time or sufficiency of payment pursuant to
10 any application or request not complying herewith.  The Subcontractor agrees that applications for payment not complying
11 herewith may, at the option of the Contractor, be held over for processing during the month, or other designated billing period
12 next following correction, resubmission or late submission of such application.
13
14      **(d)**      No partial payment or certificate therefor shall constitute acceptance or approval by the Contractor of the
15 work or material for which the partial payment is made.  No partial payment shall constitute a waiver by the Contractor of any
16 right to require fulfillment of all terms of the Subcontract Documents.  Neither the final payment nor any partial payment, nor
17 any certificate for either shall constitute acceptance by the Contractor of defective work or improper materials or of any
18 element of Subcontractor's performance determined to be at variance with the Subcontract Documents.  Each partial
19 payment and the final payment made hereunder, and the total thereof, will be subject to final audit and adjustment, and the
20 Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and
21 expenses, including attorneys' fees, the Contractor may incur in securing recovery thereof.
22
23      **(e)**      Notwithstanding the amounts and times of payments set forth above, the Contractor at any time may make
24 advance payments to the Subcontractor if, in the Contractor's sole discretion, such advances will aid the Subcontractor in the
25 performance of this Subcontract.  Such advance payments may be made without notification to the surety on any bond
26 furnished by or on behalf of Subcontractor, and the failure to give such notice will not deprive Contractor of any claim, right,
27 or remedy under any such bond.
28
29      **(f)**      Contractor reserves the right to make any payment to Subcontractor, including payments due hereunder,
30 through the medium of a check made payable to the joint order of Subcontractor and such of Subcontractor's workmen,
31 materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien or bond claim rights
32 against the work or the Project.
33
34      **(g)**      The Contractor may deduct from amounts due or to become due to the Subcontractor pursuant to this
35 Subcontract, any sums due or to become due to the Contractor from the Subcontractor whether or not said sums are in any
36 way related to this Subcontract or Project.  Contractor may apply such deducted funds to any account, related or unrelated to
37 this Subcontract or Project, wherein the obligations of the Subcontractor have not been discharged as determined by the
38 Contractor, and wherein the Contractor's interests are directly or indirectly involved.
39
40      **(h)**      In the event Subcontractor is in default of, or breaches or fails to comply with any provision, covenant or
41 requirements of this Subcontract or the Subcontract Documents; or in the event any person asserts, or indicates it will assert,
42 any lien, claim, demand, or charge against the project or land or improvements or funds related to the Project, or against the
43 Owner, the Contractor or any surety, arising from Subcontractor's performance of this Subcontract, the Contractor may, at its
44 option, withhold out of any payments due or to become due to the Subcontractor such amounts as the Contractor may deem
45 sufficient to protect and indemnify the Contractor, the Project or the Owner from any and all loss, damage and/or expense
46 therefrom, including attorneys' fees and litigation costs, until the condition requiring such measures has been remedied by
47 the Subcontractor to the satisfaction of the Contractor.  If the offending condition is not remedied by the Subcontractor within
48 a reasonable period of time, the Contractor may, at its option, proceed to make application of the withheld funds in whatever
49 manner the Contractor may determine as being in the best interest of itself and/or the Owner.  If the Contractor is compelled
50 to expend monies in defending, discharging or otherwise disposing of any claim or lien or other demand in excess of retained
51 or withheld sums, the Subcontractor shall, upon demand, reimburse the Contractor for the excess amount so expended,
52 including reasonable attorneys' fees and costs incurred by Contractor incident to such defense, discharge or disposition,
53 and/or incident to Contractor's collection from Subcontractor of such excess.
54
55      **(i)**      Notwithstanding anything to the contrary contained or applicable to this Subcontract, and without any
56 limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract: (i) When
57 such payments will leave a balance due Subcontractor which is less than an amount adequate to satisfy all outstanding and
58 subsequent obligations of the Subcontractor for labor, materials, supplies, tools, machines, plant, equipment, services,
59 furnished or to be furnished by Subcontractor in performance of the work required under this Subcontract; (ii) When
60 Subcontractor is or with reasonable probability may become unable to comply with or completely perform this Subcontract;
61 (iii) Whenever the Contractor shall determine the Project is being delayed or is in danger of being delayed by the work of the
62 Subcontractor or by any failure of the Subcontractor to effect timely compliance with any of the technical, administrative or
63 operational requirements of the Subcontract Documents, including subsequent instructions, job schedules and "Job
64 Information and Policy Brochure" instruments issued pursuant to this Subcontract and/or adopted by reference hereto; (iv)
65 Pending satisfactory correction, repair, replacement and/or restoration of faulty or deficient work, materials, supplies,
66 machines, equipment or plant, or of any work rejected as not conforming with this Subcontract or the Subcontract
67 Documents.

**(j)** The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in this Project or against any bond or other security posted by Contractor or Owner; that any money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations arising hereunder have been fully discharged and all claims arising herefrom have been fully paid. The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waivers of lien, bond or other claims as the Contractor may from time to time request.

**(k)** If at any time the Contractor shall determine that the Subcontractor's financial condition has become impaired, unstable or unsatisfactory, the Subcontractor shall furnish evidence of the financial ability to complete the Subcontract to the Contractor within three (3) days after written demand thereof is mailed or delivered to Subcontractor and in default of furnishing such evidence satisfactory to Contractor, the Contractor shall have the option to terminate this Subcontract or to initiate such other action as the Contractor may deem necessary for the protection or preservation of its interests and/or the prevention of delay in the efficient and orderly progress of work on the Project, including but not limited to that portion of the work to be performed by Subcontractor hereunder. In the event of such termination, the rights of the Contractor shall be the same as provided in Article 19 of this Subcontract.

**(l)** The Subcontractor and Contractor agree as follows with respect to the assignment of such payments as may be due or as may become due under this Subcontract: (i) The Subcontractor will make no assignment of the proceeds hereof without the prior written consent of the Contractor, which consent shall not be unreasonably withheld; (ii) In no instance shall the Contractor be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith under any assignment and/or erroneously or inadvertently made to the assignor; (iii) The Contractor shall in no instance be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder after first deducting any amounts for which Subcontractor may otherwise be obligated or indebted to Contractor; (iv) By making an assignment of the proceeds hereof the Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor, and Subcontractor agrees to defend and hold harmless the Contractor from any claim or action of any assignee related to this Subcontract.

**ARTICLE 6 - UNIT PRICE MEASUREMENT.** If the terms of this Subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for which certified verification of weights of quantities can be furnished at the time of delivery or readily agreed upon. In the event the parties fail to agree on the actual quantities performed, Contractor shall have the right to measure the quantity of work-in-place and make final settlement on the basis of such measurement.

**ARTICLE 7 - JOB INFORMATION AND POLICY BROCHURE (JIP) AND QUALITY CONTROL PLAN (QCP).**

**(a)** The Subcontractor and Contractor agree that it would be impractical to recite herein the many administrative and operational requirements governing the efficient execution and management of the work called for hereunder, and further, that determination of all the necessary procedures and schedules may not be completed for promulgation at the date of this Subcontract, and that therefore, as a practical matter, it is desirable and shall be acceptable to both parties hereto that such requirements may be set forth in a separate instrument to be submitted to the Subcontractor as provided herein and shall be adopted as part of this Subcontract. It is therefore agreed that the Contractor may prepare separate project-specific instruments entitled "Job Information and Policy Brochure" (JIP) and "Quality Control Plan" (QCP) and submit them to Subcontractor.

**(b)** The JIP may set forth specific instructions relative to the delivery, storage and handling of materials; preparation, submission and approval of shop or fabrication drawings, samples, tests, and other data related to the materials, equipment and methods used or proposed for use by Subcontractor in the performance of this Subcontract; the preparation and submission of partial payment requests, sales tax reports, certificates of insurance, performance and payment bonds, lien releases, payroll reports and affidavits, progress reports, accident and accident prevention reports, reports and affidavits relating to employment practices, and any other administrative reports or submittals required by the Subcontract Documents; job progress schedules and/or revisions thereof; tentative, confirmed, and/or revised delivery and starting dates; equipment loan and rental policies, backcharge and "extra" charge procedures and policies; services to be furnished by the Contractor; safety and first aid or emergency medical treatment requirements for the Project, safety programs applicable to the Project; policies and procedures for cleanup and removal of trash and debris, control of traffic and employee parking, hauling and storage of materials; and policies and procedures governing the use of shared facilities including those facilities furnished by the Contractor. In addition thereto, the JIP may include instructions, directives, and information of any and all such additional matters as the Contractor deems appropriate.

**(c)** The QCP will contain information relating to guidance, standards and documentation for delivering the level of construction quality required by this Subcontract.

(d)     Subcontractor shall promptly review and note the contents of the JIP and QCP when received, and shall notify the Contractor at once in writing of any objection thereto and set forth in detail the part or parts to which objection is raised.  If required to do so by the Contractor, Subcontractor shall promptly acknowledge receipt of the JIP and QCP in the manner prescribed, and Subcontractor's failure to do so may, at the option of the Contractor, constitute grounds for withholding payment hereunder.  Should no notification stating Subcontractor's objections be received in the Contractor's office within seven (7) days following receipt by Subcontractor of the JIP and/or QCP, then such instrument(s) shall automatically become a part of this Subcontract and shall be of the same force and effect as if recited herein verbatim.  In the event that within said seven (7) day period Subcontractor shall furnish Contractor written notification of any specific objections to the JIP or QCP, all of the parts and provisions of them to which there are no specific written objections shall automatically become a part of this Subcontract.  The provisions objected to shall become the subject of further discussion and negotiation between parties at the earliest practical date, and said parts may be modified by mutual agreement or, if agreement cannot be attained, shall, at the Contractor's option, either constitute and be deemed a written order from the Contractor to Subcontractor pursuant to Article 16 of this Subcontract or be stricken from the applicable instrument without effect on any other requirement or provision of said instrument or the remainder of the Subcontract Documents.

(e)     The submission by Contractor to the Subcontractor of the JIP and/or QCP shall in no manner terminate or rescind this Subcontract, or any part hereof, and except as may be specifically modified or extended by either instrument, all of the terms and provisions of this Subcontract shall remain in full force and effect.

ARTICLE 8 - TOOLS AND EQUIPMENT.  Except to the extent expressly provided otherwise herein, the Subcontractor shall provide at its own expense whatever tools, machines, equipment, plant, utilities, service, storage sheds, workshops, offices, other temporary structures, and any other facilities it may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work.  If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof; provided, however, that Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

ARTICLE 9 - SUBMITTALS.

(a)     The Subcontractor agrees to submit all shop or fabrication drawings, design and performance data, tests, samples, templates, and operation and/or maintenance manuals required in connection with the performance of this Subcontract and/or required by the Contract Documents for the performance of the Subcontractor's work; together with any and all other necessary data related to the materials, methods, and equipment used or proposed for use in the performance of this Subcontract promptly and/or as directed by the Contractor, and in sufficient number to provide adequate information to all parties requiring same.  Approval of any of the foregoing by the Contractor, the Owner or the Owner's Authorized Agent shall under no circumstances alter the requirements of the Subcontract Documents for quality, quantity, finishes, dimension, design or configuration except to the extent specifically noted and approved on such submittals; nor shall such approval constitute acceptance by the Contractor of any method, material or equipment not ultimately acceptable to the Owner or the Owner's Authorized Agent.  Subcontractor shall prepare and maintain a complete set of "as-built" drawings for its work, which shall be submitted to the Contractor as a condition to receipt of monthly and final payments.

(b)     The Subcontractor agrees the cost of all designs, drawings, tests, samples, templates and mock-ups required to be provided by the Subcontractor hereunder, together with field measuring, layout, sampling and shipping or delivery expense connected with any of the foregoing, is included in the amount of this Subcontract, except the Contractor agrees to furnish, upon request, starting field coordinates to allow Subcontractor to perform the layout of its work.  The Subcontractor agrees the entire cost of altering, reworking and refinishing any manufactured or fabricated items supplied by Subcontractor not conforming to approved designs, drawings, templates or samples shall be borne by the Subcontractor.

(c)     The Subcontractor hereby assigns to Contractor all copyrights to all project-related documents produced by Subcontractor and/or sub-subcontractors.  Among those documents are certain "Instruments of Service," including shop or fabrication drawings, design and performance data, tests, samples, templates and operation and/or maintenance manuals.  Contractor, in turn, hereby grants to the Subcontractor a nonexclusive license to reproduce the documents for purposes relating directly to the Subcontractor's performance of the work under this Subcontract.

ARTICLE 10 - LABOR ONLY SUBCONTRACTS.  It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, the following costs, without restriction thereto, are to be fully recovered by Contractor from Subcontractor:  (a) The full cost of materials required to replace those spoiled by Subcontractor through faulty workmanship or negligence, or damaged by any other cause not the fault of Contractor; (b) The full cost of materials wasted by Subcontractor; (c) The full cost of removing rejected materials when not properly and promptly removed by Subcontractor, together with the cost of removing, patching or replacing the work of others necessitated by such rejection; (d) The full cost of reworking, refinishing or altering any work of Subcontractor not accepted by the Owner or the Owner's Authorized Agent; (e) Costs resulting from damage by Subcontractor to materials or work of Contractor or others.

ARTICLE 11 - CUTTING, PATCHING AND COORDINATION.  The Subcontractor shall obtain Contractor's approval for and do any cutting, patching and blocking necessary to complete Subcontractor's work hereunder, and such

1  work shall be performed to the same standards and shall match any related work in accordance with the Contract
2  Documents.  The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might
3  interfere with the Subcontractor's work and prepare sketches and drawings as directed, and/or to participate in the
4  preparation of coordination drawings in areas of congestion, specifically noting and advising the Contractor of any possible
5  interference by other trades with the performance of Subcontractor's work.
6
7      **ARTICLE 12 - CLEAN-UP.**  Subcontractor agrees to keep the premises clean at all times and to remove from the
8  site all rubbish, debris, packing materials, scrap and waste materials resulting from its work under this Subcontract within
9  twenty-four (24) hours after receipt from Contractor of written notice to do so.  Subcontractor shall not dispose of any
10  hazardous materials in dumpsters supplied by Contractor.  Subcontractor shall handle and dispose of hazardous materials
11  utilized by Subcontractor in connection with its work in accordance with applicable law and regulations, and the requirements
12  of the Hazardous Materials and Waste Site-Specific Contingency Plan issued by Contractor for the Project.  Subcontractor
13  further agrees to clean and remove, to the satisfaction of the Contractor, all dirt, grease, marks, stains or other imperfections
14  from all finished work and property throughout the Project resulting from the execution of the work required under this
15  Subcontract.  The Subcontractor shall properly cover and protect the work of others from damage or soiling arising from the
16  performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, replace, or pay for
17  the replacement of any such work damaged or soiled in the performance of its own work.  If the Subcontractor refuses or
18  fails, in the manner and time aforesaid, to promptly perform such cleaning and/or repairs as directed by the Contractor, the
19  Contractor shall have the right to proceed with such cleaning and/or repair, and Subcontractor, on demand therefore, shall
20  repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision,
21  insurance, tax and overhead; or at the option of the Contractor, the aforesaid charges may be accumulated and deducted
22  from monies otherwise due the Subcontractor under the Subcontract.
23
24      **ARTICLE 13 - PAYMENT FOR LABOR AND MATERIALS.**  Subcontractor shall pay for all materials and supplies
25  furnished and for all work, labor and services performed as required under this Subcontract, shall produce satisfactory
26  evidence of such payment upon demand by the Contractor, and shall indemnify and defend Contractor and Owner against
27  and save them and the premises harmless from any and all claims, demands, liens or suits, including attorneys' fees and
28  costs, for all such material and supplies purchased and for all work, labor and services performed relating to all work
29  required to be performed under this Subcontract.  If a mechanic's lien or bond claim is filed by a third party against the
30  Project or a bond provided by Contractor relating to the Project seeking recovery for any amounts allegedly due relating to
31  the performance of the Subcontractor's work called for hereunder, Subcontractor shall immediately cause to be filed in
32  compliance with applicable law such bond as is required to cause the mechanic's lien or bond claim to be released.
33
34      **ARTICLE 14 - WARRANTY.**  The Subcontractor warrants and guarantees the work and materials which it performs
35  or furnishes under this Subcontract as required by the Contract Documents and agrees to make good, at its own expense,
36  any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the
37  Owner therefor under the Contract Documents or applicable law.  The Subcontractor further agrees to adopt and assume, as
38  a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the
39  responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been voided, waived,
40  withdrawn or cancelled as a result of the Subcontractor's operations hereunder, or on account of any act or omission in the
41  performance of this Subcontract.
42
43      **ARTICLE 15 - TIME.**
44
45      **(a)**      Time is of the essence and the Subcontractor agrees to keep itself thoroughly informed as to the overall
46  progress of the Project, to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner
47  whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to
48  promote the general progress of the entire construction project; and Subcontractor shall not by delay or otherwise, interfere
49  with or hinder the work or progress of the Contractor or any other subcontractor.  Any materials, services, supplies, tools,
50  machines, equipment or plant to be furnished or used by Subcontractor hereunder shall be furnished in sufficient time to
51  enable the Subcontractor and/or any other party requiring same, to perform and complete their work within the time or times
52  established as herein provided.  Upon Contractor's request, Subcontractor shall furnish such evidence as the Contractor
53  may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established
54  as herein provided.
55
56      **(b)**      Except as otherwise provided in Article 7 hereinabove, the Subcontractor agrees to notify the Contractor in
57  writing of its objection or inability to comply with any directive, notification, order, schedule or revision thereof dealing with the
58  time or times of its performance hereof within three (3) days of Contractor's issuance thereof.  In absence of such written
59  notice within three (3) days, the Subcontractor agrees to accept for incorporation herein any and all orders, notices,
60  directives, schedules or revisions thereof which may be issued from time to time by the Contractor to Subcontractor's last
61  known address or through its representative at the site of the work, and in the event of any conflict between the requirements
62  of any of the foregoing, it is agreed the time or times of performance shall be governed by the communication bearing the
63  most recent date.  Specific requirements as to time of performance set forth in the Subcontract Documents or subsequent
64  additions thereto, or in directives, orders, schedules or schedule revisions issued by Contractor, shall take precedence over
65  general requirements.  All work required to be performed under this Subcontract shall be performed in accordance with such
66  specific requirements.  Subcontractor's obligations for timely performance of its work shall be based on the planned activity


HPCC


Subcontractor

Form 730

EFPS000895 .30.07

durations in the Project schedule once Subcontractor's work has commenced, and not necessarily on the overall start and finish dates for Subcontractor's work set forth in the initial Project schedule.

(c)    In the event of any failure of Subcontractor to complete its work within the required time or upon the dates established as provided hereinabove, the Subcontractor hereby agrees to reimburse the Contractor for any and all liquidated damages that are assessed against and collected from the Contractor by the Owner, which are attributable to or caused by the Subcontractor's failure to comply fully with the foregoing provisions; and further, whether or not liquidated damages are so assessed, Subcontractor hereby agrees to pay the Contractor such other or additional damages as the Contractor may sustain by reason of any such delay attributable to or caused by the Subcontractor, including, but not limited to, recovery of Contractor's overhead and expense caused by or attributable to managing and supervising the Project during or equal to any period of time resulting from such delay of Subcontractor; and Subcontractor further agrees that neither the payment of such damages nor any liability incurred for the payment of such damages shall release the Subcontractor from its obligation to otherwise fully perform under this Subcontract.

(d)    No allowance for an extension of time, for any cause whatever, shall be claimed or made by the Subcontractor unless the Subcontractor shall have made written request upon the Contractor for such extension within three (3) days after the cause for such extension first occurred, and unless the Contractor and Subcontractor have agreed in writing upon the allowance of additional time.  No extension of time granted Contractor by Owner shall inure to the benefit of Subcontractor unless such extension of time is directly related to Subcontractor's work hereunder.

(e)    In no event shall an extension of time or allowance for extra time be granted to Subcontractor for delays attributable to untimely or incorrect preparation and/or submissions of shop drawings, samples, product data, or any other submittal information required by the Contract Documents; or when orders have not been placed with manufacturers or suppliers in a timely manner; or for delays resulting from Subcontractor's substitution, or attempt to make substitution, of materials, equipment or methods of construction or manufacture in lieu of those specified or previously approved; or for any delay resulting from or attributable to Subcontractor's failure to comply with any of the provisions of this Subcontract.

ARTICLE 16 - CHANGES.  Contractor may at any time, by written order and without notice to surety, make changes in the work called for herein and Subcontractor shall proceed with the work as directed.  If said changes cause an increase or decrease in the cost of performance or in the time required for performance, an equitable adjustment shall be made and this Subcontract shall be modified in writing accordingly.  Subcontractor shall provide written notice of any alleged change to the work or other claim directed or caused by Contractor within three (3) days of the occurrence giving rise to the alleged change or claim or such claim shall be conclusively waived.  Subcontractor's entitlement to an adjustment in the cost or time required for performance of a change in the work directed or caused by the Owner shall be governed by the terms of the Contract Documents.  Nothing herein contained shall excuse the Subcontractor from proceeding with the prosecution of the work as changed.

ARTICLE 17 - OWNER-RELATED CLAIMS.

(a)    The disputes resolution procedure set forth in the Contract Documents is specifically incorporated herein and made a part of this Subcontract.  The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds in the same manner as provided in the Contract Documents for like claims of the Contractor upon the Owner, and in such times as will enable the Contractor to timely present such claims to the Owner for payment or recognition.  The Contractor will not be liable to the Subcontractor on account of any claims not timely or properly presented.  For those claims for which the Owner may be responsible under the Contract Documents, the Contractor will not be liable to the Subcontractor unless and until and only to the extent the claim is allowed and paid for by the Owner.  Notwithstanding anything to the contrary contained herein, no interruption, cessation, postponement or delay in the commencement of the work or in the progress thereof from any cause whatsoever, including disputes, shall relieve the Subcontractor of its duty to perform.

(b)    In the event the Contract is between the Contractor and an instrumentality of the United States Government, Subcontractor agrees that any claim by it will be prepared and submitted in full compliance with the Contract Disputes Act (41 U.S.C. § 605 et seq.).  Accordingly, Subcontractor shall submit and certify its claim in accordance with the requirements of the Contract Disputes Act and the Federal Acquisition Regulations, all as may be amended from time to time, governing the performance of the Contract and this Subcontract.  Subcontractor shall make available for inspection and/or audit by the Contractor and/or the Government all financial and project records in any way related to its claim.  Subcontractor agrees to pursue and exhaust the procedures of the Contract Disputes Act before commencing any other action for any claims it may have arising out of the performance of the work hereunder.

(c)    If the Contract incorporated herein is one for which the Contractor has provided any bond(s) pursuant to 40 U.S.C. § 270 (a), et seq., the "Miller Act," Subcontractor expressly agrees to stay any action or claim arising out of or relating to this Subcontract against the Contractor and/or the surety which issued Contractor's bond(s) ("Miller Act Action") pending the complete and final resolution of all claims involving the Subcontractor submitted pursuant to the disputes procedure referenced above.  Said action shall be stayed until such time as all appropriate appeals under the Contract Disputes Act have been determined, including any appeal to the Court of Appeals for the Federal Circuit.  If the Contractor has provided any bond(s) pursuant to any state or local statutory or regulatory requirement, the Subcontractor agrees to stay any action or claim arising out of or relating to this Subcontract against the Contractor and/or the surety which issued

BP
HPCC

Subcontractor

(Page 9 of 19)

Form 730
MAR 96 30.07
EFPS000896

Contractor's bond(s) ("Little Miller Act Action") pending the complete and final resolution, including all appropriate appeals, of all claims involving the Subcontractor submitted pursuant to the disputes procedure set forth in the Contract. These terms in no way excuse or stay Subcontractor's obligation to file any and all notices as required by statute, code, rule, regulation or bond.

## ARTICLE 18 - DISPUTES.

(a)     In the event of any dispute or claim between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute or claim between Contractor and Subcontractor which involves a claim against the Owner for additional compensation and/or an extension of time, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor with respect to such dispute or claim to the same extent the Contractor is bound to the Owner by the terms of the Contract Documents and by any and all decisions, findings or determinations made thereunder by the person so authorized in the Contract Documents, or by any administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court. If any dispute or claim is prosecuted or defended by Contractor which relates in whole or in part to Subcontractor's work, and Subcontractor is not directly a party or litigant, Subcontractor shall be provided the opportunity to participate in such proceedings to the fullest extent practicable and Subcontractor agrees to cooperate fully with the Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and to pay or reimburse Contractor for all expenses and costs, including reasonable attorneys' fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute. It is expressly understood and agreed in connection with the determination of Subcontractor's interest in such claims or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor. In the event a final decision concerning such a dispute does not clearly apportion the amount due from the Owner to Contractor and Subcontractor, the Subcontractor expressly agrees to be bound by the apportionment of the award made by Contractor, which shall be final and conclusive.

(b)     In the event of any claim or dispute between the Contractor and the Subcontractor, other than those claims or disputes referred to in the immediately preceding paragraph, such claims or disputes shall be submitted to arbitration. The rules and procedures of such arbitration shall be the Rules for the Construction Industry of the American Arbitration Association, unless otherwise agreed to by the parties. The decision of the arbitrator(s) shall be final, conclusive and binding upon the parties hereto, and shall be enforceable in any court of competent jurisdiction. In the event that Contractor provides notice to Subcontractor that the claim or dispute directly or indirectly involves a claim against the Owner, Subcontractor agrees to present and pursue the claim or dispute pursuant to the disputes provisions of the Contract Documents as required by the provisions of Articles 17 and 18, and any action, including without limitation, any Miller Act Action or Little Miller Act Action, filed against the Contractor or its surety shall be stayed pending final resolution of the claim against the Owner and/or arbitration against the Contractor. Any Proceedings Commenced in Any State Or Federal Court Pursuant To the Foregoing Provisions Of Subparagraph 18(B) Shall Be Tried Before And Decided By the Presiding Judge Without A Jury And Subcontractor And Contractor Expressly Waive Any Right To have Such Proceedings Determined By Trial By Jury.

(c)     In the event of any claim or dispute between Contractor and Subcontractor, as referred to in either or both of the two immediately preceding paragraphs, or otherwise, it is further specifically agreed by the parties hereto that no claim, dispute or controversy shall interfere with the progress and performance of work required to be performed under this Subcontract and the Subcontractor shall proceed as directed by Contractor in all instances with its work under this Subcontract, and any failure of Subcontractor to comply herewith and to proceed with its work shall automatically be deemed a material breach of this Subcontract entitling Contractor to all remedies available in the event of breach.

## ARTICLE 19 - DEFAULT AND TERMINATION.

(a)     In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability will become unable to comply, with any of the material provisions of this Subcontract, or in the event Subcontractor fails to supply a sufficient number of properly skilled workmen or sufficient supplies, materials, equipment or plant of proper quality, or fails to prosecute the work with promptness and diligence; or in the event Subcontractor abandons its work or any part thereof; and such failure, inability, or deficiency is not corrected within three (3) days after written demand by the Contractor to the Subcontractor, the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of this Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor, through itself or others, to supplement the Subcontractor to remedy the situation, all at the expense of the Subcontractor. However, in the event Subcontractor provides Contractor with notice of Subcontractor's inability to continue performance and/or abandonment of the Subcontract, Contractor shall be immediately entitled to invoke the remedies provided for in this Article without providing the three (3) days notice otherwise called for herein. The parties hereto further agree that any of the following shall, at the option of the Contractor and subject to applicable law, constitute inability to comply with the provisions of this Subcontract for purposes of this Article: (a) The filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor or the failure of Subcontractor to promptly provide adequate assurances of continued performance following the filing of such a petition; (b) The insolvency of the Subcontractor or its inability to meet its debts as they mature; (c) The establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of a general assignment for the benefit of Subcontractor's creditors.





**(b)**    In the event Contractor does take over Subcontractor's work pursuant to this Article, Contractor shall have access to and may take possession of the Subcontractor's materials, supplies, machines, tools, equipment, and plant which may be located at the site of the work or en route to the site, as may be necessary to prosecute the work hereunder to completion, all without liability on the part of the Contractor for any damage, wear or tear, depreciation, theft, action of the elements, acts of God, fire, flood, vandalism or for any other injury or damage to such materials, tools and equipment.  Upon any action by the Contractor pursuant to this Article, the Subcontractor shall not be entitled to further payment under this Subcontract until the work has been completed and accepted by the Owner and payment therefor has been received by the Contractor from the Owner.  In the event that the unpaid balance due exceeds the expense incurred by the Contractor, the difference shall be paid to the Subcontractor, but if such completion expense exceeds the balance due, the Subcontractor agrees to promptly pay the difference to the Contractor, as hereinafter provided, and the Contractor shall have a lien upon all materials, tools, equipment and appliances taken possession of, as aforesaid, to secure the payment thereof.  With respect to expenses incurred by the Contractor pursuant to this Article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as provided herein shall include, without restriction, all direct costs incurred in the completion of Subcontractor's work, the cost of supervision, administration, job overhead, travel, attorneys' fees, legal and accounting fees and expenses, and Contractor's general overhead as allocated to the work, plus 10% of the foregoing cost of the work performed by or through the Contractor, less any amounts still owing hereunder, and Subcontractor agrees to pay the full amount of such excess, if any, together with interest thereon at the rate of 10% per annum until paid.  The rights of Contractor set forth in this Article shall be in addition to, and not in lieu of any right or remedy otherwise available to it at law or equity.

**ARTICLE 20 - TIMELY DELIVERIES.**  The Subcontractor agrees to accept full responsibility for expediting and securing timely delivery of its materials, supplies, tools, machines, equipment and plant to the site of the work.  In the event the lack thereof should delay construction, the Subcontractor hereby agrees that Contractor may undertake to expedite delivery by any means available and the entire cost thereof shall be chargeable to the Subcontractor and may be deducted from monies otherwise due hereunder.

**ARTICLE 21 - PROTECTION OF THE WORK.**  It is understood and agreed the work provided for in this Subcontract constitutes only a part of the work being performed on this Project by the Contractor and other subcontractors.  The Subcontractor therefore agrees to perform the work called for in this Agreement in such a manner that will not injure or damage any other work performed by the Contractor or any other subcontractor, and Subcontractor further agrees as follows:

**(a)**    To furnish continuous and effective protection at all times for its own work-in-place and all materials stored for use under this Subcontract, and to bear and be solely liable for all loss and/or damage of any kind to said work and materials occurring at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused by the sole negligence of the Contractor;

**(b)**    To pay or reimburse the Contractor on account of any damage or injury to the work or property of the Owner, the Contractor and other subcontractors caused by or arising from the performance of Subcontractor's work as provided in this Subcontract, including the cost of replacing, repairing, refinishing or restoring any work damaged, removed or displaced in the course of correcting or repairing work or replacing materials hereunder which are rejected by the Owner or the Owner's Authorized Agent or which are deemed to be at variance with the requirements of this Subcontract;

**(c)**    That unresolved claims resulting from glass breakage, damage to finished surfaces, permanent fixtures or equipment, and such other related occurrences wherein the identity of the responsible party is unknown or undetermined, and for which no insurance settlement may be had, may, upon completion of the Project and at the Contractor's option, be fairly and equitably prorated for assessment to the Contractor's account and/or to the accounts of those subcontractors who, in the determination of the Contractor, were engaged on the work in a manner and at a time or times from which contributory involvement may reasonably be inferred; and the Subcontractor further agrees that Contractor's decisions or determination in such proration shall be final and conclusive.

**ARTICLE 22 - INDEMNIFICATION.**  THE SUBCONTRACTOR EXPRESSLY AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS THE CONTRACTOR, OWNER AND THE OWNER'S AUTHORIZED AGENT AND ANY OTHER PARTY THE CONTRACTOR IS OBLIGATED TO INDEMNIFY UNDER THE CONTRACT (COLLECTIVELY, "THE INDEMNITEES") FROM AND AGAINST ANY AND ALL LIABILITY, CLAIMS, LOSSES, DAMAGES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES), ARISING OR ALLEGEDLY ARISING FROM THE WORK PERFORMED BY THE SUBCONTRACTOR OR FOR THE SUBCONTRACTOR'S ACCOUNT UNDER THIS AGREEMENT, INCLUDING ANY CLAIM OR LIABILITY ARISING FROM ANY ACT, ERROR, OMISSION, OR NEGLIGENCE OF THE CONTRACTOR OCCURRING CONCURRENTLY WITH THAT OF THE SUBCONTRACTOR OR CONTRIBUTING TO ANY LOSS INDEMNIFIED HEREUNDER, EXCEPT FOR THE SOLE NEGLIGENCE OR WILLFUL MISCONDUCT OF THE CONTRACTOR.  THE CLAIMS TO WHICH THIS INDEMNITY OBLIGATION SHALL APPLY INCLUDE, BUT ARE NOT LIMITED TO, CLAIMS FOR PERSONAL INJURY OR DEATH TO ANY PERSON OR PERSONS (INCLUDING BUT NOT LIMITED TO OFFICERS, AGENTS AND EMPLOYEES OF CONTRACTOR, SUBCONTRACTOR OR LOWER-TIER SUBCONTRACTORS TO SUBCONTRACTOR), PROPERTY DAMAGE (INCLUDING LOSS OF USE THEREOF), ECONOMIC LOSS OR OTHER DAMAGE, ARISING OR ALLEGEDLY ARISING FROM

1  SUBCONTRACTOR'S WORK. EXCEPT TO THE EXTENT REQUIRED BY THE CONTRACT DOCUMENTS, THIS INDEMNITY IS
2  NOT INTENDED TO EXTEND TO ANY CLAIM ARISING FROM THE NEGLIGENCE OF THE ARCHITECT OR ENGINEER
3  RELATING TO OR ARISING FROM THE DESIGN AND/OR ENGINEERING FOR THE PROJECT.
4
5  THE SUBCONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE INDEMNITEES FROM ANY AND
6  ALL CLAIMS, SUITS, AND CAUSES OF ACTION BY VENDORS, EMPLOYEES OR AGENTS OF THE SUBCONTRACTOR OR ITS
7  LOWER-TIER SUBCONTRACTORS WHEN SUCH CLAIMS, SUITS, LOSSES, DAMAGES OR EXPENSES SHALL HAVE BEEN
8  INCURRED OR ARE ALLEGED TO HAVE BEEN INCURRED AS A RESULT OF AN UNSAFE PLACE TO WORK, FAILURE TO
9  PROPERLY SUPERVISE, OR SUCH SIMILAR TYPES OF COMPLAINTS. THE SUBCONTRACTOR, ITS LOWER-TIER
10  SUBCONTRACTORS AND VENDORS SHALL NOT RAISE THE IMMUNITY OF WORKERS' COMPENSATION ACTS OR SIMILAR
11  LAWS AS A DEFENSE TO THE OBLIGATIONS ASSUMED HEREUNDER WITH RESPECT TO ACTIONS BROUGHT BY THEIR
12  OWN EMPLOYEES AGAINST THE INDEMNITEES.
13
14  THE SUBCONTRACTOR SHALL PAY ALL THE EXPENSES AND ATTORNEYS' FEES INCURRED BY THE INDEMNITEES
15  IN THE ENFORCEMENT OF THE CONDITIONS AND OBLIGATIONS OF THIS AGREEMENT OR OF ANY BOND FURNISHED BY
16  SUBCONTRACTOR IN CONNECTION HEREWITH. IN THE EVENT SUBCONTRACTOR REFUSES TO ASSUME THE DEFENSE
17  OF A CLAIM OR ACTION INDEMNIFIED HEREUNDER, SUCH EXPENSES AND COSTS OF ATTORNEYS' FEES SHALL BE
18  RECOVERED WHETHER SUCH CLAIMS OR ALLEGATIONS WERE VALID OR NOT.
19
20  ARTICLE 23 - SUBSTITUTIONS. The parties hereto stipulate that for purposes of interpreting and applying this
21  Article, the term "substitution" shall be deemed to include any substitution for, modification of, or deviation from the
22  requirements of the plans and specifications referenced in or made a part of the Contract Documents with respect to the
23  materials, equipment and methods of construction or manufacture applicable to the Subcontractor's work hereunder. The
24  Subcontractor warrants and agrees that it has thoroughly familiarized itself with all of the various sections, divisions and
25  subdivisions of the Contract Documents and the Subcontract Documents, including in particular those areas in which its work
26  may in any way affect or be affected by the work of the Contractor or other subcontractors. The Subcontractor shall make no
27  substitution, as defined herein, for which prior written approval of both the Owner and the Contractor has not been obtained.
28  Such approval will not be granted by the Contractor unless applied for in writing by the Subcontractor setting forth a full
29  disclosure of the effect of the proposed substitution upon the work of the Contractor or any other subcontractor. In making or
30  seeking to make any substitution, the Subcontractor hereby agrees to pay or reimburse the Contractor for any increase
31  whatever in the cost of the work undertaken by the Contractor or by any other subcontractor as a result of any substitution
32  made upon initiation of the Subcontractor. The Subcontractor agrees and represents, at the time of entering this
33  Subcontract, that no substitution was contemplated in arriving at the amount of this Subcontract except for which a full
34  written description has been furnished to the Contractor prior to the date hereof, and/or except as may be recited in the
35  Special Provisions section of this Subcontract.
36
37  ARTICLE 24 - TERMINATION OR REDUCTION IN SCOPE OF WORK BY OWNER. In the event of elimination or
38  reduction of the work to be performed under this Subcontract by reason of termination or modification of the Contract or
39  Contract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract
40  Documents or by default by the Owner, Subcontractor shall in no case be entitled to recover from the Contractor more than
41  its fair and equitable portion of any sums received by Contractor for work done and material supplied by this Subcontractor
42  under this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into
43  consideration in determining Subcontractor's fair and equitable share of the amounts paid by the Owner as a result of such a
44  termination or modification and Contractor's determination of Subcontractor's fair and equitable share of any such sums shall
45  be final and conclusive.
46
47  ARTICLE 25 - TERMINATION FOR CONVENIENCE. Contractor reserves the right to terminate this Subcontract
48  in whole or in part at any time for any reason for the convenience of the Contractor. Upon receipt of written notice from
49  Contractor of termination of this Subcontract, or any part thereof, for convenience, Subcontractor shall cease work as
50  directed and deliver or return for credit all materials and equipment which have been purchased and/or are in the possession
51  of Subcontractor relating to the Subcontractor's work as indicated in the notice of termination. Upon termination of the
52  Subcontract for convenience, Subcontractor shall be paid as full compensation the value of the work performed to date as
53  indicated in the Subcontractor's schedule of values, plus any reasonable costs, such as restocking or cancellation charges
54  incurred as a direct result of the termination for convenience. If no schedule of values for Subcontractor's work has been
55  approved by Contractor prior to the date of termination, Subcontractor shall be paid as full compensation all direct costs
56  incurred in connection with the performance of the Subcontractor's work up to the effective date of termination, and a
57  reasonable fee not to exceed 10% of the cost of such work, plus any reasonable costs, such as restocking or cancellation
58  charges, incurred as a direct result of the termination for convenience. Subcontractor waives and releases any claims for
59  other consequential damages or costs, including lost profits, it may otherwise have as a result of a termination for
60  convenience. In the event a termination of the Subcontract for default pursuant to Article 19 hereof is determined to be
61  wrongful or unjustified, the termination shall be treated as and converted to a termination for convenience pursuant to this
62  provision.
63
64  ARTICLE 26 - WAIVERS. It is expressly agreed that the waiver by Contractor of any breach or default of this
65  Subcontract by Subcontractor shall not be construed as a waiver of any other breach or default of the same or any other

terms, conditions, provisions or covenants of this or any other Subcontract between the parties hereto.  Forbearance from demanding strict compliance with any term or provision of this Subcontract or any other Subcontract between the parties hereto shall not operate as a waiver and shall not prevent Contractor from subsequently demanding strict compliance therewith.

### ARTICLE 27 - PAYROLL AND EMPLOYMENT COMPLIANCE.

**(a)**     Subcontractor shall comply with all requirements of the Contract Documents and Subcontract Documents pertaining to payroll reports, payroll affidavits, payment of prevailing wages, benefits and contributions, anti-kickback clauses, fair labor practices, nondiscrimination clauses, equal employment opportunity laws, orders and directives and other labor arrangement requirements insofar as such matters pertain to its work under this Subcontract.  Failure of Subcontractor to observe any of the aforesaid requirements, including the prompt submission to the Contractor of required reports and affidavits, shall constitute cause for withholding progress payments until such requirements are met.  It shall be the responsibility of the Subcontractor to determine its own status under the various regulatory acts relating to employment, and nothing in this Subcontract shall serve to make the Contractor liable for any errors or acts of Subcontractor with respect thereto.  The Subcontractor agrees to consult with the Contractor in all matters pertaining to craft work assignments wherein such assignments might reasonably result in controversy or craft jurisdictional disputes.

**(b)**     Subcontractor hereby agrees that if any portion of its work under this Subcontract is further subcontracted, subject to Article 2 hereof, such lower-tier subcontractor shall comply with, observe and be bound by the terms and provisions of this Article, and Subcontractor further agrees to incorporate the terms and provisions of this Article in any lower-tier Subcontract.

### ARTICLE 28 - LABOR AGREEMENTS.

**(a)**     Subcontractor shall comply with, observe and be bound by all terms and provisions of the following collective bargaining agreements executed by Contractor or on Contractor's behalf: _____

_____

_____

(If no agreements are listed, then Contractor has not entered into collective bargaining agreements applicable to this Project.)  Subcontractor's compliance with the foregoing agreements shall include, but not be limited to, the provisions in such agreements relating to the following:  (a) the assignment of work or the settlement of jurisdictional disputes; (b) resolution of disputes as specified in the applicable agreement, whether through arbitration or otherwise; (c) the making of payments into or under health and welfare or other fringe benefit funds or plans.  All requirements imposed by this Article shall apply only to the extent that the terms and provisions of such collective bargaining agreements can legally be applied to the work to be performed hereunder.  Subcontractor shall indemnify, defend and save Contractor harmless from and against any liability, claim, loss, expense, damage or cause of action, including court costs and attorney's fees, resulting from Subcontractor's failure to comply with the provisions of this Article.

**(b)**     In the event Subcontractor fails or refuses to comply with, observe or be bound by any term or provision of any such collective bargaining agreements executed by Contractor or on Contractor's behalf and does not correct such failure or refusal within twenty-four (24) hours after notice thereof is furnished to Subcontractor by Contractor, Subcontractor shall be deemed to be in default for breach of this Subcontract and this Subcontractor shall be subject to immediate termination at the option of the Contractor.  Such optional right of termination of this Subcontract, if exercised by Contractor, shall be in addition to and not in lieu of any other right or remedy available to the Contractor, and in addition thereto, Contractor shall have the right of reimbursement in full by Subcontractor for court costs and attorneys' fees Contractor may sustain in the event of such breach or default of this Subcontract by Subcontractor.

**(c)**     The Subcontractor further agrees that in the event of any strike, picket, sympathy strike, work stoppage, or other form of labor dispute at the construction site, regardless of whether that dispute or picket relates to the Contractor, the Subcontractor, the Owner, or any other contractor or subcontractor on this construction site, the Subcontractor will continue to perform the work required herein without interruption or delay.  In the event the Subcontractor fails to continue the performance of the work without interruption or delay because of such picket or other form of labor dispute, the Contractor may terminate the services of Subcontractor after giving twenty-four (24) hours written notice of an intent to do so, or the Contractor may invoke any of the other rights set forth in this Subcontract.

**(d)**     Additionally, should the Subcontractor be party to one or more labor agreements it shall take all reasonable action to avoid any work stoppage and, in the event a work stoppage should occur, it shall, within twenty-four (24) hours, take any and all legal action provided for, or permitted by, such labor agreements in order to expedite resumption of work on this project.  It is contemplated hereby that Subcontractor shall, if necessary, utilize to the fullest extent possible all rights that allow for the hiring of replacement employees, should the hiring hall of the Subcontractor be unable or unwilling to meet the needs of the Subcontractor.  Whenever the Subcontractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Agreement, Subcontractor shall immediately give notice thereof, including all relevant information with respect thereto, to the Contractor.

(e)     Access to the construction site will be limited.  During the performance of work required by this Agreement, the Subcontractor, its employees, suppliers and visitors will only use such entrance or entrances to the construction site as may be designated from time-to-time by the Contractor.  In the event a Subcontractor or any of its employees, suppliers or visitors should fail to use the designated entrance(s) and thereby causes the Contractor to incur additional costs thereby, Subcontractor agrees to be fully responsible for such additional costs.

**ARTICLE 29 – PERMITS, LICENSES AND APPLICABLE LAW.**  Subcontractor shall obtain and pay for all permits, licenses and official inspections made necessary by its work.  Subcontractor shall comply with all laws, ordinances and regulations applicable in any way to the work required under this Subcontract.

**ARTICLE 30 - SEVERABILITY.**  To the best knowledge and belief of the parties, this Subcontract contains no provision that is contrary to any applicable Federal, State or local law, regulation or ordinance.  However, should any provision of this Subcontract at any time during its effective term be in conflict with any such law, regulation, or ordinance, then such provision shall continue in effect only to the extent permitted.  In the event any provision of this Subcontract is thus held inoperative, the remaining provisions of this Subcontract shall nevertheless remain in full force and effect to the extent permitted by law.

**ARTICLE 31 - INDEPENDENT CONTRACTOR STATUS.**  The Subcontractor certifies that it is, or that prior to the commencement of work under this Subcontract it will become an "independent contractor" and "employing unit" subject, as an employer, to all applicable laws and regulations with respect to such status.  Subcontractor agrees to defend Contractor against any claim or assertion of an employer-employee relationship between Contractor and Subcontractor's workers, and to indemnify and hold Contractor harmless against any expense or liability imposed upon Contractor by reason of a finding of such an employer-employee relationship.

**ARTICLE 32 - PERSONNEL.**  The Subcontractor shall not employ any persons in the performance of this Subcontract whose employment might be reasonably objected by the Contractor or Owner.  In the interest of harmonious relations and to facilitate the orderly and efficient progress of the work on this Project, the Subcontractor hereby agrees to promptly remove from the Project any supervisor, employee, worker or lower-tier subcontractor to whom the Contractor reasonably objects or to whom the Owner or the Owner's Authorized Agent objects, and such person or party shall not again be employed in connection with the performance of this Subcontract.  The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's Authorized Agent and/or to the Contractor.  Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

**ARTICLE 33 - SAFETY.**

(a)     The Subcontractor shall strictly observe and comply with all applicable safety laws, rules and regulations, including applicable OSHA standards, and with the accident prevention program required under the applicable provisions of the Contract Documents and/or as directed by the Contractor.  Whenever the Contract Documents shall require any special safety, first aid, or emergency treatment facilities, it is agreed that same shall be provided by the Subcontractor for its own use; or that, when such alternative is made available by the Contractor, the Subcontractor shall enter into a Supplementary Agreement with Contractor and other subcontractors for the cooperative provision thereof; and the entire cost thereof shall be prorated among the participants in proportion to the number of employees engaged on the Project each month by the respective participants.  Subcontractor shall indemnify, hold harmless and defend Contractor from any citations, fines or penalties assessed Contractor by the Occupational Safety and Health Administration, or any other state or local agency or authority with jurisdiction over workplace health or safety, relating to or arising from Subcontractor's work performed hereunder.  In the event any such citations, fines or penalties are issued to Contractor relating to or arising from Subcontractor's work, unless Contractor and Subcontractor agree to contest the citation, fine or penalty, at Subcontractor's sole expense, the amount of the citation, fine or penalty shall be paid promptly by Subcontractor upon demand by Contractor and if such payment is not made promptly, Contractor may issue such payment and deduct the amount paid from any amounts due Subcontractor hereunder.

(b)     Any accident arising out of Subcontractor's work shall be discussed at the next Contractor's Safety Committee meeting, to determine if the accident was preventable and to determine the responsible party.  At that meeting, an officer or owner of Subcontractor shall explain, in person, the cause of the accident and the actions Subcontractor shall take to prevent similar accidents in the future.  A fine of $100 may be assessed for each calendar day Subcontractor fails to appear before the Safety Committee as required by this Article.

(c)     Any of Subcontractor's employees who are found to be in violation of Contractor's safety rules will be subject to immediate and permanent removal from the Project, in accordance with Article 32.  In the event Subcontractor has repeated safety issues on the Project, Contractor may, in its sole discretion, require Subcontractor to furnish a full-time safety engineer for the Project, at no additional cost to Contractor.  This safety engineer shall demonstrate full and complete understanding of the safety laws, rules and regulations applicable to Subcontractor's work on the Project.

(d)     If Subcontractor's work involves the furnishing of scaffolding for the Project, Subcontractor shall have a competently trained person on the Project to supervise and inspect the scaffolding during erection, usage and dismantling.



HPCC



Subcontractor

(Page 14 of 19)

Form 730

EFPS000901 30.07

**ARTICLE 34 - BONDS.**

(a)     Unless specifically waived herein by Contractor, Subcontractor shall furnish, without expense to the Contractor and on or before the earlier of fifteen (15) days of the date hereof, or the date of commencement of work by the Subcontractor, a performance bond and a payment bond, each for the full amount of this Subcontract as set forth in Section C.  The two bonds shall be drawn in favor of the Contractor and shall be executed by a surety company listed on the current edition of the United States Department of Treasury list of approved sureties and for an amount not exceeding the approved amount for the surety company indicated in the United States Department of Treasury list, and on forms furnished by the Contractor or approved by the Contractor.  No payment whatsoever shall be due the Subcontractor until the provisions of the Article have been met to the Contractor's satisfaction.  Failure of the Subcontractor to provide the aforementioned bonds within the time periods required by this provision shall constitute a material breach of this Agreement, entitling the Contractor, at its option, to immediately terminate the Subcontract pursuant to Article 19 hereof, or declare the Subcontract null and void.  In the event the Surety on any bond furnished by or on behalf of the Subcontractor becomes insolvent or ceases doing business, Subcontractor shall immediately furnish, without expense to the Contractor, replacement bonds that meet the requirements stated above.

(b)     No change, alteration or modification in the terms, conditions or scope of this Subcontract, or in the terms or manner of payment shall in any way exonerate or release, in whole or in part, any surety on any bond furnished by or on behalf of the Subcontractor.  If required to do so by the Contractor, prior to commencement of any work required hereunder, Subcontractor shall obtain, and furnish to Contractor, a copy or counterpart of this Subcontract which shall have been endorsed in writing by an authorized representative of the surety company, specifically approving this Subcontract.

**ARTICLE 35 - NOTICES.**

(a)     Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of commercial delivery service, telegram, facsimile transmission or the United States Mail

(b)     Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract.

(c)     When mail, facsimile or commercial delivery service is used, delivery is complete on the day or date first occurring among the following:  (1) On the day the communication is received by Subcontractor as evidenced by a return receipt furnished by the United States Post Office or by any recognized messenger or delivery service, or a confirmation of successful facsimile transmission to the Subcontractor's published facsimile number, or (2) On the third (3rd) day after the notice is deposited in the U.S. Mail addressed to the Subcontractor at the Project or at the address appearing on this Subcontract.

**ARTICLE 36 - COMMUNICATIONS WITH OWNER.**  The Subcontractor's sole and exclusive responsibility for the performance of this Subcontract is to the Contractor, and it is agreed that all of Subcontractor's dealings with the Owner's Authorized Agent, the Owner, or any other parties named in the Contract Documents shall be through the Contractor.

**ARTICLE 37 - PATENTS.**  The Subcontractor shall indemnify, hold harmless and defend Contractor and Owner from any claims or damages, including court costs, expenses and attorneys' fees, related to or arising out of any patented or unpatented invention, article or appliance, manufactured, furnished or used, or alleged to be manufactured, furnished or used, in the performance of this Subcontract.

**ARTICLE 38 - PAYROLL CONTRIBUTIONS.**  The Subcontractor accepts full and exclusive liability for the payment of any and all contributions, taxes or insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other compensation paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.  Further, Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of any and all taxes, including personal property, sales taxes, use and excise taxes, relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to work performed under this Subcontract.

**ARTICLE 39 - INSURANCE.**

(a)     Subcontractor shall provide and maintain at all times during the performance of this Subcontract the following insurance:

(i)   Workers' Compensation for protection of the Subcontractor's owners, partners and employees as required by law and Employer's Liability Insurance with the following limits:

| | | |
|---|---|---|
| 1. | Each Accident | $ 1,000,000.00 |
| 2. | Each Occupational Disease | $ 1,000,000.00 |
| 3. | Occupational Disease - Aggregate | $ 1,000,000.00 |

EFPS000902

The Workers' Compensation and Employer's Liability Insurance policies of the Subcontractor shall contain a waiver of subrogation as to the Contractor and any other additional insured under this Subcontract. The limits of liability for this coverage shall be as required by applicable Statute;

(ii)   Broad Form General Liability Insurance covering bodily injury, including death, personal injury, property damage and contractual liability, including all terms set forth in this Subcontract Agreement. The Broad Form General Liability policy shall provide coverage on an occurrence basis and shall include explosion, collapse, underground hazard and products/completed operations coverages. Minimum limits of liability provided by this coverage shall be:

| | | |
|---|---|---|
| 1. | General Aggregate | $ 2,000,000.00 |
| 2. | Products/Completed Operations Aggregate | $ 2,000,000.00 |
| 3. | Personal & Advertising Injury | $ 2,000,000.00 |
| 4. | Each Occurrence | $ 2,000,000.00 |
| 5. | Fire Damage (any one fire) | $ 50,000.00 |
| 6. | Medical Expense | $ 5,000.00 |

The Subcontractor shall maintain the products/completed operations coverage required herein in full force and effect until the statute of limitation or statute of repose, whichever is longer, applicable to the Subcontractor's work has lapsed.

(iii)   Automobile Liability Insurance covering the use, operation and maintenance of any automobiles, trucks, trailers, or other vehicles owned, hired, or non-owned by Subcontractor providing bodily injury, including death, and property damage coverage. Minimum limits of liability provided by this coverage shall be a Combined Single Limit of $2,000,000.00.

(iv)   Physical damage property insurance for the value of all Subcontractor-owned and/or rented tools and equipment covering the interest of Contractor and including a waiver of subrogation in favor of Contractor in the event of loss or damage.

**(b)**   The Subcontractor agrees to notify the Contractor of any substantial claims (paid or reserved) applied against the aggregate of any of the required insurance policies. The full aggregate general liability policy limits required above shall be available with respect to Subcontractor's obligations hereunder and Subcontractor shall obtain a project specific aggregate limit endorsement confirming such coverage.

**(c)**   All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to the Contractor, at Subcontractor's expense, including the payment of all premiums, deductibles and self-insured retentions applicable to such policies or claims thereunder, and until performance in full of all obligations due hereunder, including warranty obligations.

**(d)**   All insurance shall be subject to the requirement that the Contractor must receive prior written notice thirty (30) days before cancellation of or failure to renew any such policy. In the event of the threatened cancellation for nonpayment of premium, the Contractor may pay the same on behalf of the Subcontractor and deduct the payment from the amounts then or subsequently owing to the Subcontractor.

**(e)**   Certificates of Insurance evidencing the required insurance shall be submitted on the forms furnished by the Contractor and must be filed with the Contractor within thirty (30) days of the date hereof unless Subcontractor is scheduled to begin work before then, in which case the Certificates of Insurance shall be provided no less than seven (7) days prior to the Subcontractor's commencement of work hereunder.

**(f)**   No payment shall be considered due and owing hereunder until the required Certificates of Insurance, satisfactory to the Contractor, have been received by the Contractor. Failure to furnish the required insurance certificates will be cause for cancellation of this Subcontract.

**(g)**   The Contractor and the other Indemnitees shall be named as additional insureds on Form B-CG2010 1185 on the Subcontractor's Broad Form General Liability insurance required by the Subcontract. The requirement of any and all insurance as set forth in this Subcontract, including but not limited to the requirement for naming Contractor, Owner and others as additional insureds, is in addition to and not in any way in substitution for all other protection provided under the Subcontract, including Article 22 (Indemnification). Unless expressly approved by Contractor, Subcontractor's obligation to name the Contractor and the other Indemnitees as additional insureds on the aforementioned policies can not be satisfied by the Subcontractor arranging for the issuance of an Owner's and Contractor's Protective liability insurance policy.



HPCC



Subcontractor

(Page 16 of 19)

**(h)**     All insurance provided by the Subcontractor hereunder shall be primary to any insurance policies held by the Contractor or any other additional insured.

**(i)**     It is the practice of the Contractor to carry Builder's Risk Insurance applicable to the Contract, or, in the alternative, to participate as an additional insured in such a policy that may be furnished by the Owner.  The Contractor shall endeavor to include the interest of the Subcontractor, as its interest may appear, under the Project Builder's Risk coverage. The provisions of this Subcontract do not make it mandatory upon the Contractor to carry any insurance whatsoever for the benefit of the Subcontractor.  Subcontractor agrees it will assume responsibility to determine whether Builder's Risk Insurance is in force and what coverage is afforded the interests of the Subcontractor, and Subcontractor shall be liable for any deductible amount applicable under the policy to any claim relating to Subcontractor's work.  In the event the Contractor should elect to carry Builder's Risk Insurance, the Subcontractor agrees to submit immediately upon demand, a complete breakdown of this Subcontract price showing materials, labor, expendable tools, supplies or any other thing or article of value, the cost of which is included in the Subcontract amount stated herein, all as may be required for the purpose of determining values under said coverage.  Subcontractor agrees to waive any and all rights of subrogation that it may have as to the Contractor and any other additional insured under the applicable Builder's Risk policy to the extent of the coverage provided by the Builder's Risk policy.  Subcontractor shall include a similar waiver of subrogation with respect to the applicable Builder's Risk policy in all lower-tier subcontracts entered into by Subcontractor relating to Subcontractor's work.

**ARTICLE 40 - EQUAL EMPLOYMENT OPPORTUNITY AND ANTI-HARASSMENT POLICY.**

**(a)**     The Subcontractor, in performing the work required by this Subcontract, shall not discriminate against or harass any applicant, employee or minority or disadvantaged business because of belief, race, creed, color, religion, sex, age, national origin, physical or mental handicap or because it is a disabled veteran or Vietnam Era Veteran.  Unless this Subcontract is exempted by the rules, regulations or orders of the Secretary of Labor, Subcontractor agrees to comply with the provisions of paragraphs (1) through (7) of Part 202 of Executive Order 11246, as amended; the affirmative action for handicapped workers clause set forth in 41 CFR § 60-741.4; and the affirmative action for disabled veterans and veterans of the Vietnam era clause set forth in 41 CFR § 60-250.5, which are by reference incorporated herein.  Subcontractor shall include the above provisions of this Article in all lower-tier subcontracts and purchase agreements issued for work to be performed at the site under this Subcontract.

**(b)**     It is the policy of Contractor to provide a working environment at its sites and facilities that is free of sexual harassment and harassment, intimidation and coercion based on ethnic background, religion, gender or sexual orientation. Sexual harassment includes, but is not limited to, unwanted advances with sexual overtones, statements regarding permissiveness or the sexual reputation of an individual, and intimidation or coercion.  Subcontractor shall comply with this policy in the performance of the Subcontractor's work.  Subcontractor shall fully investigate any reported violations of this policy involving employees of Subcontractor or any lower-tier subcontractor or supplier to Subcontractor and report the results of such investigation to Contractor.  Any offensive materials, including offensive hard hat stickers, shall be removed from the Project immediately upon notice to Subcontractor.  Any personnel who are found to have violated this policy shall be removed by Subcontractor from the Project at the direction of Contractor in accordance with Article 32.

**ARTICLE 41 - EFFECTIVE DATE.**  The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract.  The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.  If this Subcontract is executed prior to award of the Contract by Owner to the Contractor, this Subcontract shall constitute a pre-bid agreement, which cannot be canceled by either party, and upon award of the Contract to the Contractor, the Subcontract shall become a binding agreement.  If the Contract is not awarded to the Contractor, this Subcontract shall be void and of no effect, and neither party shall have any liability or obligation to the other party.

**ARTICLE 42 - SCOPE OF WORK.**  With respect to Section B hereof, Subcontractor acknowledges and agrees that any recapitulation of the work to be performed shall be for the sole and exclusive purpose of clarifying the status of those items which are specifically mentioned as being included in, or excluded from, the scope of this Subcontract.  Where, in Section B hereof, a division or divisions of the Contract Specifications is referred to in describing the work to be performed under this Subcontract, the Subcontractor shall, unless otherwise specified, perform all of the work required by such division or divisions, plus all additional related work of a similar nature generally performed by the trades or crafts employed or engaged by the Subcontractor in executing the principal work under this Subcontract, whether or not such additional or related work of a similar nature is specifically called for in the plans, in other divisions of the specifications, or in any other of the Contract Documents.  If any materials are to be furnished but not installed under the terms of this Subcontract, it is understood and agreed that Subcontractor shall deliver and unload said materials at the jobsite without expense to the Contractor.

**ARTICLE 43 - EARLY OCCUPANCY.**  Whenever it may be useful or necessary to the Contractor to do so, the Contractor shall be permitted to occupy and/or use any portions of the work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Owner, but such use and/or occupation shall not relieve the Subcontractor of its warranty of said work and materials nor of its obligation to make good at its own expense any defect in materials and workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner; provided, however, the Subcontractor shall not be responsible for the maintenance of such portion of work as may



1   be used and/or occupied by the Contractor nor for any damage thereto that is due to or caused by negligence of the
2   Contractor during such period of use.  In the event the Owner occupies or uses, prior to final inspection and acceptance, any
3   portion of the work performed by Subcontractor, the maintenance and warranty obligations with respect to such work shall be
4   governed by the applicable provisions of the Contract Documents.
5
6      **ARTICLE 44 – UTILIZATION OF SMALL BUSINESS CONCERNS.**  If the Owner is an agency or instrumentality of
7   the United States Government and the Contract requires compliance with Federal Acquisition Regulation ("FAR") 52.219-9,
8   entitled "Small Business Subcontracting Plan", then FAR 52.219-8, entitled "Utilization of Small Business Concerns", is
9   hereby incorporated by reference into the Subcontract, and Subcontractor agrees to comply fully with the requirements of
10   that provision.  In addition, if this Subcontract is for an amount in excess of $1,000,000.00, Subcontractor agrees to adopt a
11   subcontracting plan that complies with the requirements of FAR 52.219-9, entitled "Small Business Subcontract Plan"
12   ("Plan"), and submit a copy of the Plan to Contractor.  As a part of this obligation, Subcontractor agrees to submit to
13   Contractor semi-annually Standard Form 294, Subcontracting Report for Individual Contracts, and Standard Form 295,
14   Summary Subcontract Report, in accordance with subparagraph (j) of FAR 52.219-8.




HPCC


Subcontractor

(Page 18 of 19)

EFPS000905

Form 730
5.30.07

**ARTICLE 45 - HEADINGS.** The Article headings used in this Agreement are for ease of reference only and shall not be considered a part of or affect the interpretation or meaning of this Agreement.

**SECTION E. SPECIAL PROVISIONS.**



ACKNOWLEDGEMENT OF COMPLETE INSTRUMENT: Bound in and with these 19 pages numbered 1 of 19 ~~through 19~~ of 19, and hereby acknowledged as being received by Subcontractor, are the following exhibits or attachments numbered:

IN WITNESS WHEREOF, the parties hereto have executed this agreement for themselves, their heirs, executors, successors, administrators and assigns, on the day and year first above written.

| | |
|---|---|
| Essential Fire Protection Systems, Inc. | HENSEL PHELPS CONSTRUCTION CO. |
| (Subcontractor) | (Contractor) |
| By: _(signature)_ | By: _Brian_ |
| | Brian Penner |
| Title: **Randy Huffman – President**  Date _8-31-0_ | Title: Project Manager  _11-9-07_ Date |

1045 Kessler Drive

El Paso, Texas 79907
(Address of Record)

| | |
|---|---|
| State of **Texas** | State of _Texas_ |
| County of **El Paso** } SS. | County of _El Paso_ } SS. |
| On **August 31, 2007**, before me, | On _November 14_, _2007_ before me, |
| ( **Sandy P. Heath** Notary Public), | ( _Mercedes Vasquez_ Notary Public), |
| personally appeared **Randy Huffman** | personally appeared _Brian Penner_ |
| the **President** | the _Project Manager_ |
| of _Essential Fire Protection Systems, Inc._ (Subcontractor). | of Hensel Phelps Construction Co. |
| ☒ Personally known to me ( ☐ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of the person(s) acted, executed the instrument. | ☐ Personally known to me ( ☐ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which which the person(s) acted, executed the instrument. |
| WITNESS my hand and official seal | WITNESS my hand and official seal |
| Signature _Sandy P. Heath_ | Signature _Mercedes Vasquez_ |
| My Commission Expires: **March 8, 2008** | My Commission Expires: _6-13-2011_ |
| (Seal) | (Seal) |

SANDY P. HEATH
Notary Public, State of Texas
My Commission Expires
March 08, 2008

MERCEDES VASQUEZ
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
06-13-2011

BP
HPCC

Subcontractor

**(Page 19A of 19)**

Form 730
EFPS000906 24.05